**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| ASTECH ENGINEERED PRODUCTS, INC.,[1] | Case No. 22-10635 (BLS) |
| Debtor. | **Hearing date: July 22, 2022 at 10:00 a.m. (ET)** |

**MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES, AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession in the above-captioned chapter 11 case, ASTECH Engineered Products, Inc. ("ASTECH" or the "Debtor"), by and through its undersigned proposed counsel, files this motion (the "Motion") for entry of interim[2] and final[3] orders (i) authorizing the Debtor to (a) pay petition employee wages, salaries, other compensation, and reimbursable employee expenses, and (b) continue employee benefits programs; and (ii) granting related relief. In support of this Motion, the Debtor respectfully states:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

---

[1] The last four digits of the Debtor's federal tax identification number are 7721. The Debtor's address is 3030 Red Hill Avenue, Santa Ana, CA 92705.
[2] Attached hereto as **Exhibit A**.
[3] Attached hereto as **Exhibit B**.

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), ASTECH consents to the entry by this Court of a final order in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for the relief requested herein are sections 105(a) 363, 507(a), 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-l(m).

## BACKGROUND

3.      On July 15, 2022 (the "Petition Date"), the Debtor filed in the United States Bankruptcy Court for the District of Delaware (the "Court") a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      ASTECH continues to operate its business and manage its properties as debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

5.      On July 18, 2022, the Office of the United States Trustee appointed David M. Klauder as the subchapter V trustee (the "Subchapter V Trustee") in this case. *See* D.I. 3.

6.      In filing for Chapter 11 relief, ASTECH seeks to continue operating as a going concern. Additional information regarding ASTECH, including its business operations and the events leading to the filing of this chapter 11 case, is set forth in more detail in the *Declaration of David Richeson in Support of Chapter 11 Petition and Initial Motions* ("First Day Declaration")

3

filed concurrently with this Motion and incorporated herein by reference.

**THE DEBTOR'S EMPLOYEES**

7.      As of the Petition Date, ASTECH has approximately 140 full-time, part-time and salaried employees, and independent contractors—who are temporary employees (collectively, the "Employees"). Hourly employees are paid in arrears on a bi-weekly basis; salaried employees are paid currently. Temporary employees are paid on various terms.

8.      The Employees perform a variety of functions critical to the preservation of value of the Debtor's assets, and to the administration of the Debtor's estate and this Chapter 11 case. The Employees include personnel who are intimately familiar with the Debtor's business, processes, and systems, and who cannot be easily replaced. Without the continued, uninterrupted services of the Employees, the ability of the Debtor to maximize the value of its estate and reorganize will be materially impaired.

9.      The Employees rely on their compensation and benefits to pay their daily living expenses. The Employees would be exposed to significant financial constraints if the Debtor is not permitted to continue paying the Employees' compensation and providing the Employees with health and other benefits. Consequently, the Debtor respectfully submits that the relief requested herein is necessary and appropriate under the facts and circumstances of this Chapter 11 case.

**I.      Employee Compensation and Benefits**

10.      To minimize the personal hardship the Employees would suffer if prepetition Employee-related obligations were not paid when due or as expected, and to maintain stability in the Debtor's workforce during the administration of the Debtor's chapter 11 case, the Debtor, by this Motion, seeks authority, but not direction, to: (i) pay and honor certain prepetition claims

relating to, among other things, wages, salaries, and other compensation, payroll services, federal and state withholding taxes and other amounts withheld (including garnishments, Employees' share of insurance premiums, and taxes), reimbursable expenses, health insurance, health and related benefits, and certain other benefits that the Debtor have historically provided in the ordinary course (collectively, the "Employee Compensation and Benefits"); and (ii) pay all costs incident to the Employee Compensation and Benefits.

11.    Subject to approval from the Court, the Debtor intends to continue its applicable prepetition Employee Compensation and Benefits in the ordinary course. Out of an abundance of caution, the Debtor further requests confirmation of its right to modify, change, and discontinue any of its Employee Compensation and Benefits and to implement new programs, policies, and benefits in the ordinary course during this Chapter 11 case in the Debtor's sole discretion and without the need for further Court approval, subject to applicable law.

12.    By this Motion, the Debtor seeks authority to make the following approximate payments related to prepetition amounts owed on account of the Employee Compensation and Benefits:

| Employee Obligation | Amount |
| --- | --- |
| Unpaid Compensation and Related Amounts | $115,740.00 |
| Withholding Obligations (Deductions and Payroll Taxes) | Paid with payroll |
| Employee Credit Card Expenses | $0.00 |
| Total | $115,740.00 |

**II.      Employee Compensation and Withholding Obligations**

13.    In the ordinary course, the Debtor incurs obligations to its Employees for, among other things, wages, salaries, overtime, bonus programs, and other obligations described herein (collectively, the "Employee Compensation").

14.    As of the Petition Date, the Debtor estimates that its monthly gross payroll liability

is approximately $710,000.00 and that, as of the Petition Date, it owes approximately $115,740.00 on account of Employee Compensation earned by Employees (the "Unpaid Compensation"), the majority of which will come due within the first 30 days of this Chapter 11 case. As described above, if the Debtor fails to pay the Unpaid Compensation, it could result in extreme financial hardship for its Employees – and great risk to the Debtor if Employees suffering from financial hardship choose to leave. In light of the substantial benefit the Employees will continue to provide to the Debtor's estate, the Debtor wishes to avoid imposing such a hardship.

15.    Accordingly, by this Motion the Debtor seeks authority, but not direction, to pay the Employees any Unpaid Compensation in the ordinary course and consistent with past practice and continue the Employee Compensation in the ordinary course. For the avoidance of doubt, by this Motion the Debtor does not seek to pay Unpaid Compensation, if any, to any Employee in excess of the $13,560.00 priority wage cap imposed by section 507(a)(4) of the Bankruptcy Code.

16.    During each applicable payroll period, the Debtor routinely deducts certain amounts from Employees' paychecks, including garnishments, child support, and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of health care benefits and insurance premiums, savings contributions, legally ordered deductions, and miscellaneous deductions (collectively, the "Deductions"), and forwards such amounts to various third-party recipients. In addition to the Deductions, certain federal and state laws require that the Debtor withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll

6

Taxes") for remittance to the appropriate federal, state, or local taxing authorities. The Debtor must then match the Employee Payroll Taxes from its own funds and pay, based upon a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities at the same time the Employees' payroll checks are disbursed. By this Motion, the Debtor seeks authority, but not direction, to pay in a manner consistent with historical practice any unpaid Withholding Obligations and to continue to honor the Withholding Obligations in the ordinary course during the administration of this chapter 11 case.

### III.        Payroll Processing and Professional Employer Organization Agreement

17.    The Debor uses the services of Proliant, a third-party payroll processor, to distribute payroll to its Employees and to manage all of the Debtor's Employee Benefits with the exception of the 401(k) Plan. The Debtor submits its payroll to Proliant weekly. The Debtor pays approximately $3,860.00 per month in fees to Proliant. By this Motion, the Debtor seeks authority, but not direction, to pay processing fees to Proliant in the ordinary course and consistent with past practice during the administration of this chapter 11 case.

### IV.        Reimbursable Expenses

18.    Prior to the Petition Date, and in the ordinary course of the Debtor's business, some Employees incurred various expenses on behalf of the Debtor in the scope of their employment, including, without limitation, expenses for meals, travel, supplies, and other business expenses (collectively, the "Reimbursable Expenses"). All such expenses are incurred with the applicable Employee's understanding that he or she will be reimbursed by the Debtor in accordance with the Debtor's reimbursement policy. In all cases, reimbursement is contingent on the Debtor's

7

determination that the charges are for legitimate, reimbursable business expenses.

19.    Certain Employees incur the Reimbursable Expenses personally, while other Employees incur the Reimbursable Expenses on corporate credit cards (the "Corporate Cards") issued by Divvy Pay, Inc. called the Divvy Cards. Although the Debtor pays the invoices for the Corporate Cards directly, the accounts are held in the names of individual Employees. Therefore, to the extent that the Debtor fails to remit payment to Divvy Pay, Inc. for valid and legitimate charges, the Employees may be personally liable for the same. These expenses are ordinary course expenses that the Employees incur in performing their job functions. It is essential to the continued operation of the Debtor's business that the Debtor be permitted to continue reimbursing, or making direct payments on behalf of, employees for Reimbursable Expenses.

20.    It is difficult for the Debtor to determine the exact amount of Reimbursable Expenses outstanding as of the Petition Date because, among other things, the Employees may have expenses that they have yet to submit to the Debtor for reimbursement. The Debtor estimates that, as of the Petition Date, approximately $1,500.00 in Reimbursable Expenses remain unpaid.

21.    To avoid harming the Employees who incurred the Reimbursable Expenses, the Debtor seeks authority, but not direction, to reimburse the Reimbursable Expenses and pay amounts owed to Employees in the ordinary course of business and in accordance with its prepetition practices and policies, regardless of when such obligations accrued.

**V.        Employee Benefits Program**

**A.        Health Benefit Plan**

22.    The Debtor offers its full-time Employees the opportunity to participate in two different health benefit plans (collectively, the "Health Benefit Plans"), including medical, dental, and vision insurance. As of the Petition Date, the Debtor does not believe there are any accrued and unpaid prepetition amounts related to the Health Benefit Plans.

**B.      Life Insurance and Accidental Death & Dismemberment**

23.      In addition to the Health Benefit Plans, the Debtor offers its full-time Employees the opportunity to participate in additional insurance plans, including life insurance and accidental death & dismemberment insurance, both provided by Mutual of Omaha. As of the Petition Date, the Debtor does not believe there are any accrued and unpaid prepetition amounts related to these benefit Plans.

**C.      Retirement Savings Program**

24.      The Debtor offers eligible, full-time Employees a retirement savings plan pursuant to section 401 of the Internal Revenue Code, (the "401(k) Plan").

25.      Through automatic payroll deductions, participating Employees can contribute a portion of their wages into the 401(k) Plans on a pre-tax basis. The Debtor matches the first one percent (1%) of deferred compensation and fifty percent (50%) of the next five percent (5%) deferred for the 401(k) Plan. The Debtor believes that there are no accrued and unpaid prepetition amounts outstanding with respect to the 401(k) Plans.

26.      The Debtor requests authority, but not direction, to maintain the 401(k) Plan in the ordinary course during the administration of the chapter 11 case, to make the necessary payroll deductions in the ordinary course of business, and to honor obligations under the 401(k) Plan, regardless of when such obligations arose.

**D.      Flexible Spending Accounts and HSA Accounts**

27.      The Debtor offers its Employees the use of flexible spending accounts and HAS Accounts for healthcare. The flexible spending benefits (the "Flex Benefits") and costs are paid by Employees through weekly payroll deductions. The funds designated by each Employee are deposited into the Employee's reimbursement account and accessed through a debit card. The

Debtor believes that there are no accrued and unpaid prepetition amounts outstanding with respect to the Flex Benefits. The Debtor requests authorization to continue the Flex Benefits.

### E.    Paid Time Off

28.    The Debtor provides vacation time to its full-time Employees as a paid time off benefit ( "Paid Time Off"). The amount of Paid Time Off available to all Employees is unlimited. Accordingly, an individual Employee's Paid Time Off does not accrue over time or roll over from year to year. When an Employee elects to take Paid Time Off, the Employee is paid his or her regular rate. For the avoidance of doubt, while the Debtor requests authority to continue to provide Paid Time Off to its Employees, by this Motion the Debtor does not seek to pay Paid Time Off to any Employee in excess of the $13,650.00 priority cap imposed by section 507(a)(4) of the Bankruptcy Code.

### F.  Other Miscellaneous Employee Benefits

29.    The Debtor also offers its Employees an ancillary benefit of online counseling services (the "Ancillary Benefit"). The Debtor seeks authority to continue the Ancillary Benefit in the ordinary course.

### RELIEF REQUESTED

30.    By this Motion, the Debtor seeks for the Court to enter an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") (i) authorizing the Debtor to (a) pay petition employee wages, salaries, other compensation, and reimbursable employee expenses, and (b) continue employee benefits programs; and (ii) granting any appropriate related relief.

**BASIS FOR RELIEF**

I.  **THE COURT SHOULD GRANT THE RELIEF REQUESTED IN THE MOTION PURSUANT TO SECTIONS 363(b) AND 105(a) OF THE BANKRUPTCY CODE**

31.     The relief requested in this Motion is authorized under section 363(b) of the Bankruptcy Code. Section 363(b) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code). Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.,* 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring a "good business reason" for a sale under section 363 of the Bankruptcy Code); *In re Adelphia Commc 'ns Corp.,* No. 02-41729 (REG), 2003 WL 22316543, at \*30 (Bankr. S.D.N.Y. Mar. 4, 2003) (requiring a "good business reason" for disposition of assets outside of the ordinary course in bankruptcy); *In re Lionel Corp.,* 722 F.2d 1063, 1070 (2d Cir. 1983) (same). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.,* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.,* 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

32.     Section 105(a) of the Bankruptcy Code also provides a statutory basis for granting the relief sought herein. Section 105(a) of the Bankruptcy Code, which codifies the inherent

equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Court may use its power under section 105(a) to authorize payment of the Employee Compensation and Benefits under the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *In re NVR L.P.,* 147 B.R. 126, 127-28 (Bankr. E.D. Va. 1992).

33.    The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Railway Company,* 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Motor Coach Indus. Int 'l, Inc.,* No. 08-12136, 2009 WL 330993, at *3 (D. Del. Feb. 10, 2009) (denying stay pending appeal on grounds that there is no serious basis to challenge doctrine of necessity in the Third Circuit); *In re Penn Cent. Transp. Co.*, 467 F.2d 100,.102 n.1 (3d Cir. 1972) (holding that necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Just for Feet, Inc.,* 242 B.R. 821, 824-26 (Bankr. D. Del. 1999) (noting that the Third Circuit permits debtor to pay prepetition claims that are essential to the continued operation of business).

34.    The Debtor believes that its enterprise value would be materially impaired by post-petition workforce instability. The relief requested in this Motion is, therefore, a necessary element of the Debtor's efforts to preserve value for its stakeholders. Absent approval of the relief requested in this Motion, key employees may face significant financial hardship and other

risks and could be forced to seek alternative employment opportunities. Ultimately, the maximization of value of the Debtor's estate is inextricably tied to its Employees. The Debtor's Employees are critical to the Debtor's ability to continue its operations and otherwise administer is chapter 11 case. But the Debtor cannot readily replace its human capital if any Employees choose to leave because of failure to receive their Employee Compensation and Benefits. For this reason, paying the Employee Compensation and Benefits is necessary for the Debtor to avoid unnecessary recruitment and related costs, and to avoid certain operating risks related to the administration of this chapter 11 case. Accordingly, payment of the Employee Compensation and Benefits is warranted under sections 363(b) and 105(a) of the Bankruptcy Code and the doctrine of necessity.

35.     Further, the Debtor believes the vast majority of the Employee Compensation and Benefits are entitled to priority under section 507(a)(4) and 507(a)(5) of the Bankruptcy Code. Thus, granting the relief sought in this Motion is likely to only affect the timing of such payments to Employees, and should not negatively affect recoveries for general unsecured creditors.

## II.     PAYMENT OF CERTAIN EMPLOYEE COMPENSATION AND BENEFITS OBLIGATIONS IS REQUIRED BY LAW

36.     As set forth herein, the Debtor also seeks authority to pay Deductions and Payroll Taxes to the appropriate entities and taxing authorities. These amounts generally represent Employee earnings that taxing authorities, Employees, and judicial authorities have designated for deduction from Employees' paychecks. Indeed, certain Deductions, including certain Employee contributions to the Employee Compensation and Benefits programs and child support and alimony payments, are not property of the Debtor's estate because the Debtor has withheld such amounts from Employees' paychecks on the Employees' behalf. *See* 11 U.S.C. §

13

541(b). Further, federal and state laws require the Debtor to withhold certain tax payments from Employees' paychecks and to pay such amounts to the appropriate taxing authority. *See* 26 U.S.C. §§ 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92,95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.,* 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Deductions and Payroll Taxes are not property of the Debtor's estate, the Debtor requests authority to transmit the Deductions and Payroll Taxes to the proper parties in the ordinary course.

**III.   AUTHORIZING AND DIRECTING BANKS IS APPROPRIATE**

37.   The Debtor also requests that the Court authorize the Debtor's bank (the "Bank") to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtor related to, the claims that the Debtor requests authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on, or after the Petition Date, provided that funds are available in the Debtor's accounts to cover the checks and fund transfers and that the Banks are authorized to rely on the Debtor's designation of any particular check as approved by the Proposed Order.

38.   The Debtor has sufficient liquidity to pay the amounts set forth in this Motion in the ordinary course of business and have implemented controls to ensure that prepetition claims will not be paid except as authorized by the Court. The Debtor therefore submits that the payment processing procedures described in this Motion are appropriate.

**RESERVATION OF RIGHTS**

39.     Nothing herein is intended or should be construed as an admission as to the validity or priority of any claim against the Debtor and/or a waiver of the Debtor's rights to dispute any claim, including the validity or priority thereof. Further, the Debtor reserves its rights to contest any claim under applicable nonbankruptcy law. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim. Finally, nothing here is intended or should be construes as a waiver of any claim or cause of action which may exist against any creditor or interest holder; or an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code.

**V.     SATISFACTION OF BANKRUPTCY RULE 6003 AND WAIVER OF BANKRUPTCY RULE 6004**

40.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty one days after the petition date if the relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re New World Pasta Co.,* No. 04-02817, 2004 WL 5651052, at *5 (Bankr. M.D. Pa. July 9, 2004) (Where "the continued operation of the Debtor's business would not be possible . . . immediate and irreparable harm to the Debtor and its estate would occur."); *Northwest Airlines Corp. v. Ass 'n. of Flight Attendants - CWA (In re Northwest Airlines Corp.),* 349 B.R. 338 (S.D.N.Y. 2006) (holding that the loss of ongoing business can constitute irreparable harm), *aff'd,* 483 F.3d 160 (2d. Cir. 2007).

15

41.    The Court may grant the relief requested in this Motion immediately if the "relief is necessary to avoid immediate and irreparable harm." Bankruptcy Rule 6003; *see also In re First NLC Fin. Servs., LLC,* 382 B.R. 547,549 (Bankr. S.D. Fla. 2008). The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the Third Circuit has instructed that irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir. 1989). The Debtor submits that, for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

42.    The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate without interruption and to preserve value for its estate. Accordingly, the Debtor respectfully requests that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

**NOTICE**

43.    Notice of this Motion shall be provided to: (i) the Office of the United States Trustee; (ii) the Subchapter V Trustee; (iii) the Employees; (iv) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; and (v) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits

that no other or further notice is necessary.

44.    ASTECH has not made any prior request to this or to any other court for the relief sought herein.

## CONCLUSION

WHEREFORE, ASTECH respectfully requests entry of Proposed Orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B,** granting the relief requested herein and such other and further relief as may be just and proper.

Dated: July 20, 2022

**COZEN O'CONNOR**

/s/ Thomas M. Horan
Thomas M. Horan (DE Bar No. 4641)
Marla S. Benedek (DE Bar No. 6638)
1201 N. Market St., Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2045
E-mail: thoran@cozen.com
E-mail: mbenedek@cozen.com

Ira Bodenstein (admitted pro hac vice)
123 North Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone: (312) 474-1647
E-mail: ibodenstein@cozen.com

-and-

**BROOKS WILKINS SHARKEY & TURCO PLLC**
Matthew E. Wilkins (admitted pro hac vice)
Paula A. Hall (admitted pro hac vice)
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1800
E-mail: Wilkins@BWST-Law.com
E-mail: Hall@BWST-Law.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*

17