**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ASTECH ENGINEERED PRODUCTS, INC.,[1]<br><br>                            Debtor. | Chapter 11 (Subchapter V)<br><br>Case No. 22-10635 (BLS)<br><br>**Hearing Date: July 22, 2022 at 10:00 a.m. (ET)** |

**MOTION OF DEBTOR FOR ENTRY OF INTERIM**
**AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO (A) MAINTAIN**
**ITS INSURANCE POLICIES AND PROGRAMS AND (B) HONOR ALL**
**INSURANCE OBLIGATIONS, AND (II) GRANTING RELATED RELIEF**

ASTECH Engineered Products, Inc., as debtor and debtor in possession ("ASTECH" or the "Debtor"), in the above-captioned chapter 11 case, by and through its undersigned proposed counsel, submits this motion for interim[2] and final[3] orders (i) authorizing the Debtor to (a) maintain its insurance policies and programs, and (b) honor all insurance obligations, and (ii) providing related relief (the "Motion"), respectfully represents as follows in support thereof:

**PRELIMINARY STATEMENT**

1. By this Motion, the Debtor seeks to maintain its various insurance policies and programs, to ensure a smooth transition into chapter 11 and preserve the Debtor's estate. The Debtor manufactures complex aerospace components, parts, and assemblies, and operates in a highly regulated industry that requires it to maintain certain coverage in order to manufacture its products for its customers. The failure to maintain such coverage would expose the Debtor to a variety of risks and potentially result in irreparable harm to the Debtor's estate. Accordingly, the

---

[1] The last four digits of the Debtor's federal tax identification number are 7721. The Debtor's address is 3030 Red Hill Avenue, Santa Ana, CA 92705.
[2] Attached hereto as Exhibit A.
[3] Attached hereto as Exhibit B.

relief requested herein is crucial to minimize any disruptions to the Debtor's chapter 11 strategy and maximize value for all parties in interest.

## BACKGROUND

2.    On July 15, 2022 (the "Petition Date"), the Debtor filed in the United States Bankruptcy Court for the District of Delaware (the "Court") a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    On July 18, 2022, the Office of the United States Trustee appointed David M. Klauder as the subchapter V trustee (the "Subchapter V Trustee") in this case. *See* D.I. 3.

4.    Additional information regarding the Debtor's business and the circumstances leading to the commencement of this chapter 11 case is set forth in the *Declaration of David Richeson in Support of Chapter 11 Petition and Initial Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## JURISDICTION

5.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot

enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory bases for the relief requested herein are sections 105(a), 363, 1107, and 1108 of the Bankruptcy Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013.

## RELIEF REQUESTED

8. By this Motion, the Debtor requests (i) authority, but not direction, to (a) maintain, continue and renew its Insurance Policies and Programs (as defined below), and (b) honor its Insurance Obligations (as defined below) in the ordinary course of business during this Chapter 11 case; and (ii) related relief.

9. In furtherance of the foregoing, the Debtor also seeks authority to revise, extend, supplement or otherwise modify its insurance coverage if it determines, in its business judgment, that such action is necessary or appropriate. As of the Petition Date, the Debtor believes that $66,291.00 of its Insurance Obligations will become due and owing in the first thirty days of this case. Accordingly, the Debtor requests, pursuant to this Motion, authority to (i) maintain its Insurance Policies and Programs, and (ii) pay, upon entry of the Proposed Interim Order (as defined below), up to $70,000.00 on account of the Insurance Obligations and, upon entry of the Proposed Final Order (as defined below), all outstanding prepetition Insurance Obligations, as they come due in the ordinary course of business.

10. A proposed form of order granting the relief requested herein on an interim basis is attached hereto as **Exhibit A** (the "Proposed Interim Order"), and a proposed form of order

3

granting the relief requested herein on a final basis is attached hereto as **Exhibit B** (the "Proposed Final Order" and together with the Proposed Interim Order, the "Proposed Orders").

## DEBTOR'S INSURANCE POLICIES AND PROGRAMS

11.     In connection with the operation of the Debtor's business and the management of its properties, the Debtor maintains coverage under various insurance policies (collectively, the "Insurance Policies and Programs," and all premiums and the Debtor's obligations related thereto, including any broker or advisor fees, premium financing arrangements, assessments, or other fees, collectively, the "Insurance Obligations").   A list of the Insurance Policies and Programs, through several different insurance carriers (the "Insurers") is attached hereto as **Exhibit C** and incorporated herein by reference.

12.     By this Motion, the Debtor requests authority, but not direction, to maintain, continue, and renew its Insurance Policies and Programs, and to honor its Insurance Obligations, as they come due, each in the ordinary course of business during this chapter 11 case.

## I.     Insurance Policies

13.     The Debtor maintains the Insurance Policies and Programs which provide the Debtor with coverage related to, among other things, general liability, environmental liability, workers' compensation, property, automobile liability, directors' and officers' liability, cyber liability, aircraft products liability, and site pollution coverage, that are administered by the Insurers.

14.     The Insurance Policies and Programs obtained by the Debtor require the Debtor to pay premiums based upon fixed rates established and invoiced directly by the applicable Insurer.

15.     The Insurance Policies and Programs are annual policies that expire in March 2023. The total annual premiums and related obligations paid by the Debtor will equal approximately $912,065.00 for the 2022-2023 policy period.

16.      The Debtor maintains the Insurance Policies and Programs to help manage and limit the various risks associated with operating its business, which is essential to the preservation of the value of the Debtor's estate. Some of the Insurance Policies are required by regulations, laws, and contracts that govern the Debtor's commercial activities. Furthermore, the Bankruptcy Code reinforces these requirements, as section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public," and may be "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).

## II.      Debtor's Insurance Broker

17.      In connection with the Insurance Policies and Programs, the Debtor employs Ironwood, a Marsh McLennan Agency (the "Insurance Broker") to help procure, negotiate, and evaluate such policies and programs for the Debtor, and provide risk management services related thereto. As compensation for these services, the Insurance Broker typically assesses in advance fees (the "Insurance Broker Fees") paid semi-annually based on the annual coverage period. As of the Petition Date, the Debtor believe no amounts are outstanding on account of Insurance Broker Fees.

## THE RELIEF REQUESTED SHOULD BE GRANTED

18.      A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code. 11 U.S.C. § 363(b)(1). Section 363(b) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations

omitted). *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business purpose" test of Lionel Corp. and requiring good faith); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).

19.    Moreover, the Court has the authority to authorize the relief requested herein pursuant to section 105(a) of the Bankruptcy Code because such relief is necessary for the Debtor to carry out its fiduciary duties under section 1107(a) of the Bankruptcy Code and to operate its business under section 1108.

20.    Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "The Third Circuit has construed [section 105 of the Bankruptcy Code] to give bankruptcy courts 'broad authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization proceedings, and to craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." In re Nortel Networks, Inc., 532 B.R. 494, 554 (Bankr. D. Del. 2015) (citations omitted).

21.    Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a Debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (citations omitted); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

6

22.    Courts consistently permit payment of prepetition obligations that are necessary to preserve or enhance the value of a Debtor's estate. *See, e.g.*, *Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim before reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization case), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

23.    In addition to its equitable powers under section 105(a), the Court may rely on the doctrine of necessity to authorize the payment of prepetition claims when such payment is essential to the continued operation of a Debtor's business. *See, e.g.*, *In re Just for Feet*, 242 B.R. 821, 824–26 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity, particularly when such payment is necessary for the Debtor's survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims before confirming a plan); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S. D. Ohio 1991) ("[T]o

justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

24. The Insurance Obligations are necessary costs of both operating the Debtor's business and preserving the Debtor's estate. The Debtor operates in a highly-regulated environment, which requires it to maintain certain insurance coverage to manufacture its products. The Debtor manufactures complex aerospace components, parts and assemblies that are used by commercial, business, military and general aviation aircraft. Manufacturing these specialized products for use in such a highly-regulated industry exposes the Debtor to various, potentially significant, liabilities. Accordingly, the Insurance Policies are essential to minimizing risks and disruptions, which otherwise could have a materially adverse impact on the Debtor's chapter 11 strategy and its ability to maximize value for its stakeholders. Furthermore, the Debtor is obligated to maintain the Insurance Policies and Programs under the operating guidelines of the Office of the United States Trustee for Region 3 and the Bankruptcy Code.

25. To the extent the maintenance of the Insurance Policies, including any related Insurance Broker's Fees are outside the ordinary course of business, they are justified under section 363(b) of the Bankruptcy Code. Even where coverage is not expressly required by applicable law, the Debtor is compelled by sound business practice to maintain essential insurance coverage. Any interruption in such coverage would expose the Debtor to a variety of risks, including the possible (a) incurrence of direct liability for the payment of claims that otherwise would have been covered by the Insurance Policies and Programs, (b) incurrence of material costs and other losses that otherwise would have been reimbursed, such as attorneys' fees for covered claims, (c) inability to obtain similar types and levels of insurance coverage, (d) incurrence of higher costs for reestablishing lapsed policies or obtaining new insurance coverage,

and (e) incurrence of potential liability arising from the breach of contractual obligations to maintain insurance coverage.

26.     In addition, the Court should authorize the Debtor to continue paying its Insurance Broker in the ordinary course of business as the Insurance Broker is intimately familiar with the Debtor's Insurance Policies and Programs and Insurance Obligations. Without the services provided by the Insurance Broker, there could be a costly disruption to the Debtor's businesses and a negative impact on the efficient administration of this chapter 11 case. As the Debtor believes there are no outstanding Insurance Broker Fees as of the Petition Date, the Debtor requests this relief out of an abundance of caution.

27.     The relief requested by this Motion represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate, and is justified under sections 363(b) and 105(a) of the Bankruptcy Code. Authorizing the Debtor to maintain the Insurance Policies and Programs and to pay all prepetition amounts, if any, related to the Insurance Obligations is in the best interests of the Debtor, its estate, and its economic stakeholders.

**APPLICABLE FINANCIAL INSTITUTIONS SHOULD BE AUTHORIZED TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS ISSUED AND TRANSFERS REQUESTED TO PAY INSURANCE OBLIGATIONS**

28.     The Debtor further requests that this Court authorize applicable financial institutions (the "Banks") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested by or on behalf of the Debtor relating to the Insurance Obligations, to the extent that sufficient funds are on deposit and standing in the Debtor's credit in the applicable bank accounts to cover such payment. The Debtor represents that these checks are drawn on identifiable disbursement accounts and can be

readily identified as relating directly to the authorized payment of Insurance Obligations. Accordingly, the Debtor believes that checks other than those relating to authorized payments will not be honored inadvertently. The Banks may rely on the representations of the Debtor as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this Motion without any duty of further inquiry. The Debtor also seeks authority, but not direction, to issue new post-petition checks or effect new post-petition electronic funds transfers in replacement of any checks or funds transfer requests on account of Insurance Obligations dishonored or rejected as a result of the commencement of the Debtor's Chapter 11 case.

## **BANKRUPTCY RULE 6003(b)**

29.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one days after filing of the petition. Fed. R. Bankr. P. 6003(b). As explained above and in the First Day Declaration, the relief requested herein is necessary for the Debtor to succeed in chapter 11, to continue to operate its business in the ordinary course, and to maximize the value of the Debtor's estate for the benefit of all stakeholders. Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, satisfies Bankruptcy Rule 6003.

## **BANKRUPTCY RULE 6004(a) AND (h)**

30.     To implement the foregoing successfully, the Debtor requests that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances,

and waive the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary for the Debtor to transition into Chapter 11 and to avoid immediate and irreparable harm to the Debtor. Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent those requirements apply.

## RESERVATION OF RIGHTS

31.     Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor; (c) a waiver of any claim or cause of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

## NOTICE

32.     The Debtor will serve notice of this Motion upon (i) the Office of the United States Trustee; (ii) the holders of the twenty largest unsecured claims against the Debtor; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the District of Delaware; (v) the Securities and Exchange Commission; (vi) the Insurers; (vii) the Insurance Broker; (viii) the Subchapter V Trustee; and (ix) any party entitled to notice under Bankruptcy Rule 2002 or

Local Rule 9013-1(m) (collectively, the "Notice Parties"). The Debtor respectfully submits that no further notice is required.

## NO PRIOR REQUEST

33.     No previous request for the relief sought herein has been made by the Debtor to this or any other court.

## CONCLUSION

WHEREFORE the Debtor respectfully request entry of orders substantially in the form of the Proposed Orders attached hereto granting the relief requested herein, and such other and further relief as the Court may deem just and appropriate.

Dated: July 20, 2022

**COZEN O'CONNOR**

*/s/ Thomas M. Horan*

Thomas M. Horan (DE Bar No. 4641)
Marla S. Benedek (DE Bar No. 6638)
1201 N. Market St., Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2045
E-mail: thoran@cozen.com
E-mail: mbenedek@cozen.com

Ira Bodenstein (admitted pro hac vice)
123 North Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone: (312) 474-1647
E-mail: ibodenstein@cozen.com

-and-

**BROOKS WILKINS SHARKEY & TURCO PLLC**
Matthew E. Wilkins (admitted pro hac vice)
Paula A. Hall (admitted pro hac vice)
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1800
E-mail: Wilkins@BWST-Law.com
E-mail: Hall@BWST-Law.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*