**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| ASTECH ENGINEERED PRODUCTS, INC.,[1] | Case No. 22-10635 (BLS) |
| | **Hearing Date: July 22, 2022 at 10:00 a.m. (ET)** |
| Debtor. | |

**MOTION OF DEBTOR PURSUANT TO 11 U.S.C. §§ 105(a) AND 366
AND FED. R. BANKR. P. 6003 AND 6004 FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) APPROVING DEBTOR'S PROPOSED FORM OF ADEQUATE
ASSURANCE OF PAYMENT TO UTILITY COMPANIES, (II) ESTABLISHING
PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES,
(III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING,
OR DISCONTINUING SERVICE, AND (IV) GRANTING RELATED RELIEF**

ASTECH Engineered Products, Inc., as debtor and debtor in possession ("ASTECH" or the "Debtor") in the above-captioned chapter 11 case, by and through its proposed undersigned counsel, submits this motion for entry of interim[2] and final[3] orders pursuant to 11 U.S.C. § 366 (i) prohibiting utility providers from altering, refusing, or discontinuing services to the Debtor; (ii) approving the Debtor's proposed form of adequate assurance of future payment to utility companies; (iii) establishing procedures for resolving objections raised by utility companies; and (iv) providing related relief (the "Motion"), and respectfully represents as follows in support thereof:

**PRELIMINARY STATEMENT**

1.    By this Motion, the Debtor seeks to minimize disruption of utility services to its plant and ensure a smooth transition into and through Chapter 11. Specifically, the Debtor

---

[1] The last four digits of the Debtor's federal tax identification number are 7721. The Debtor's address is 3030 Red Hill Avenue, Santa Ana, CA 92705.
[2] Attached hereto as Exhibit A.
[3] Attached hereto as Exhibit B.

requests approval of the form of adequate assurance of payment it will provide to its utility providers, a deposit, and procedures to resolve any dispute that may arise relating to the adequate assurance. The Debtor also requests that the Court prohibit its utility providers from discontinuing or otherwise affecting the Debtor's services, absent compliance with the proposed procedures. These measures will ensure that the Debtor maintains critical utility services to its manufacturing facility, the lifeblood of the Debtor's business, and therefore avoid irreparable harm to the Debtor's estate at this critical juncture in its chapter 11 case.

## BACKGROUND

2.      On July 15, 2022 (the "Petition Date"), the Debtor filed in the United States Bankruptcy Court for the District of Delaware (the "Court") a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its businesses as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On July 18, 2022, the Office of the United States Trustee appointed David M. as the subchapter V trustee (the "Subchapter V Trustee") in this case. *See* D.I. 3.

4.      Additional information regarding the Debtor's business and the circumstances leading to the commencement of this chapter 11 case is set forth in the *Declaration of David Richeson in Support of Chapter 11 Petition and Initial Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## JURISDICTION

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. §

157(b). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code, and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Local Rule 9013.

## RELIEF REQUESTED

8.      The Debtor requires the continuation of certain utility services in order to sustain its operations and help its efforts to reorganize. By this Motion, pursuant to sections 105(a) and 366 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004, the Debtor requests entry of an order (i) approving the Debtor's proposed form of adequate assurance of payment to the Utility Companies (as outlined below), (ii) establishing procedures for resolving objections by the Utility Companies relating to the adequacy of the proposed adequate assurance, (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtor on account of the commencement of these chapter 11 cases or outstanding prepetition invoices, and (iv) providing related relief.

9.      A proposed form of order granting the relief requested herein on an interim basis is attached hereto as **Exhibit A** (the "Proposed Interim Order"), and a proposed form of order granting the relief requested herein on a final basis herein is attached hereto as **Exhibit B** (the "Proposed Final Order" and together with the Proposed Interim Order, the "Proposed Orders").

**THE DEBTOR'S UTILITIES, PROPOSED
ADEQUATE ASSURANCE, AND PROPOSED PROCEDURES**

**I.    Utility Companies**

10.    In the ordinary course of business, the Debtor incurs utility expenses, including on account of internet, telephone, electricity, gas, water, garbage, waste disposal, recycling, security and other utility services (collectively, the "Utility Services") from a number of utility companies (collectively, the "Utility Companies"). A nonexclusive list of the Utility Companies that provide Utility Services to the Debtor as of the Petition Date is attached hereto as **Exhibit C** (the "Utility Services List") and incorporated herein by reference.

11.    The Debtor relies on the Utility Companies to provide Utility Services to its business operations located in Santa Ana, California, and to provide necessary support to its employees, vendors, and customers. Preserving the Utility Services on an uninterrupted basis is essential to the Debtor's ongoing operations, and even a brief alteration or discontinuation of service would likely cause severe disruption to the Debtor's business. Based on a monthly average for the twelve months prior to the Petition Date, the Debtor estimates that its cost of Utility Services for the next thirty days will be approximately $210,000.00.

**II.    Proposed Adequate Assurance**

12.    The Debtor intends to pay all post-petition obligations owed to the Utility Companies in a timely manner and has sufficient funds to do so. To provide the Utility Companies with adequate assurance of future payment pursuant to section 366 of the Bankruptcy Code, the Debtor proposes to deposit cash in an amount that exceeds two weeks' cost of Utility Services, calculated using the historical average for such payments during the twelve months prior to the Petition Date (the "Adequate Assurance Deposit"), into a newly created, segregated account for the benefit of the Utility Companies (the "Utility Deposit Account"). As of the Petition Date,

the Debtor estimates that the total amount of the Adequate Assurance Deposit will be approximately $141,300.00.

13.     The Debtor will transfer funds for the Adequate Assurance Deposit into the Utility Deposit Account within twenty days after the Petition Date, which the Debtor will hold in the Utility Deposit Account for the benefit of the Utility Companies on the Utility Services List during the pendency of these chapter 11 cases, to only be applied to any post-petition defaults in payment to the Utility Companies by the Debtor.

14.     The Debtor may adjust the Adequate Assurance Deposit if the Debtor (i) terminates any of the Utility Services provided by a Utility Company, (ii) makes other arrangements with certain Utility Companies for adequate assurance of payment, (iii) determines that an entity listed on the Utility Services List is not a utility company as defined by section 366 of the Bankruptcy Code, or (vi) supplements the Utility Services List to include additional Utility Companies.

15.     The Debtor further requests that the Adequate Assurance Deposit be automatically available to the Debtor, without further Court order, upon the earlier of the effective date of a chapter 11 plan and closure of the chapter 11 case. Additionally, if the Debtor terminates any of the Utility Services provided by a Utility Company, the Debtor requests that it be permitted to reduce the Adequate Assurance Deposit to reflect the termination of that Utility Company.

16.     The Debtor submits that the Adequate Assurance Deposit, in conjunction with the Debtor's ability to pay for future Utility Services in the ordinary course of business (together, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance of future payment to the Utility Companies in full satisfaction of section 366 of the Bankruptcy Code.

**III.**     **Proposed Adequate Assurance Procedures**

17.     Any Utility Company that is not satisfied with the Proposed Adequate Assurance may request additional or different adequate assurance of future payment pursuant to the procedures set forth below (the "Adequate Assurance Procedures"):

a.      The Debtor will serve a copy of this Motion and the Proposed Interim Order on the Utility Companies on the Utility Services List within three business days after entry of the Proposed Interim Order.

b.      Subject to entry of the Proposed Interim Order, the Debtor will deposit the Adequate Assurance Deposit, in the aggregate amount of $141,300.00 in the Utility Deposit Account within twenty days after the Petition Date.

c.      The portion of the Adequate Assurance Deposit attributable to each Utility Company will be returned to the Debtor on the earlier of (i) reconciliation and payment by Debtor of the Utility Company's final invoice in accordance with applicable nonbankruptcy law following the Debtor's termination of Utility Services from such Utility Company and (ii) the earlier of (a) the effective date of any chapter 11 plan confirmed in this case and (b) the closure of this case; provided that there are no outstanding disputes related to post-petition payments due to the affected Utility Companies.

d.      Any Utility Company that is not satisfied with the assurance of future payment must serve a written request for additional assurance (an "Additional Assurance Request") on the following parties:  (i) the Debtor, ASTECH Engineered Products, Inc., 3030 Red Hill Avenue, Santa Ana, CA 92705; (ii) proposed counsel to the Debtor, (a) Brooks Wilkins Sharkey & Turco PLLC, 401 S. Old Woodward, Suite 400, Birmingham, MI 48009, Attn: Matthew E. Wilkins (wilkins@bwst-law.com) and Paula A. Hall (hall@bwst-law.com), and (b) Cozen O'Connor, 1201 N. Market Street, Suite 1001, Wilmington, DE 19801, Attn: Thomas M. Horan (thoran@cozen.com); (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: Linda Casey (Linda.Casey@usdoj.gov); and (iv) the Subchapter V Trustee, David M. Klauder, Bielli & Klauder, LLC, 1204 N. King Street, Wilmington, DE 19801 (dklauder@bk-blegal.com).

e.      The Additional Assurance Request must (i) be made in writing, (ii) set forth the location(s) for which Utility Services are provided, the account number(s) for those location(s), and the outstanding balance for each account, (iii) explain why the Utility Company believes the Adequate Assurance Deposit is not adequate assurance of payment, (iv) summarize the Debtor's payment history relevant to the affected account(s), (v) certify the amount that is equal to two weeks of the Utility Services provided by the Utility Company to the Debtor, calculated as a historical average over the twelve-month period preceding the Petition Date, and (vi) certify

that the Utility Company does not already hold a deposit equal to or greater than two weeks of Utility Services provided by such Utility Company.

f.      An Additional Assurance Request may be made at any time. If a Utility Company does not serve an Additional Assurance Request, the Utility Company will be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtor on account of any unpaid prepetition charges or requiring additional assurance of payment other than the Proposed Adequate Assurance.

g.      Upon the Debtor's receipt of an Additional Assurance Request, the Debtor will negotiate with the Utility Company to resolve the Utility Company's Additional Assurance Request.

h.      The Debtor may, without further order from the Court, resolve an Additional Assurance Request by mutual agreement with a Utility Company, and the Debtor may, in connection with any such agreement, provide a Utility Company with additional adequate assurance of payment, including cash deposits, payments of any outstanding prepetition balance due to the Utility Company, prepayments, or other forms of security if the Debtor believes that such adequate assurance is reasonable.

i.      If the Debtor and the Utility Company are not able to reach an alternative resolution within thirty days of receipt of the Additional Assurance Request, the Debtor will request a hearing before the Court to determine the adequacy of assurance of payment with respect to the particular Utility Company (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code, unless the Debtor and the Utility Company agree in writing to extend the negotiation period.

j.      Pending resolution of the Additional Assurance Request and Determination Hearing, the Utility Company making the Additional Assurance Request will be prohibited from altering, refusing, or discontinuing Utility Services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

## IV.     Subsequent Modifications of Utility Services List

18.     Although the Debtor has made a good faith effort to identify all of the Utility Companies and include them on the Utility Services List, certain Utility Companies may not be listed therein. To the extent the Debtor identifies additional Utility Companies omitted from the Utility Services List, the Debtor shall promptly file amendments to the Utility Services List and serve copies of this Motion and the interim or final order, as applicable, granting this Motion on any

7

newly identified Utility Companies. In addition, the Debtor will increase the amount of the Adequate Assurance Deposit to account for any newly identified Utility Companies. The Debtor requests that the Proposed Orders bind all Utility Companies, regardless of when the Utility Companies are added to the Utility Services List.

19.     If the Debtor terminates the services of any Utility Company, the Debtor will amend the Utility Services List to reflect such termination. The Debtor seeks authorization to, when it terminates the services of any Utility Company, reduce the Adequate Assurance Deposit by the amount held on account of such terminated Utility Company after seven days' notice of the intended reduction of the Adequate Assurance Deposit, having either resolved or not received any responses thereto by such deadline.

## THE RELIEF REQUESTED SHOULD BE GRANTED

20.     The relief requested in this Motion will ensure the continuation of the Debtor's business at this critical juncture as it transitions into chapter 11. The relief requested also provides the Utility Companies with a fair and orderly procedure for determining requests for additional adequate assurance, without which the Debtor could be forced to address multiple requests by Utility Companies in a disorganized manner when the Debtor's efforts should be more productively focused on continuing to operate its businesses for the benefit of all parties in interest.

**I.      Proposed Adequate Assurance Is Sufficient**

21.     11 U.S.C. § 366 provides in pertinent part:

(a)     Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
(b)     Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request

of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

. . .

 (c)(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

11 U.S.C. § 366.

22.     Section 366 of the Bankruptcy Code is designed to serve the dual purposes of protecting a debtor from being cut off from utility services and providing utility companies with "adequate assurance" that the debtor will be able to pay for postpetition services. *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N 5963, 6306. To that end, pursuant to section 366(c) of the Bankruptcy Code, during the first thirty days of a chapter 11 case, a utility company may not alter, refuse, or discontinue service to, or discriminate against, a debtor solely on the basis of the commencement of a chapter 11 case or unpaid prepetition amounts, but after the first thirty days, however, a utility company may alter, refuse, or discontinue service if a debtor does not provide adequate assurance of payment for postpetition utility services in satisfactory form.

23.     Section 366(c)(1)(A) of the Bankruptcy Code defines "assurance of payment" to mean several enumerated forms of security (e.g., a cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or other mutually agreed upon security), while section 366(c)(1)(B) expressly excludes from such definition an administrative expense priority for a utility's claim. In addition, section 366(c)(3)(B) of the Bankruptcy Code provides a list of factors that courts are *not* to consider when evaluating whether a proposed adequate

assurance payment is in fact adequate. These factors include (i) the absence of security before the petition date, (ii) the Debtor's history of timely payments, and (iii) the availability of an administrative expense priority.

24.      Although section 366(c) of the Bankruptcy Code clarifies what does and does not constitute "assurance of payment" and what can be considered in determining whether such assurance is adequate, Congress, in enacting such section, did not divest this Court of its power to determine what amount, if any, is necessary to provide adequate assurance of payment to a Utility Company. *See In re Marion Steel Co.*, 35 B.R. 188, 195 (Bankr. D. Ohio 1983) (determinations of adequate assurance under § 366 are fully within the bankruptcy court's discretion); *In re Great Atlantic & Pacific Tea Co., Inc.*, 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) ("As an initial matter, bankruptcy courts have historically been afforded reasonable discretion in determining what constitutes adequate assurance of payment for continuing utility services.").

25.      There is nothing to prevent a court from deciding, on the facts of the case before it, that the amount required of a debtor to provide adequate assurance of payment to a utility company should be nominal or even zero. *See, e.g.*, *In re Pac- West Telecomm, Inc.*, No. 07-10562 (BLS) (Bankr. D. Del. May 2, 2007) [D.I. 39] (approving adequate assurance in the form of one-time supplemental prepayment to each utility company equal to prorated amount of one week's charges); *In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming the bankruptcy court's decision that no utility deposit was necessary where such deposits would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already [were] reasonably protected"); *In re Heard*, 84 B.R. 454, 459 (Bankr. W.D. Tex. 1987) (holding that because the utility had not had any difficulty with the Debtor during 14 years of

service, "the utility need[ed] no adequate  assurance"). Prior to the enactment of section 366(c), courts frequently made such rulings pursuant to section 366(b). *See Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

26.      Although section 366(c)(2) of the Bankruptcy Code allows a utility to take action if the debtor fails to provide adequate assurance of payment that is "satisfactory" to the utility, the bankruptcy court is the ultimate arbiter of what is "satisfactory" assurance after taking into consideration the relationship between the debtor and the utility. *See, e.g.*, *In re Penn. Cent. Transp. Co.*, 467 F.2d at 103–04 (3d Cir. 1972); *In re Heard*, 84 B.R. at 459. Indeed, section 366 of the Bankruptcy  Code only requires that assurance of payment be "adequate," and courts construing section 366(b)  have long  recognized that adequate assurance of payment does not constitute an absolute guarantee of the Debtor'ss ability to pay.  *See, e.g.*, *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for postpetition services."); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires the Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997); *In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008)

11

("Adequate assurance, however, is not a guarantee of payment; rather, it is intended to guard against the utility assuming an unreasonable risk of non-payment.").

27.      Here, the Debtor's proposed Adequate Assurance Procedures satisfy the requirements of 11 U.S.C. § 366(c) because the Utility Companies will be adequately assured against any risk of nonpayment for future services.  Importantly, the rights of the Utility Companies will not be prejudiced should the relief requested herein be granted because the Utility Companies' right to seek additional relief is not eliminated. Rather, the Utility Companies are provided an opportunity to negotiate additional assurance of future payment and ultimately come before the Court to request such additional assurance if necessary under the procedures proposed above.

28.      The Debtor has a good historical payment record with the Utility Companies. To the best of the Debtor's knowledge, there are no material defaults or arrearages of any significance for the Debtor's undisputed invoices for prepetition Utility Services. Accordingly, the Adequate Assurance Deposit and the Debtor's ongoing ability to meet obligations as they come due in the ordinary course provide assurance of the Debtor's payment of its future obligations to the Utility Companies.

29.      Moreover, if the relief requested herein is not granted, a Utility Company may terminate Utility Services that are critical to the Debtor's operations. Termination of the Utility Services would result in the Debtor's inability to operate its business, to the detriment of all stakeholders. *See In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan 4, 2009) ("The consequences of an unexpected termination of utility service to [the Debtor] could be catastrophic."); *In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the Debtor "would have to cease

12

operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it.").

## II.    Adequate Assurance Procedures are Reasonable and Appropriate

30.    If a Utility Company does not believe the Proposed Adequate Assurance is "satisfactory," that Utility Company may file an objection or submit an Additional Assurance Request pursuant to the Adequate Assurance Procedures described above. The proposed Adequate Assurance Procedures are reasonable because they will ensure that the Utility Services continue while providing a streamlined process for Utility Companies to challenge the adequacy of the Proposed Adequate Assurance or seek an alternative form of adequate assurance. The Court has the power to approve these Adequate Assurance Procedures pursuant to section 105(a) of the Bankruptcy Code, which provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. Adequate Assurance Procedures are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366.

31.    For the foregoing reasons, the Proposed Adequate Assurance and the Adequate Assurance Procedures are necessary, appropriate, and in the best interests of the Debtor, its estate, and all other parties in interest in these cases and they will not prejudice the rights of the Utility Companies.  Accordingly, the Court should grant the relief requested herein.

## BANKRUPTCY RULE 6003(b)

32.    Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one days after filing of the petition. Fed. R. Bankr. P. 6003(b). As explained above and in the First Day

Declaration, the relief requested herein is necessary for the Debtor to succeed in these chapter 11 proceedings, to continue to operate its business in the ordinary course, and to maximize the value of the Debtor's estate for the benefit of all stakeholders. Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, satisfies Bankruptcy Rule 6003.

## BANKRUPTCY RULE 6004(a) AND (h)

33.    To implement the foregoing successfully, the Debtor requests that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary for the Debtor's transition into Chapter 11 and to avoid immediate and irreparable harm to the Debtor. Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent those requirements apply.

## RESERVATION OF RIGHTS

34.    Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor; (c) a waiver of any claim or cause of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made

14

pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

## NOTICE

35.     The Debtor will serve notice of this Motion upon (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the twenty largest unsecured claims against the Debtor; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the District of Delaware; (v) the Securities and Exchange Commission; (vi) the Utility Companies; and (vii) the Subchapter V Trustee; and (viii) any party entitled to notice under Bankruptcy Rule 2002 or Local Rule 9013-1(m) (collectively, the "Notice Parties"). The Debtor respectfully submits that no further notice is required.

## NO PRIOR REQUEST

36.     No previous request for the relief sought herein has been made by the Debtor to this or any other court.

**CONCLUSION**

WHEREFORE the Debtor respectfully request entry of orders substantially in the form of the Proposed Orders attached hereto granting the relief requested herein, and such other and further relief as the Court may deem just and appropriate.

Dated: July 20, 2022

**COZEN O'CONNOR**

/s/ Thomas M. Horan
Thomas M. Horan (DE Bar No. 4641)
Marla S. Benedek (DE Bar No. 6638)
1201 N. Market St., Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2045
E-mail: thoran@cozen.com
E-mail: mbenedek@cozen.com

Ira Bodenstein (admitted pro hac vice)
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 474-1647
E-mail: ibodenstein@cozen.com

-and-

**BROOKS WILKINS SHARKEY & TURCO PLLC**
Matthew E. Wilkins (admitted pro hac vice)
Paula A. Hall (admitted pro hac vice)
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1800
E-mail: Wilkins@BWST-Law.com
E-mail: Hall@BWST-Law.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*