## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| ASTECH ENGINEERED PRODUCTS, INC.,[1] | Case No. 22-10635 (BLS) |
| Debtor. | |

## DECLARATION OF DAVID RICHESON
## IN SUPPORT OF CHAPTER 11 PETITION AND INITIAL MOTIONS

I, David Richeson, hereby declare under penalty of perjury:

1.      I am the Executive Chairman of ASTECH Engineered Products, Inc., the debtor and debtor in possession in this Chapter 11 case ("ASTECH" or the "Debtor"). I am authorized to submit this declaration (the "First Day Declaration") on behalf of the Debtor.

2.      I have over 20 years of experience in advising financially and operationally distressed companies. In these roles, I have managed all aspects of the financial restructuring process.

3.      As the Debtor's Executive Chairman, I am familiar with the Debtor's financial matters, cash flows, and underlying books and records. The facts set forth in this Declaration are based upon my personal knowledge of the Debtor's financial information and records, and information supplied to me by the Debtor's management team. If called to testify, I could and would testify competently to the facts set forth in this Declaration.

4.      On July 15, 2022 (the "Petition Date"), the Debtor filed a voluntary petition commencing this Chapter 11 case. The Debtor is eligible to, and has elected to, proceed under

---

[1] The last four digits of the Debtor's federal tax identification number are 7721. The Debtor's address is 3030 Red Hill Avenue, Santa Ana, CA 92705.

Subchapter V of Chapter 11. Through this Chapter 11 case, the Debtor intends and seeks to restructure its financial operations and its business relationships with its key customers.

5.    I submit this Declaration on behalf of the Debtor and in support of the Debtor's (a) voluntary petition for relief; and, (b) initial motions filed either concurrently herewith or shortly after this Declaration is filed (the "Initial Motions"). The Debtor seeks relief through the Initial Motions to minimize any adverse effects caused by the commencement of this case. I have reviewed the Debtor's petition, and the Initial Motions, or have had their contents explained to me, and it is my belief that the relief sought therein is essential to ensure the uninterrupted operation of the Debtor's business, the smooth transition to Chapter 11, and the successful reorganization of the Debtor's business.

## BACKGROUND

**A.    The Debtor's Ownership**

6.    The Debtor is a Delaware close corporation. Its sole owner is ASTECH Holdings, LLC.

**B.    The Debtor's Business**

7.    The Debtor manufacturers complex, safety critical, honeycomb panel products for use in aerospace, defense and other critical applications. The Debtor provides engine exhaust kits, fairing assemblies, panel assemblies and lower flap assemblies.

8.    The Debtor has no secured debt and operates using cash on hand and receivables collected from its customers. The Debtor owns its operating machinery and equipment. The Debtor's facility is leased, pursuant to a Sublease Agreement with GKN.

9.    The Debtor operates in a highly competitive market which has been severely impacted by the COVID-19 pandemic and inflationary pressures throughout its supply chain.

2

C.     **The Reasons for the Chapter 11**

10.     ASTECH acquired the business from GKN in March of 2022. In the ensuing months, ASTECH's new management team has performed a top to bottom analysis of its operations and contractual relationships with its key customers. ASTECH has suffered, and continues to be faced with operational issues. Some of its issues are directly COVID related, others are more of a COVID over-hang, while still others appear more endemic to ASTECH's operations. ASTECH believes that all of these issues are fixable, given sufficient time and money to do so. ASTECH's biggest issue, by far, however, is that the contracts with its key customers do not provide ASTECH with any profit margin at all. Rather, the current pricing of its key contracts has resulted in, and continues to result in ASTECH losing approximately $300,000 - $600,000 each month.

11.     ASTECH convened an in-person meeting with its key customers on June 20, 2020, in Detroit. At that meeting ASTECH explained its fundamental issues to the customers, and sought their assistance in working collaboratively to reach a mutually beneficial path forward. While a few of the customers subsequently expressed a modest willingness to engage with ASTECH, others really did not. Despite ASTECH's requests for assistance, little progress, if any, has been made with ASTECH's customers. In the meantime, ASTECH's financial condition has continued to decline, as forecasted. The consequences of ASTECH's continued financial decline, coupled with the customers' unwillingness to engage with ASTECH to try to reach a mutually beneficial outcome resulted in ASTECH needing to seek relief through the filing of the petition.

## INITIAL MOTIONS

12.    The Debtor has filed or will file with the Court certain Initial Motions seeking orders granting various forms of relief intended to stabilize the Debtor's business operations and facilitate the administration of this case. I am familiar with the contents of each of the Initial Motions and believe that the relief sought in each Motion is necessary to enable the Debtor to operate in Chapter 11 with minimal disruptions or loss of productivity and value, and best serves the Debtor's estate and creditors' interests. The facts set forth in each Initial Motion are incorporated herein by reference. The Initial Motions include the following:

> a.    **Motion of the Debtor for Entry of an Interim and Final Order (I) Authorizing the Debtor to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses, and (B) Continue Employee Benefits Programs and (II) Granting Related Relief**

13.    As of the Petition Date, Astech has approximately 140 full-time, part-time and salaried employees, and independent contractors (temporary employees) (collectively, the "Employees"). Hourly employees are paid in arrears on a bi-weekly basis; salaried employees are paid currently. Temporary employees are paid on various terms.

14.    The Employees perform a variety of functions critical to the preservation of value of the Debtor's assets, and to the administration of the Debtor's estate and this Chapter 11 case. The Employees include personnel who are intimately familiar with the Debtor's business, processes, and systems, and who cannot be easily replaced. Without the continued, uninterrupted services of the Employees, the ability of the Debtor to maximize the value of its estate and reorganize will be materially impaired.

15.    As of the Petition Date, the Debtor estimates that its monthly gross payroll liability is approximately $710,000 and that, as of the Petition Date, it owes approximately $115,740 on account of Employee Compensation earned by Employees (the "Unpaid Compensation"), the majority of which will come due within the first 30 days of this Chapter 11 case. As described

4

above, if the Debtor fails to pay the Unpaid Compensation, it could result in extreme financial hardship for its Employees – and great risk to Astech. In light of the substantial benefit the Employees will continue to provide to the Debtor's estate, the Debtor wishes to avoid imposing such a hardship.

16.    The Employees rely on their compensation and benefits to pay their daily living expenses. The Employees would be exposed to significant financial constraints if the Debtor is not permitted to continue paying the Employees' compensation and providing the Employees with health and other benefits. Consequently, the Debtor respectfully submits that the relief requested herein is necessary and appropriate under the facts and circumstances of this Chapter 11 case.

17.    By this Motion, the Debtor seeks authority, but not direction, to: (a) pay and honor certain prepetition claims relating to, among other things, wages, salaries, and other compensation, payroll services, federal and state withholding taxes and other amounts withheld (including garnishments, employees' share of insurance premiums, and taxes), reimbursable expenses, health insurance, health and related benefits, and certain other benefits that the Debtor has historically provided in the ordinary course (collectively, the "Employee Compensation and Benefits", as defined in the Motion); and (b) pay all costs incident to the Employee Compensation and Benefits.

18.    The Debtor believes that the requested relief is critical to minimize the personal hardship that the Debtor's employees would suffer if prepetition employee-related obligations are not paid when due or as expected, and to maintain stability in the Debtor's workforce during the administration of the Debtor's Chapter 11 case.

19.    Subject to approval from the Court, the Debtor intends to continue its applicable prepetition Employee Compensation and Benefits in the ordinary course. Out of an abundance of caution, by the Motion, the Debtor further requests confirmation of its right to modify, change,

5

and discontinue any of its Employee Compensation and Benefits and to implement new programs, policies, and benefits in the ordinary course during this Chapter 11 case in the Debtor's sole discretion and without the need for further Court approval, subject to applicable law.

    **b.**  **Motion of The Debtor for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Maintain its Bank Accounts and Pay Bank and Processor Charges and (B) Maintain Existing Business Forms; (II) Granting a Limited Waiver of the Requirements of Section 345(B) of The Bankruptcy Code, to the Extent Applicable; and (Ill) Granting Related Relief**

  20.  By this Motion, the Debtor seeks authorization to continue to use its existing four Bank Accounts (as defined in the Motion) with Bank of America, without establishing separate or new accounts.

  21.  The Debtor believes that the requested relief is integral to its ability to avoid substantial disruption to the normal operation of its business. Further, the Debtor submits that maintaining the Bank Accounts and using existing business forms will assist the Debtor in accomplishing a smooth transition to operations under Chapter 11. The maintenance of the Debtor's Bank Accounts will allow the Debtor to satisfy the goals and requirement of the U.S. Trustee guidelines, as the Debtor can readily distinguish between prepetition and post-petition obligations and payments without closing the Bank Accounts and opening new ones. Additionally, the Debtor pays most of its obligations utilizing electronic or wire transfers and rarely utilizes paper checks.

  22.  Therefore, the goals of the U.S. Trustee guidelines can be satisfied, and the Debtor's creditors can be protected, without closing the Bank Accounts. The Debtor is confident that its banking system provides the protections required by the U.S. Trustee guidelines without requiring the creation of new accounts and payment procedures.

     c.     **Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a) and 366 and Fed. R. Bankr. P. 6003 and 6004 for Entry of Interim and Final Orders (I) Approving Debtor's Proposed Form of Adequate Assurance of Payment to Utility Companies, (II) Establishing Procedures for Resolving Objections By Utility Companies, (III) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Service, and (IV) Granting Related Relief**

23.     By this Motion, the Debtor requests approval of the form of adequate assurance of payment it will provide to its utility providers, a deposit of roughly two and one-half weeks of projected billings, and procedures to resolve any dispute that may arise relating to the adequate assurance. The Debtor believes that the requested relief is essential in minimizing disruption of utility services to its plant and ensuring a smooth transition into and through Chapter 11. Astech proposes to deposit $141,300 in a separate segregated account as adequate assurance of future payment of the utility companies.

24.     The Debtor also requests that the Court prohibit its utility providers from discontinuing or otherwise affecting the Debtor's services, absent compliance with the proposed procedures.

25.     The Debtor believes that these measures will ensure that the Debtor maintains critical utility services to its manufacturing facility, the lifeblood of the Debtor's business, and therefore avoid irreparable harm to the Debtor's estate at this critical juncture in its chapter 11 case.

     d.     **Motion of Debtor for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Maintain its Insurance Policies and Programs and (B) Honor All Insurance Obligations, and (II) Granting Related Relief**

26.     By this Motion, the Debtor seeks to maintain its various insurance policies and programs, to ensure a smooth transition into Chapter 11 and preserve the Debtor's estate.

27.    The Debtor manufactures complex aerospace components, parts and assemblies and operates in a highly regulated industry that requires them to maintain certain coverage in order to manufacture its products for its customers.

28.    The Debtor believes that the failure to maintain such coverage would expose the Debtor to a variety of risks and potentially result in irreparable harm to the Debtor's estate. Accordingly, the relief requested by this Motion is crucial to minimize any disruptions to the Debtor's Chapter 11 strategy and maximize value for all parties in interest.

29.    The Debtor, on average, pays approximately $76,000 each week in insurance premiums. The Debtor estimates that, as of the Petition Date, approximately $66,121 will be due insurance carriers in the first thirty days of this case. The Debtor, therefore, seeks authority to pay up to $70,000 to insurance carriers on an interim basis.

## CONCLUSION

30.    The Debtor's ultimate goal in this chapter 11 case is to maximize the value of its estate for the benefit of its stakeholders. Specifically, the Debtor seeks to restructure its financial operations and its business relationships with its key customers. In the near term, however, to minimize any loss of value, the Debtor's immediate objective is to promote stability during the early stages of this chapter 11 case. I believe that if the Court grants the Initial Motions, the prospect for achieving this objective will be enhanced.

31.    I hereby certify that the foregoing statements are true and correct to the best of my knowledge, information, and belief, and respectfully request that all of the relief requested in the Interim Motions be granted, together with such other and further relief that is just and proper.

32.     On behalf of Astech, I thank the Court for considering these Motions on an expedited basis and look forward to a successful reorganization effort.


David Richeson
Executive Chairman