**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| ASTECH ENGINEERED PRODUCTS, INC.[1] | ) | Case No. 22-10635 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**PLAN OF ASTECH ENGINEERED PRODUCTS, INC.**

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Dated: December 2, 2022


**COZEN O'CONNOR**
Thomas M. Horan (DE Bar No. 4641)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2045
E-mail: thoran@cozen.com

-and-

**BROOKS WILKINS SHARKEY & TURCO PLLC**
Matthew E. Wilkins (admitted pro hac vice)
Paula A. Hall (admitted pro hac vice)
401 South Old Woodward, Suite 400
Birmingham, MI 48009
Telephone: (248) 971-1800
E-mail: wilkins@bwst-law.com
E-mail: hall@bwst-law.com

*Counsel to the Debtor and Debtor-in-Possession*


[1] The last four digits of the Debtor's federal tax identification number is 7721. The Debtor's address is 3030 Red Hill Ave., Santa Ana, CA 92705.

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

This plan (the "Plan") will be funded through cash available in the estate of ASTECH Engineered Products, Inc. ("ASTECH" or the "Debtor") following the disposition of substantially all of its assets through a "going concern" sale.

Estimated recoveries under the Plan are:

| Description | Anticipated Recovery |
|---|---|
| Administrative Claims – Unclassified | 100% |
| Priority Tax Claims – Unclassified | 100% |
| Secured Claims – Unclassified (None) | n/a |
| Priority Unsecured Claims | 100% |
| General Unsecured Claims | To be determined |
| Equity Interests | To be determined |

## ARTICLE I

## DEFINITIONS

For purposes of this Plan, the following terms shall have the following meanings. A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.

**1.1** **Administrative Claim:** "Administrative Expense Claim" shall mean a Claim that is Allowed under 11 U.S.C. § 503(b) and that is entitled to priority under 11 U.S.C. § 507(a)(1), including, without limitation:

(a) fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court,

(b) fees and expenses of the Subchapter V Trustee and any mediator(s) appointed in this case, Allowed pursuant to an Order of the Bankruptcy Court, and

(c) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

**1.2 <u>Administrative Claimant</u>:** Any person entitled to payment of an Administrative Expense.

**1.3 <u>Administrative Claims Bar Date</u>:** The last date by which any Person must File a request for payment of an Administrative Claim, which date shall be the first Business Day that is thirty (30) calendar days after the Effective Date, or, alternatively, such earlier date as is set by the Bankruptcy Court. For the avoidance of doubt, postpetition statutory tax claims shall not be subject to any Administrative Claims Bar Date. For the further avoidance of doubt, the Claims Bar Date for section 503(b)(9) Claims was the General Claims Bar Date.

**1.4 <u>Administrative Tax Claim</u>:** Any tax incurred pursuant to section 503(b)(1)(B) of the Bankruptcy Code.

**1.5 <u>Allowed, Allowed Claim, or Allowed Administrative Claim</u>:**

(a) with respect to a Claim arising prior to the Petition Date (including a section 503(b)(9) Claim):

(b) to the extent such Claim has not been paid, either (A) a proof of claim was timely Filed by the applicable Claims Bar Date, or (B) a proof of claim is deemed timely Filed either as a result of such Claim being Scheduled or by a Final Order; and either (A) the Claim is not a Contingent Claim, a Disputed Claim, an Unliquidated Claim, or a Disallowed Claim; or (B) the Claim is expressly allowed by a Final Order or under the Plan;

(c) with respect to a Claim arising on or after the Petition Date (excluding a section 503(b)(9) Claim), a Claim that has been allowed by a Final Order or under the Plan.

Unless otherwise specified in the Plan or by a Final Order, an "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, fees, or late charges on such Administrative Claim or Claim from and after the Petition Date. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Case is not an Allowed Claim. For the avoidance of doubt, any and all Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

**1.6 <u>ASTECH</u>:** ASTECH Engineered Products, Inc., a Delaware corporation.

**1.7 <u>Avoidance Actions</u>:** Any and all causes of action, claims, remedies, or rights that may be brought by or on behalf of the Debtor or the Estate under Bankruptcy Code sections 542, 544, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.8 Ballot:** The ballot form distributed to each Holder of a Claim entitled to vote to accept or reject the Plan.

**1.9 Bankruptcy Code:** Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as the same may be amended from time to time to the extent applicable to the Chapter 11 Case.

**1.10 Bankruptcy Court:** The United States Bankruptcy Court for the District of Delaware, or in the event such court ceases to exercise jurisdiction over the Chapter 11 Case, such other court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the District of Delaware.

**1.11 Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Case.

**1.12 Board**: Any Board of Directors or other managers of ASTECH.

**1.13 Business Day:** Any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

**1.14 Cash:** Cash and cash equivalents, including bank deposits, wire transfers, checks representing good funds, and legal tender of the United States of America or instrumentalities thereof.

**1.15 Causes of Action:** Any and all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, rights of setoff, third-party claims, subordination claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims, damages, or judgments whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise.

**1.16 Chapter 11 Case:** The voluntary chapter 11 bankruptcy case commenced by the Debtor, under the case caption In re ASTECH Engineered Products, Inc., Case No. 22-10635 (BLS), in the United States Bankruptcy Court for the District of Delaware.

**1.17 Claim:** Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**1.18 Claim Objection Deadline:** Subject to extension, the date that is the first Business Day that is at least 180 calendar days after the Effective Date. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

**1.19 Claims Bar Date:** As applicable, the Administrative Claims Bar Date, the General Claims Bar Date, the Governmental Claims Bar Date, any Supplemental Bar Date, or the Rejection Claims Bar Date.

**1.20 Class:** A category of Claims or Equity Interests designated pursuant to the Plan, or any subclass thereof.

**1.21 Confirmation:** Entry by the Bankruptcy Court of the Confirmation Order.

**1.22 Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**1.23 Confirmation Hearing:** The hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan as required by Bankruptcy Code section 1128(a), as such hearing may be continued from time to time.

**1.24 Confirmation Order:** The order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

**1.25 Contingent Claim:** Any Claim that is Scheduled or Filed as contingent.

**1.26 Corporate Action:** Any action, approval, authorization, decision, or other act of any kind that would be necessary on the part of any Person for any corporation, limited liability company, or other Person to in turn act.

**1.27 Creditor:** Any Holder of a Claim.

**1.28 Cure Payment:** The payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) that is necessary to cure any and all defaults under an executory contract or unexpired lease so that such contract or lease may be assumed, or assumed and assigned, pursuant to Bankruptcy Code section 1123(b)(2).

**1.29 Debtor:** ASTECH Engineered Products, Inc., a Delaware corporation

**1.30 Defined Term:** Any capitalized term that is defined in this Article I of the Plan.

**1.31 Disallowed Claim:** Any Claim that (a) is not Scheduled, or is listed thereon as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder failed to timely File a proof of claim by the applicable Claims Bar Date (unless late filing was permitted by a Bankruptcy Court order), but excluding any Claim that is expressly Allowed by a Final Order or under the Plan; or (b) has been disallowed pursuant to an order of the Bankruptcy Court.

**1.32** **Disputed Claim**: Any Claim:

(a) that is disputed in whole or in part under the Plan and, as such, will have no right to receive any Distributions under the Plan unless and until such Claims are affirmatively Allowed by a Final Order; or

(b) that

(i) is not expressly Allowed by a Final Order or under the Plan; and as to which a proof of claim is Filed or is deemed Filed as a result of such Claim being Scheduled; and

(ii) as to which either:

A. an objection or request for estimation or subordination (A) has been timely Filed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order under which the applicable period of limitation has expired, and (B) has not been denied by a Final Order or withdrawn; or the Claim Objection Deadline has not passed as to such Claim (unless the Debtor has determined that it will not object to such Claim).

**1.33** **Distribution:** Any initial or subsequent issuance, payment, or transfer of consideration made under the Plan.

**1.34** **Distribution Date:** Any date on which a Distribution is made.

**1.35** **Distribution Record Date:** The record date for determining entitlement of Holders of Claims to receive Distributions under the Plan, which date shall be the Effective Date.

**1.36** **Effective Date:** The date that is the first Business Day on which each condition set forth in the Plan has been satisfied or waived as set forth therein.

**1.37** **Equity Interests:** All previously issued and outstanding common stock, preferred stock, membership interests, or other ownership interests in the Debtor outstanding immediately prior to the Effective Date, including restricted stock, treasury stock, and all options, warrants, calls, rights, puts, awards, commitments, appreciation rights, or any other agreements of any character to convert, exchange, exercise for, or otherwise receive any such common stock, preferred stock, membership interests, or other ownership interests.

**1.38** **Estate Assets:** Collectively, (a) any and all right, title, and interest of the Debtor and the Estate in and to property of whatever type or nature, including its books and records and all Avoidance Actions and Causes of Action, as of the Effective Date; and (b) any assets contributed to or recovered by the Debtor on or after the Effective Date.

**1.39** **Estate:** The chapter 11 Estate of the Debtor created by Bankruptcy Code section 541(a).

**1.40 Exculpated Parties:** Collectively, (a) the Debtor, (b) the Board, and (c) each of the preceding's respective Related Parties.

**1.41 File, Filed, or Filing:** Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Case, except with respect to proofs of claim that must be filed with the Claims Agent, in which case "File" or "Filed" means duly and properly filed with the Claims Agent and reflected on the official claims register maintained by the Claims Agent.

**1.42 Final Decree:** An order entered pursuant to Bankruptcy Code section 350, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Chapter 11 Case of the Debtor.

**1.43 Final Order:** An order or judgment of the Bankruptcy Court entered on the docket of the Chapter 11 Case:

(a) that has not been reversed, rescinded, stayed, modified, or amended; that is in full force and effect; and

(b) with respect to which (i) the time to appeal or to seek review, rehearing, remand, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

For the avoidance of doubt, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Code section 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 or 9024 may be or has been filed with respect to such order.

**1.44 General Claims Bar Date**: September 13, 2022

**1.45 General Unsecured Claim:** Any unsecured, non-priority Claim asserted against the Debtor or the Estate, but excluding (a) any Claims arising from any executory contracts or unexpired leases that are assumed during the Chapter 11 Case and (b) any vendor or other Claims satisfied in the ordinary course of business, as critical vendor Claims, or pursuant to any other order of the Bankruptcy Court.

**1.46 Governmental Claims Bar Date:** January 11, 2023.

**1.47 Holder:** The Person that is the owner of record of a Claim or Equity Interest, as applicable.

**1.48 Impaired:** Any Class of Claims or Equity Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**1.49 Lien:** Any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**1.50 Local Rules:** The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

**1.51 Secured Claims:** Any Secured Claims.

**1.52 Person:** Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.53 Petition Date:** July 15, 2022.

**1.54 Plan: This** *Plan of ASTECH Engineered, Products, Inc.* and any and all exhibits thereto, as the same may be amended, modified, or supplemented in the Debtor's reasonable discretion.

**1.55 Priority Claim:** A Claim that is entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Claim and a Priority Tax Claim.

**1.56 Priority Tax Claim:** A Claim that is entitled to priority under Bankruptcy Code section 507(a)(8).

**1.57 Professional:** Any professional employed in the Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328, 1103, or 1104 or any professional or other Person (in each case, other than an Ordinary Course Professional) seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Bankruptcy Code sections 503(b)(3) or 503(b)(4).

**1.58 Professional Fee Claim:** A Claim of a Professional for compensation or reimbursement of costs and expenses relating to services provided during the period from the Petition Date through and including the Effective Date.

**1.59 Related Parties:** Collectively, all of the respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, professional persons, representatives, and successors of the referenced Person.

**1.60 Released Parties:** Collectively, (a) the Debtor, (b) any Board or other manager(s) of the Debtor, and (c) each of the preceding's respective Related Parties.

**1.61 Releasing Parties:** Collectively, (a) the Debtor, (b) the Estate, and (c) any Person exercising or seeking to exercise any rights of the Estate (but solely in that capacity), and any successor to the Debtor or any other estate representative that is or could be appointed or selected pursuant to Bankruptcy Code section 1123(b)(3) or otherwise.

**1.62 Scheduled:** Set forth in the Schedules.

**1.63 Schedules:** The Schedules of Assets and Liabilities Filed by the Debtor on July 29, 2022 [D.I. 55, 56 and 59], as amended on August 15, 2022 [D.I. 75] and August 25, 2022 [D.I. 109], and as may be amended from time to time in accordance with Bankruptcy Rule 1009.

**1.64 Section 503(b)(9) Claim:** A Claim arising under Bankruptcy Code section 503(b)(9) for the value of any goods received by the Debtor within twenty (20) calendar days before the Petition Date and that were sold to the Debtor in the ordinary course of their business.

**1.65 Secured Claim:** A Claim that is secured by a valid, perfected, and enforceable Lien on property in which the Debtor or the Estate have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law. A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the Debtor' interest in the Collateral or to the extent of the amount subject to setoff against a Cause of Action held by the Debtor, whichever is applicable, and as determined under Bankruptcy Code section 506(a). To the extent that the value of such interest in the Debtor' interest in the subject Collateral or the amount subject to setoff against a Cause of Action held by the Debtor (as applicable) is less than the amount of the Claim which has the benefit of such security or is supported by such setoff right, such portion of the Claim is unsecured and shall be treated as a General Unsecured Claim unless, in any such case, the Class of which the Secured Claim is a part makes a valid and timely election in accordance with Bankruptcy Code section 1111(b) to have such Claim(s) treated as a Secured Claim to the extent Allowed.

**1.66 Securities Act:** The Securities Act of 1933, as amended.

**1.67 Subchapter V Trustee:** David M. Klauder, who is the trustee appointed by the U.S. Trustee under Bankruptcy Code section 1183.

**1.68 Unimpaired:** Any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.69 Unliquidated Claim:** Any Claim that is Scheduled as unliquidated or that was Filed in an unliquidated amount.

**1.70 U.S. Trustee:** The Office of the United States Trustee for the District of Delaware.

**1.71 Voting Deadline:** The date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the Disclosure Statement Order.

## ARTICLE II

## HISTORY OF THE DEBTOR'S BUSINESS OPERATIONS

### 2.1 Nature of the Debtor's Business.

ASTECH manufactures complex, safety critical, honeycomb panel products for use in aerospace, defense and other critical applications. The Debtor provides engine exhaust kits, fairing assemblies, panel assemblies, and lower flap assemblies.

**2.2 History of the Business Operations of the Debtor.**

In March 2022, the Debtor was formed and acquired the existing business from GKN in March 2022. Since 1947, the predecessor business and later ASTECH have been the premier supplier of welded honeycomb metallic aero structures to the global aerospace and defense industry.

The Debtor has no secured debt and operates using cash on hand and receivables collected from its customers. The Debtor owns its operating machinery and equipment. The Debtor's manufacturing facility is leased, pursuant to a Sublease Agreement with GKN.

As described in greater detail herein, the Debtor operates in a highly competitive market that has been negatively impacted by the COVID-19 pandemic, inflationary pressures throughout its supply chain, and unprofitable contracts with its primary customers. Despite the Debtor's best and diligent ongoing efforts to improve its operating structure and to negotiate commercially reasonable price increases from its customers, to buttress its bottom-line, the Debtor has been unable to do so, thereby giving rise to this plan.

**2.3 Filing of the Debtor's Chapter 11 Case.**

On the Petition Date, the Debtor filed this voluntary case under chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V. The Debtor is authorized to continue to operate its business and manage its assets as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**2.4 Legal Structure and Ownership.**

The Debtor is a Delaware close corporation. Its sole owner is ASTECH Holdings, LLC.

**2.5 Debtor's Assets and Liabilities.**

As of the Petition Date, the Debtor's Schedules reflected that it had no secured debt, $4,651,782.28 in unsecured debt, and $23,603,838.15 in assets, at book value.

**2.6 Events Leading to the Filing of the Bankruptcy Case.**

Since ASTECH acquired the business from GKN in March of 2022, ASTECH's new management team and Grobstein Teeple, the Debtor's financial advisors, have performed a top to bottom analysis of the Debtor's operations and contractual relationships with its key customers. ASTECH has suffered from, and continues to be faced with certain operational issues. Some of its issues are directly COVID related, others are more of a COVID over-hang, while still others appear more endemic to ASTECH's operations. ASTECH's biggest issue has been that the contracts with its key customers do not provide ASTECH sufficient profit margin to allow the business to operate long term and to invest in the business. The current pricing of its key contracts has, historically, resulted in ASTECH incurring significant losses.

Before beginning this bankruptcy proceeding, ASTECH convened an in-person meeting with its key customers on June 20, 2020, in Detroit. At that meeting ASTECH explained its fundamental issues to the customers, and sought their assistance in working collaboratively to reach a mutually beneficial path forward. While a few of the customers subsequently expressed a modest willingness to engage with ASTECH, others really did not. Despite ASTECH's requests for assistance, little progress was made with ASTECH's customers and ASTECH's financial condition was forecasted to continue to decline, all of which was conveyed to the customers. The consequences of ASTECH's continued financial decline, coupled with the customers' unwillingness to engage with ASTECH to try to reach a mutually beneficial outcome resulted in ASTECH needing to seek relief through the filing of the petition. Notwithstanding the filing of this petition and submission of this plan, ASTECH has continued operations and remains current in its postpetition obligations to its existing customers, vendors, and employees.

### 2.7 Significant Events During the Bankruptcy Case.

**Appointment of Subchapter V Trustee**

On July 18, 2022, the Office of the United States Trustee appointed David M. Klauder as the subchapter V trustee.

**Initial Motions**

Immediately after the Petition Date, the Debtor filed the following motions seeking relief critical to the uninterrupted continuation of the Debtor's operations and its ability to meet its ongoing obligations, most particularly including those owed to its employees:

- Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Maintain its Bank Accounts and Pay Bank and Processor Charges and (B) Maintain Existing Business Forms; (II) Granting a Limited Waiver of the Requirements of Section 345(b) of the Bankruptcy Code, to the Extent Applicable; and (III) Granting Related Relief [D.I. 15]

- Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses, and (B) Continue Employee Benefits Programs and (II) Granting Related Relief [D.I. 16]

- Motion of Debtor for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Maintain its Insurance Policies and Programs and (B) Honor All Insurance Obligations, and (II) Granting Related Relief [D.I. 17]

- Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a) and 366 and Fed. R. Bankr. P. 6003 and 6004 for Entry of Interim and Final Orders (I) Approving Debtor's Proposed Form of Adequate Assurance of Payment to Utility Companies, (II) Establishing Procedures for Resolving Objections by Utility Companies, (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service,

and (IV) Granting Related Relief [D.I. 18]

No objections were filed to any of the Initial Motions and final Orders approving the Initial Motions were entered on August 17, 2022.

**Retention of Professionals**

By an order dated August 17, 2022, the Court approved the Debtor's retention of Cozen O'Connor as counsel [D.I. 90].

By an order dated August 17, 2022, the Court approved the Debtor's retention of Grobstein Teeple, LLP as Financial Advisor for the Debtor [D.I. 91].

By an order dated August 17, 2022, the Court approved the Debtor's retention of Brooks, Wilkins, Sharkey & Turco, PLLC as Counsel for the Debtor [D.I. 96].

By an Order dated September 2, 2022, the Court approved the Debtor's retention of Cutsheet Express, LLC as Interim Management to the Debtor [D.I. 123].

By an order dated October 24, 2022, the Court approved the Debtor's retention of Hilco Valuation Services, LLC as Machinery and Equipment Appraiser [D.I. 173].

**Critical Vendor Motion**

On August 4, 2022, the Debtor filed its Motion of the Debtor for Entry of an Order (I) Authorizing Debtor to Pay Prepetition Claims of (A) Critical Vendors, (B) Foreign Vendors, and (C) 503(b)(9) Claimants, (II) Confirming Administrative Expense Priority Status for Outstanding Prepetition Purchase Orders, and (III) Granting Related Relief [D.I. 60]. By an amended order dated August 19, 2022 [D.I. 104], the Debtor was authorized to pay Critical Vendor Claims, as described in the Critical Vendor Motion, in an amount not to exceed $2,500,000 in the aggregate. To date, the Debtor has paid $2,475,000 in the aggregate to Creditors that the Debtor, in the sound exercise of its business judgment, has deemed critical.

**2.8 Rejection of Executory Contracts Between the Debtor and The Boeing Company**

At the commencement of this case, ASTECH was party to several prepetition executory contracts with The Boeing Company ("Boeing"). The Debtor's continued performance under these contracts resulted in ongoing and significant losses for the Debtor, which was reviewed with Boeing. Because the Debtor could not get relief from Boeing on its contract pricing, in the appropriate exercise of its business judgment, the Debtor sought to reject these contracts. On August 17, 2022, the Debtor filed its Motion to Reject its Executory Contracts with the Boeing Company (the "Boeing Rejection Motion") [D.I. 99].

On August 31, 2022, Boeing filed an Objection to the Rejection Motion [D.I. 115]. The Debtor filed its Reply on September 1, 2022, vigorously opposing the allegations raised by Boeing

in its Objection [D.I. 118]. Within the following 6 days leading up to a hearing on the Rejection Motion, Boeing conducted written discovery and took the depositions of ASTECH's Executive Chairman David Richeson and financial advisor Joshua Teeple. At an evidentiary hearing on September 7, 2022, the Court granted the relief requested by the Debtor in the Boeing Rejection Motion, in full. On September 8, 2022, the Court entered an Order, among other relief, deeming the Debtor's contracts with Boeing rejected effective as of September 8, 2022 [D.I. 139]

Immediately following the Court's decision granting ASTECH's rejection motion, ASTECH offered to continue to manufacture parts for Boeing, but at the price ASTECH had previously indicated to Boeing it would need to charge to have even a modest profit on that production. Boeing did not respond to ASTECH's offer.

### 2.9 **Negotiations With Key Customers**.

Throughout this proceeding, the Debtor has had negotiations with its key customers concerning possible restructuring of the Debtor as a going concern, supported by Customer price increases, a consensual wind-down of the Debtor if the Customers preferred to exit the business or a transaction with the customers in which they would acquire the business through an entity they developed. While these efforts are ongoing, no agreement has been reached.

## ARTICLE III

## THE PLAN

This Plan describes how the claims of ASTECH's Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Bankruptcy Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired, as those terms are defined in the Bankruptcy Code. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

The Debtor's 13-week cash flow projection is attached hereto as Exhibit A and incorporated herein by this reference.

**3.1 Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. As such, the Plan does not place the following Claims in any class:

A. Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, ”allow” the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. Creditors who have provided goods and services following the filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors. Any unpaid Post-Petition ordinary course liabilities existing at the time of the anticipated sale of the business will either be assumed by the Purchaser or paid by the Debtor from sale proceeds.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 Case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

A list of the Debtor’s estimated Administrative Expenses will be set forth in the Plan Supplement.

B. Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by section 507(a)(8) of the Bankruptcy Code. Unless the holder of such a section 507(a)(8) Priority

Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief. All Priority Tax Claims have been paid as they have become due. Any accrued balances as of the Effective Date will be paid in full.

**3.2 Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A. Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Bankruptcy Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to section 1190(3) of the Bankruptcy Code as set forth below, if applicable.

There are no Allowed Secured Claims.

B. Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in sections 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code are required to be placed in classes. The Bankruptcy Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under sections 507(a)(1), (4), (5), (6), and (a)(7) of the Bankruptcy Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 1. To be provided in the Plan Supplement | Priority unsecured claim | Unimpaired | Assumed by Purchaser or Paid in full on the Effective Date |

C. Classes of General Unsecured Claims.

General unsecured Claims are not secured by property of the estate and are not entitled to priority under section 507(a) of the Bankruptcy Code.

(i) Undisputed Claims.

The following chart identifies the Plan's proposed treatment of Classes 2, which contain general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 2. $1,450,815 | Pre-petition, undisputed General Unsecured Claims | Not Impaired | Paid in cash.<br><br>Estimated Percent of Claim Paid = 100% |

A. Classes of Equity Holders

Equity Interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation such as the Debtor, entities holding preferred or common stock are Equity Interest holders.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 3. -0- | Equity Interest Holders | Impaired | To be determined, based upon sale outcome. |

**3.3 <u>Estimated Number and Amounts of Claims Objections.</u>**

The Debtor may object to the amount or validity of any Claim within 180 days of the Effective Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

**3.4 <u>Treatment of Executory Contracts and Unexpired Leases.</u>**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.

**<u>Rejection of Executory Contracts and Unexpired Leases</u>**.

The Debtor will determine whether and what executory contracts will be assumed or rejected at a subsequent time based in part upon the needs of the Purchaser of the business.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party

to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract is the date that is thirty (30) days after the Effective Date.** Any Claim based on the rejection of an Executory Contract will be barred if the Proof of Claim is not timely filed, unless the Bankruptcy Court orders otherwise. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which Proofs of Claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan. The Debtor shall have the right to object to any such rejection damage claims filed in accordance with this section.

At present, the Debtor is unable to estimate the rejection damage claims.

**3.5 Disputed Claims.**

(a) The following claims are disputed by the Debtor. The Debtor anticipates that following its anticipated sale, or following claim objection proceedings, the following filed claims will be disallowed in their entirety:

| **Claim No.** | **Claimant** | **Claim Amount** |
|---|---|---|
| 9-1 | Spirit Aerosystems, Inc. | $0.00 (unknown) |
| 13-1 | John Esterhay | $25,000.000.00 |
| 16-1 | The Boeing Company | $0.00 (unknown) |
| 17-1 | Raytheon Technologies Corp. (Pratt & Whitney | $0.00 (unknown) |
| 18-1 | ITP Aero UK Limited | $39,000,000 |
| 19-1 | The Boeing Company | $0.00 (unknown) |
| 21-1 | Robin Willis | $1,000,000.00 |

(b) Other Disputed Claims. The Debtor is reviewing other claims filed in this case and reserves the right to seek disallowance of those claims, in whole or in part.

**3.6 Payments.**

If the Plan is confirmed under Bankruptcy Code section 1191(a), payments to Creditors provided for in the Plan will be made by the trustee pursuant to Bankruptcy Code section 1194(a).

If the Plan is confirmed under section Bankruptcy Code section 1191(b), except as

otherwise provided in the Plan or in the order confirming the Plan, the trustee shall make all Plan payments to Creditors under the Plan

### 3.7 Reservation of Rights / No Waiver with Respect to Claims

Moreover, nothing contained in this Plan is intended or shall be construed as (a) an admission as to the validity, priority, or amount of any Claim, including Rejection Claim against the Debtor; (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any Claim against the Debtor or to otherwise dispute any particular Claim on any grounds; (c) a waiver of any Claim or cause of action which may exist against any creditor or interest holder; (d) a promise or requirement to pay any particular claim; or (e) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law.

### 3.8 Tax Consequences of the Plan.

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.***

## ARTICLE IV

## FEASIBILITY OF THE PLAN

### 4.1 Ability to Initially Fund Plan.

The Debtor anticipates that it will have more than enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. On the Effective Date.

### 4.2 Ability to Make Future Plan Payments And Operate Without Further Reorganization.

Bankruptcy Code Section 11 U.S.C. § 1191 requires that the Plan must satisfy the requirements of 11 U.S.C. § 1129(a)(11), requires that a Debtor demonstrated that the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtor or any successor to Debtor under the plan, unless such liquidation or reorganization is proposed in the Plan. Here, the Plan does not contemplate that Debtor will continue in business. Rather, the Plan contemplates that Debtor's assets will be liquidated, collected, and distributed to the holders of Allowed Claims. In short, liquidation of Debtor is already proposed in the Plan.

## ARTICLE V

## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.

The Debtor's most recent liquidation analysis is attached as Exhibit "B."

If no plan can be confirmed, this case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed to liquidate the Debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.

The Debtor believes that liquidation under chapter 7 would result in smaller distributions being made to creditors than those provided for in the Plan because of the (i) increased cost and expenses of liquidation under chapter 7 arising from fees payable to the chapter 7 trustee and the attorneys and other professional advisors to such trustee, (ii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation, and (iii) the cost and expense attributable to the time value of money resulting from what is likely to be a more protracted proceeding.

## ARTICLE VI

## NO DISCHARGE OF DEBTOR.

In accordance with Bankruptcy Code section 1141(d)(3), the Debtor will not receive any discharge of debt in this Chapter 11 Case.

## ARTICLE VII

## GENERAL PROVISIONS.

### 7.1 Exculpation and Limitation of Liability.

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any prepetition or postpetition act or omission in connection with, relating to, or arising out of the Debtor, the Chapter 11 Case, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan; *provided, however*, that nothing in this section 6.1 shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order; and *provided, further*, that the exculpation provisions of this section shall not apply to acts or omissions constituting actual fraud or willful misconduct by such Exculpated Party as determined by a Final Order. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute actual fraud or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the Exculpated Parties shall be entitled to rely on the written

advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Case, the Plan, and administration thereof. The Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by this section 6.1 of the Plan.

**7.2 <u>Releases and Related Matters</u>**.

(a) On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed to have forever released, waived, and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the conduct of the Debtor's business, the Chapter 11 Case, or the Plan, except for acts or omissions that are determined in a Final Order to have constituted actual fraud or willful misconduct; *provided, however*, that nothing in this section 6.2 shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order.

(b) Entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this section 6.2; and (ii) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, in the best interests of the Debtor, the Estate, and any Holders of Claims that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.

**7.3 <u>Title to Assets.</u>**

If a plan is confirmed under Bankruptcy Code section 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors and equity security holders of the Debtor.

**7.4 <u>Binding Effect.</u>**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**7.5 Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**7.6 Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under Bankruptcy Code section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**7.7 Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**7.8 Modification of the Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to Bankruptcy Code section 1193(a). However, the Bankruptcy Court may require additional items, including re-voting on the Plan.

If the Plan is confirmed under Bankruptcy Code section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Bankruptcy Code section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years as fixed by the court and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**7.9 Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE VIII

## IMPLEMENTATION OF THE PLAN

**8.1 Implementation of the Plan.** The Plan will be implemented by various acts and transactions as set forth in the Plan, including, among other things, the sale of the Debtor as a going concern and the making of Distributions by the trustee in accordance with the Plan.

**8.2 Sale of Business as a Going Concern.**

(a) Gong Concern Sale. To maximize the value of the estate's assets, to attempt to ensure continuity of supply to the Debtor's Customers, and to maintain the continued employment of the Debtor's valuable, highly-skilled workforce, the Debtor intends to market and sell itself as a going concern.

(b) Sale Process and Timeline. The Debtor anticipates the sale of its assets to proceed on the following schedule:

| | | Target |
|---|---|---|
| (i) | Engagement of Investment Banker | 12/16/22 |
| (ii) | Filing of Bid Procedures Motion, Draft Asset Purchase Agreement | 12/16/22 |
| (iii) | Preparation of Confidential Information (Marketing) Memorandum | 12/31/22 |
| (iv) | Marketing of Debtor | 01/01/23 – 2/15/23 |
| (v) | Selection of purchaser or auction | 02/28/23 |
| (vi) | Closing on sale | 03/31/23 |

(c) Possible Sale to Customer–sponsored entity. The Debtor has had, and anticipates continuing to have, discussions with its key customers concerning a possible sale of the business to an entity they would form. The Debtor expects those discussions to continue in parallel with the sale process and timeline above.

**8.3 Streamlining of the Debtor's Corporate Affairs.**

**(a) Debtor's Existing Directors, Officers, and Managers.** On the Effective Date, each of the Debtor's existing directors, officers, and managers shall be terminated automatically without the need for any Corporate Action and without the need for any corporate filings, and shall have no ongoing rights against or obligations to the Debtor or the Estate, including under any applicable prepetition agreements (all of which will be deemed terminated).

**(b) Dissolution of the Debtor.** On the Effective Date, the Debtor will be dissolved automatically without the need for any Corporate Action, without the need for any filings, and without the need for any other or further actions to be taken by or on behalf of such dissolving Debtor or any other Person or any payments to be made in connection therewith; ***provided, however***, that the Debtor may in its discretion file any certificates of cancellation as may be appropriate in connection with dissolution of the Debtor.

**(c) <u>Corporate Documents and Corporate Authority</u>.** On the Effective Date, the certificates of incorporation, bylaws, operating agreements, and articles of organization, as applicable, of the Debtor shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for the Debtor to take or cause to be taken all actions (including, if applicable, Corporate Actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation.

## ARTICLE IX

## FREQUENTLY ASKED QUESTIONS

**What Is ASTECH Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11, as is the case with ASTECH. The plan is the legal document which sets forth the manner and the means by which holders of claims against the debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 3.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. <u>If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.</u>

**What Is Necessary to Confirm a Plan?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not

discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is impaired under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section 3.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan will be distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned will be announced at a later date pursuant to an Order of the Court.

**How Do I Determine When and How Much I Will Be Paid?** In Section 3.2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan. These are only estimates and are subject to revision as more information becomes available.

## ARTICLE X
## REQUEST FOR CONFIRMATION AND RECOMMENDATION

**10.1 Request for Confirmation.** The Debtor requests confirmation of the Plan in accordance with Bankruptcy Code section 1129.

**10.2 Recommendation.** The Debtor believes that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support confirmation of the Plan.

Respectfully submitted,

**ASTECH ENGINEERED PRODUCTS, INC.**

By: *\/s/ David Richeson*
Name: David Richeson
Title: Executive Chairman

**Exhibits**

"A" 13-week Cash Flow Projection
"B" Liquidation Analysis

# Exhibit A

13-Week Cash Flow Projection

| | Actuals | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12/2/2022 | 12/9/2022 | 12/16/2022 | 12/23/2022 | 12/30/2022 | 1/6/2023 | 1/13/2023 | 1/20/2023 | 1/27/2023 | 2/3/2023 | 2/10/2023 | 2/17/2023 | 2/24/2023 | 3/3/2023 | 3/10/2023 | 3/17/2023 | 3/24/2023 | 3/31/2023 |
| Sales | $583,469 | $460,607 | $460,607 | $460,607 | $460,607 | $754,806 | $754,806 | $754,806 | $754,806 | $600,747 | $600,747 | $600,747 | $600,747 | $600,747 | $805,989 | $805,989 | $805,989 | $805,989 |
| **Collections:** | | | | | | | | | | | | | | | | | | |
| Existing AR | $567,290 | $308,326 | $624,141 | $532,368 | $412,746 | $99,572 | $107,834 | $49,786 | $107,834 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| New AR | - | $251,670 | $536,107 | $544,566 | - | $628,143 | $900,426 | $900,426 | $900,426 | $785,436 | $744,496 | $1,020,241 | $513,153 | $513,153 | $801,779 | $801,779 | $801,779 | $909,613 |
| Uncollectible/Credited | - | - | ($58,012) | ($53,847) | ($20,637) | ($36,386) | ($50,413) | ($47,511) | ($50,413) | ($39,272) | ($37,225) | ($51,012) | ($25,658) | ($25,658) | ($40,089) | ($40,089) | ($40,089) | ($45,481) |
| **Total Inflows** | **$567,290** | **$559,996** | **$1,102,235** | **$1,023,087** | **$392,109** | **$691,330** | **$957,847** | **$902,702** | **$957,847** | **$746,164** | **$707,271** | **$969,229** | **$487,496** | **$487,496** | **$761,690** | **$761,690** | **$761,690** | **$864,133** |
| **Production:** | | | | | | | | | | | | | | | | | | |
| Materials & Outside Processed Parts | (32,855) | ($2,162) | ($42,943) | ($36,461) | ($66,333) | ($215,728) | ($280,741) | ($246,931) | ($255,402) | ($365,297) | ($288,825) | ($288,825) | ($288,825) | ($288,825) | ($275,637) | ($275,637) | ($275,637) | ($275,637) |
| Utilities | (185,760) | - | - | - | ($1,738) | ($259,200) | - | - | - | ($289,500) | - | - | - | ($259,200) | - | - | - | - |
| Property Taxes | (1,060) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Equipment Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Consumables | (13,043) | ($53,938) | ($72,514) | ($55,050) | ($50,650) | ($56,267) | ($70,662) | ($242,568) | ($43,784) | ($97,735) | ($43,750) | ($43,750) | ($43,750) | ($43,750) | ($43,750) | ($43,750) | ($43,750) | ($43,750) |
| Repairs & Maintenance | (19,176) | ($49,030) | ($49,524) | ($30,000) | ($32,540) | ($36,021) | ($56,336) | ($40,453) | ($30,000) | ($47,471) | ($30,000) | ($30,000) | ($30,000) | ($30,000) | ($30,000) | ($30,000) | ($30,000) | ($30,000) |
| Equipment Rental | (1,180) | - | - | - | ($21,046) | ($1,404) | - | ($1,404) | ($19,866) | - | - | - | ($19,866) | - | - | - | - | ($19,866) |
| Training | - | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) | ($3,311) |
| Waste Control & Management | (28,301) | - | - | - | ($43,849) | - | - | - | ($43,849) | ($2,198) | - | - | ($43,849) | - | - | - | - | ($43,849) |
| Freight | (52,587) | ($12,315) | ($12,315) | ($12,315) | ($25,042) | ($12,315) | ($12,315) | ($18,145) | ($12,315) | ($12,315) | ($12,315) | ($12,315) | ($12,315) | ($12,315) | ($12,315) | ($12,315) | ($12,315) | ($12,315) |
| Miscellaneous | 369 | ($4,384) | ($4,384) | ($4,384) | ($6,064) | ($4,384) | ($4,384) | ($12,068) | ($7,030) | ($4,384) | ($4,384) | ($4,384) | ($4,384) | ($4,384) | ($4,384) | ($4,384) | ($4,384) | ($4,384) |
| **Total Production Costs** | **($333,593)** | **($125,141)** | **($184,992)** | **($141,522)** | **($250,573)** | **($588,631)** | **($427,751)** | **($564,880)** | **($415,558)** | **($822,212)** | **($382,586)** | **($382,586)** | **($446,301)** | **($641,786)** | **($369,398)** | **($369,398)** | **($369,398)** | **($433,113)** |
| **Labor Costs:** | | | | | | | | | | | | | | | | | | |
| Pay | ($255,521) | ($84,946) | ($283,827) | ($84,946) | ($283,827) | ($84,946) | ($283,827) | ($84,946) | ($283,827) | ($84,946) | ($283,827) | ($84,946) | ($283,827) | ($84,946) | ($283,827) | ($84,946) | ($283,827) | ($84,946) |
| Benefits, 401k and Admin Costs | ($31,149) | ($4,898) | ($12,376) | ($4,898) | ($137,450) | ($4,898) | ($12,376) | ($4,898) | ($137,450) | ($4,898) | ($12,376) | ($4,898) | ($137,450) | ($4,898) | ($12,376) | ($4,898) | ($137,450) | ($4,898) |
| Temps | ($86,340) | ($43,505) | ($68,122) | ($51,556) | ($68,862) | ($43,505) | ($43,505) | ($43,505) | ($43,505) | ($43,505) | ($43,505) | ($43,505) | ($43,505) | ($43,505) | ($43,505) | ($43,505) | ($43,505) | ($43,505) |
| One-Off/True-Up | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Labor Costs** | **($373,011)** | **($133,348)** | **($364,325)** | **($141,400)** | **($490,139)** | **($133,348)** | **($339,707)** | **($133,348)** | **($464,781)** | **($133,348)** | **($339,707)** | **($133,348)** | **($464,781)** | **($133,348)** | **($339,707)** | **($133,348)** | **($464,781)** | **($133,348)** |
| **Overhead:** | | | | | | | | | | | | | | | | | | |
| Insurance | - | ($67,000) | - | - | - | - | ($67,000) | - | - | - | ($67,000) | - | ($200,000) | - | ($67,000) | - | - | - |
| Office Expenses | ($5,243) | ($8,024) | ($3,024) | ($3,024) | ($8,307) | ($3,024) | ($3,024) | ($3,024) | ($3,024) | ($5,429) | ($3,024) | ($3,024) | ($3,024) | ($3,024) | ($3,024) | ($3,024) | ($3,024) | ($3,024) |
| Dues & Subscriptions | ($9,218) | - | - | - | ($1,200) | - | - | - | ($1,200) | - | - | - | ($1,200) | - | - | - | - | ($1,200) |
| Rent/Lease | ($354,689) | - | - | - | - | ($225,870) | - | - | - | ($225,870) | - | - | - | ($225,870) | - | - | - | - |
| Travel & Entertainment | ($2,141) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) | ($2,235) |
| Health & Safety | ($10,028) | ($993) | ($993) | ($993) | ($993) | ($993) | ($993) | ($993) | ($993) | ($3,564) | ($993) | ($993) | ($993) | ($993) | ($993) | ($993) | ($993) | ($993) |
| TSA | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| IT Hosting & ITAR Compliance | ($34,920) | ($6,250) | ($6,250) | ($6,250) | ($6,250) | ($54,825) | ($6,250) | ($6,250) | ($6,250) | ($6,250) | ($6,250) | ($6,250) | ($6,250) | ($6,250) | ($6,250) | ($6,250) | ($6,250) | ($6,250) |
| **Total Overhead Costs** | **($416,240)** | **($84,502)** | **($12,502)** | **($12,502)** | **($18,985)** | **($286,947)** | **($79,502)** | **($12,502)** | **($13,702)** | **($243,348)** | **($79,502)** | **($12,502)** | **($213,702)** | **($238,372)** | **($79,502)** | **($12,502)** | **($12,502)** | **($13,702)** |
| Capex | - | ($23,000) | ($23,000) | ($23,000) | ($23,000) | ($23,000) | ($23,000) | ($23,000) | ($53,000) | ($23,000) | ($23,000) | ($23,000) | ($94,500) | ($23,000) | ($23,000) | ($23,000) | ($94,500) | - |
| Total One-Offs | | - | - | ($165,000) | - | ($100,000) | - | ($100,000) | - | - | - | - | - | - | - | - | - | - |
| **Restructuring & Professional Fees:** | | | | | | | | | | | | | | | | | | |
| Est. Restructuring/Wind-Down Reserve | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Consulting/Professional Fees | ($20,636) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) | ($22,000) |
| Legal Fees | ($86,030) | - | ($200,000) | - | - | - | ($200,000) | - | - | - | ($200,000) | - | - | - | ($200,000) | - | - | - |
| **Total Restructuring & Professional Fees** | **($106,666)** | **($22,000)** | **($222,000)** | **($22,000)** | **($22,000)** | **($22,000)** | **($222,000)** | **($22,000)** | **($22,000)** | **($22,000)** | **($222,000)** | **($22,000)** | **($22,000)** | **($22,000)** | **($222,000)** | **($22,000)** | **($22,000)** | **($22,000)** |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Debt Payments:** | | | | | | | | | | | | | | | | | | |
| None | | | | | | | | | | | | | | | | | | |
| **Total Debt Payments** | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Outflows** | **($1,229,509)** | **($387,991)** | **($806,819)** | **($505,424)** | **($804,697)** | **($1,153,926)** | **($1,091,960)** | **($855,730)** | **($969,041)** | **($1,243,908)** | **($1,046,795)** | **($573,436)** | **($1,241,284)** | **($1,058,506)** | **($1,033,608)** | **($560,248)** | **($963,181)** | **($602,164)** |
| **Net Cash Flow** | ($662,218) | $172,005 | $295,417 | $517,663 | ($412,589) | ($462,596) | ($134,113) | $46,972 | ($11,193) | ($497,744) | ($339,524) | $395,793 | ($753,789) | ($571,011) | ($271,917) | $201,442 | ($201,491) | $261,969 |
| Cumulative Net Cash Flow | $1,291,854 | $1,463,859 | $1,759,275 | $2,276,939 | $1,864,350 | $1,401,754 | $1,267,641 | $1,314,612 | $1,303,419 | $805,676 | $466,152 | $861,945 | $108,156 | ($462,854) | ($734,771) | ($533,329) | ($734,820) | ($472,851) |
| Beginning Cash | $4,875,974 | $4,213,756 | $4,385,761 | $4,681,177 | $5,198,841 | $4,786,252 | $4,323,656 | $4,189,543 | $4,236,515 | $4,225,321 | $3,727,578 | $3,388,054 | $3,783,847 | $3,030,058 | $2,459,048 | $2,187,131 | $2,388,573 | $2,187,082 |
| Change in Cash | ($662,218) | $172,005 | $295,417 | $517,663 | ($412,589) | ($462,596) | ($134,113) | $46,972 | ($11,193) | ($497,744) | ($339,524) | $395,793 | ($753,789) | ($571,011) | ($271,917) | $201,442 | ($201,491) | $261,969 |
| **Ending Cash** | **$4,213,756** | **$4,385,761** | **$4,681,177** | **$5,198,841** | **$4,786,252** | **$4,323,656** | **$4,189,543** | **$4,236,515** | **$4,225,321** | **$3,727,578** | **$3,388,054** | **$3,783,847** | **$3,030,058** | **$2,459,048** | **$2,187,131** | **$2,388,573** | **$2,187,082** | **$2,449,051** |

CONFIDENTIAL AND ESTIMATED

# Exhibit B

Liquidation Analysis

**Liquidation Analysis**

| | Book Balance as of 10/31/2022 / Current | Subchapter V Orderly Liquidation (HIGH) | Subchapter V Orderly Liquidation (LOW) | Chapter VII Trustee Forced Liquidation |
|---|---|---|---|---|
| Cash - 12/2/2022 | 4,399,314 | 4,399,314 | 4,399,314 | 4,399,314 |
| Accounts Receivable - 12/2/2022 | 2,242,607 | 1,681,955 | 1,681,955 | 1,121,303 |
| Inventory - 10/31/2022 | 10,508,933 | 5,254,467 | 5,254,467 | 2,627,233 |
| Fixed Assets - 10/31/2022 | 7,052,388 | 3,778,000 | 2,765,000 | 2,765,000 |
| Net Recovery from Preference and Avoidance Actions | | - | - | - |
| **Total Assets Available for Liquidation** | **24,203,241** | **15,113,735** | **14,100,735** | **10,912,851** |
| | | | | |
| **Administrative Costs of Liquidation** | | | | |
| Liquidator's Buyer's Premium at 16% | | (604,000) | (442,000) | - |
| Marketing Costs | | (100,000) | (100,000) | (25,000) |
| Plant Security | | (80,000) | (80,000) | (80,000) |
| Plant Clean-Up | | (500,000) | (500,000) | (500,000) |
| Rent | | (900,000) | (900,000) | (900,000) |
| Utilities | | (400,000) | (400,000) | (200,000) |
| Insurance | | (300,000) | (300,000) | (100,000) |
| Post-Petition Accounts Payable - 12/2/2022[1] | | (1,436,132) | (1,436,132) | - |
| **Total Administrative Costs of Liquidation** | | **(4,320,132)** | **(4,158,132)** | **(1,805,000)** |
| | | | | |
| **Administrative Professional Fees (Subchapter V)** | | | | |
| Chairman | | (60,000) | (60,000) | |
| Acting COO | | (192,000) | (192,000) | |
| Debtor's Counsel | | (300,000) | (300,000) | |
| Debtor's Financial Advisor | | (150,000) | (150,000) | |
| **Total Administrative Professional Fees (Subchapter V)** | | **(702,000)** | **(702,000)** | |
| | | | | |
| **Administrative Professional Fees (Chapter VII)** | | | | |
| Trustee's Counsel | | | | (100,000) |
| Trustee's Financial Advisor | | | | (50,000) |
| Trustee's Broker at 4% | | | | (216,000) |
| Trustee's Handle | | | | |
| 25% of <5k | | | | (1,250) |
| 10% of 5k-50k | | | | (4,500) |
| 5% of 50k-1m | | | | (47,500) |
| 3% of >$1m | | | | (297,000) |
| **Total Administrative Professional Fees (Chapter VII)** | | | | **(716,250)** |
| | | | | |
| **Cash Available for Distribution to Creditors** | | **10,091,603** | **9,240,603** | **8,391,601** |
| | | | | |
| **Priority Claims** | | | | |
| WARN Act Obligation | | (2,000,000) | (2,000,000) | (2,000,000) |
| PTO & Sick Pay | | (590,000) | (590,000) | (590,000) |
| **Total Priority Claims** | | **(2,590,000)** | **(2,590,000)** | **(2,590,000)** |
| | | | | |
| **No Secured Creditors** | | - | - | - |
| | | | | |
| **Remaining Cash Available for General Unsecured Creditors** | | **7,501,603** | **6,650,603** | **5,801,601** |
| | | | | |
| **General Unsecured Creditors** | | | | |
| Lease Termination Claim | | (900,000) | (900,000) | (900,000) |
| Contract Termination Claims from Customers and Other Claims[2][3] | | - | - | - |
| Scheduled General Unsecured Creditors | | (1,450,815) | (1,450,815) | (1,450,815) |
| Chapter VII Post-Petition Accounts Payable | | - | - | (1,436,132) |
| Subchapter V Administrative Claims | | - | - | (250,000) |
| **Total General Unsecured Claims** | | **(2,350,815)** | **(2,350,815)** | **(4,036,947)** |
| | | | | |
| **Remaining Cash Available for Equity** | | **5,150,788** | **4,299,788** | **1,764,654** |
| **Percentage Recovery on GUCs** | | **100.0%** | **100.0%** | **100.0%** |

(1) Includes accrued and received but not inspected invoices.
(2) Customers have filed placeholder claims that are not liquidated, and may or may not need to be paid.
(3) Willis and Esterhay claims are unliquidated and disputed and valued at zero at this time.