## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| ASTECH ENGINEERED PRODUCTS, INC.[1] | ) ) | Case No. 22-10635 (BLS) |
| Debtor. | ) ) | **Re: D.I. 214, 318, 369** |

**ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) AUTHORIZING AND APPROVING THE FORM OF ASSET PURCHASE AGREEMENT WITH ASTECH HOLDCO, LLC; (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES; AND (D) GRANTING RELATED RELIEF**

Upon the request of ASTECH Engineered Products, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor"), as set forth in its Sale and Procedures Motion [D.I. 214] (the "Motion"),[2] for the entry of an Order pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) authorizing the sale of substantially all of the Debtor's assets free and clear of liens, claims, encumbrances, and other interests; (b) approving the form of the asset purchase agreement (the "Agreement") with Astech Holdco, LLC (the "Purchaser"); (c) authorizing and approving the assumption and assignment of certain executory contracts and leases; and (d) granting related relief; and the Court having found that (i) the Court has jurisdiction to consider the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this District pursuant to 28 U.S.C.

---

[1] The last four digits of the Debtor's federal tax identification number is 7721. The Debtor's address is 3030 Red Hill Ave., Santa Ana, CA 92705.

[2] Debtor's Motion For Entry Of (A) An Order (I) Establishing Bidding Procedures, (II) Scheduling An Auction And A Sale Hearing In Connection With The Sale Of Substantially All Of The Debtor's Assets, (III) Setting Deadlines In Connection Therewith, (IV) Approving The Form Of The Asset Purchase Agreement, Including The Stalking Horse Bidder's Premium, And (V) Granting Related Relief; And (B) An Order (I) Authorizing The Sale Of Substantially All Of The Debtor's Assets Free And Clear Of Liens, Claims, Encumbrances, And Interests, (II) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Granting Related Relief  [D.I. 214].

§§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice was

sufficient under the circumstances; and (v) the Court has the authority to enter a final order; and

after due deliberation the Court having determined that the relief requested is in the best interest

of the Debtor, its estate and its creditors; and good and sufficient cause having been shown;

**IT IS FOUND AND DETERMINED THAT:**

**A.**     **Findings**. The findings and conclusions set forth herein constitute the Court's

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to

this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings

of fact constitute conclusions of law, they are adopted as such. To the extent any of the

following conclusions of law constitute findings of fact, they are adopted as such.

**B.**     **Jurisdiction and Venue**. This Court has jurisdiction over the Motion pursuant to

28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this

case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

**C.**     **Statutory Predicates**. The statutory predicates for the relief sought in the Motion

are sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004,

and 6006 and 9014.

**D.**     **Final Order**. This Order constitutes a final and appealable order within the

meaning of 28 U.S.C. § 158(a).  Purchaser may close the sale contemplated by the Agreement at

any time after the entry of this Order and shall not be subject to the stay provided by Bankruptcy

Rules 6004(h) and 6006(d).

**E.**     **Petition Date**. On July 15, 2022, the Debtor commenced this case by filing a

petition under subchapter V of chapter 11 of title 11 of the Bankruptcy Code.

    **F.**    **Subchapter V Trustee**. David M. Klauder was appointed and has acted as the Subchapter V Trustee (the "Trustee") in this case.

    **G.**    **Expansion of Subchapter V Trustee's Powers**.  On February 6, 2023, the Bankruptcy Court entered the *Agreed Order Resolving Motion to Remove ASTECH as Debtor-In-Possession and to Commensurately Expand the Duties of the Subchapter V Trustee and Related Statements* [D.I. 316] (the "Expansion Order").  Among other things, the Expansion Order expanded the duties of the Trustee, empowering the Trustee "to administer and make all determinations on behalf of the Debtor related to the Sale" (the "Sale").  The Expansion Order defined the Sale as "a sale, in one or more transactions, of all of the Debtor's business, including substantially all of the Debtor's assets used in the business, but excluding those assets typically reserved by a selling debtor in a sale transaction conducted under Chapter 11 of the Bankruptcy Code."  *See* D.I. 316, at ¶ 1.

    **H.**    **Entry of Bidding Procedures Order**. On February 6, 2023, this Court entered its *Order (I) Establishing Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing in Connection With the Sale of Substantially All of Debtor's Assets, (III) Setting Deadlines in Connection Therewith, (IV) Approving the Form of the Asset Purchase Agreement, Including The Stalking Horse Bidder's Premium, and (V) Granting Related Relief* (the "Bidding Procedures Order") [D.I. 318].[3]  On March 10, 2023, this Court entered an Amended Order [D.I. 369], approving revised dates and deadlines relevant to the Sale.

    **I.**    **Compliance with Bidding Procedures Order, as Amended.** As demonstrated by the testimony and other evidence proffered or introduced at a hearing on the Motion held on May 8, 2023 (the "Sale Hearing"), and the representations of counsel made on the record at the Sale Hearing, the Trustee, acting in accordance with the Expansion Order, has marketed the Debtor's

---

[3] Each capitalized term not otherwise defined herein shall have the meaning ascribed to such term in the Bidding Procedures Order and the underlying Bidding Procedures attached as Exhibit A thereto.

business and assets and conducted the related sale process in good faith and in compliance in all respects with the Bidding Procedures Order. All interested parties and entities have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence investigations, (ii) submit bids and to submit higher or otherwise better bids to purchase the Debtor's assets, and (iii) object or be heard with respect to the relief granted by this Order. The bidding procedures were non-collusive, formulated and implemented in good faith, and were substantively and procedurally fair to all parties.

**J.**    **Selection of Stalking Horse Bid**.  On March 31, 2023, the Trustee filed a *Notice of Stalking Horse Bid* [D.I. 383], selecting the bid of Avem Partners, LLC ("Avem")/the Purchaser[4] as the stalking horse bid and attaching a preliminary version of an asset purchase agreement.

**K.**    **Auction**. The Purchaser acted in compliance with the terms of the Bidding Procedures Order, as amended, and the Trustee and the Debtor received no Overbids. On April 19, 2023, the Trustee began an Auction at which the Purchaser made the best and highest bid for the Debtor's Assets. Avem/the Purchaser was deemed the only Qualified Bidder by the Trustee, but the Trustee conceded that it was not yet a Qualified Lease Bidder,[5] as required under the Bidding Procedures. The Auction was continued multiple times to allow the Purchaser and Key Constituents to negotiate an arrangement that would be satisfactory to The Boeing Company ("Boeing") with respect to the Adequate Assurance Condition set forth in the Boeing Sale Support MoU [D.I. 306, Ex.A] and allow the Purchaser to be deemed a Qualified Lease Bidder. On April 30, 2023, the Trustee was informed that certain of the Key Constituents had reached

---

[4] Avem Partners, LLC was the entity that made the Stalking Horse Bid and Winning Bid, as described further herein and in the Bidding Procedures [D.I. 318, Ex. A]. Since such qualifications of Avem's Bid, Avem has identified Astech Holdco, LLC as the Avem-affiliated entity that will serve as the purchasing entity.

[5] As set forth in the Boeing Sale Support MoU [D.I. 306, Ex. A] and the Bidding Procedures [D.I. 318, Ex. A].

LEGAL\54289027\1

agreements in principle that would allow the Purchaser to be deemed a Qualified Lease Bidder, subject to final documentation of several interrelated agreements.  Thus, in accordance with the Bidding Procedures Order, the Trustee, in consultation with the Debtor and Key Constituents, determined that the bid submitted by the Purchaser was the winning bid.  On May 1, 2023, the Trustee filed the *Notice of Winning Bid* [D.I. 409], identifying the bid of Avem/the Purchaser, as the highest and best Qualified Bid and, therefore, the Winning Bid.

      **L.**    **Highest and Best Bid**. The Agreement constitutes the highest and best offer for the Assets and the best opportunity to maximize the value of the Assets on a going concern basis, and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The terms and conditions of the Agreement, including the consideration to be realized by the Debtor pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement constitute a valid and sound exercise of the Debtor's and the Trustee's business judgment.

      **M.**    **Agreement Approval**. In accordance with the Bidding Procedures Order, (i) the Purchaser is a Qualified Bidder and a Qualified Lease Bidder; (ii) was eligible to participate in the Auction; and (iii) was named the Winning Bid. The Agreement between the Debtor and the Purchaser has been approved in form and substance.

      **N.**    **Notice**. As evidenced by the certifications of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Sale Hearing, the Auction and the sale have been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006; (ii) such notice was in compliance with the Bidding Procedures Order; (iii) such notice was good and sufficient, and appropriate under the particular circumstances,

and (iv) no other or further notice of the Motion, the Sale Hearing, the sale or the entry of this Order is or shall be required.

**O.**    **Opportunity to Object**. A fair and reasonable opportunity to object and to be heard has been given to all interested persons and entities.

**P.**    **Corporate Authority**. The Debtor (i) has been authorized by its management to execute and consummate the Agreement and all other documents contemplated thereby, and the Sale has been duly and validly authorized by the Court pursuant to this Order, and (ii) no government, regulatory or other consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtor to enter into the Agreement and consummate the sale.

**Q.**    **Arm's-Length Sale**. The Agreement was negotiated, proposed and entered into by the Debtor and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtor, the Purchaser nor the Trustee has engaged in any conduct that would cause or permit the Agreement to be avoided under 11 U.S.C. § 363(n). Specifically, the Purchaser has not acted in a collusive manner with any person.

**R.**    **Good Faith Purchaser**. The Purchaser is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law with respect to all of the Assets and the relief provided for in this Order. Specifically: (i) the Purchaser recognized that the Trustee and the Debtor were free to deal with any other party interested in purchasing the Assets; (ii) the Purchaser complied in good faith with the provisions in the Bidding Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) the negotiation and execution of the Agreement was at arm's-length and

in good faith, and at all times each of the Purchaser and the Debtor were represented by competent counsel of their choosing; (v) the Purchaser did not induce or cause the chapter 11 filing of the Debtor; and (vi) the Purchaser has not acted in a collusive manner with any person. The Purchaser will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Agreement. The Purchaser is entitled to all of the protections and immunities of section 363(m) of the Bankruptcy Code.

**S.**     **Free and Clear**.

1.     To the extent that the Debtor has any right, title, or interest in the Assets, the Debtor's right, title, and interest in the Assets constitutes property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. Except as otherwise expressly provided in the Agreement or this Order, the Debtor may sell its right, title, and interest in the Assets to Purchaser free and clear of all liens, claims and encumbrances and obligations.

2.     Notwithstanding anything to the contrary in this Order or the Agreement, for the avoidance of doubt, the Assets shall not include the tooling identified on Schedule 2 to this Order, and identified and acknowledged in Exhibit A to the *Stipulation Resolving in Part the Limited Objection of Spirit AeroSystems, Inc. to (I) Sale of the Debtor's Assets, (II) Proposed Cure Amount, and (III) Reservation of Rights* approved by the Court by an Order [D.I. 414] entered on May 3, 2023, and attached as Exhibit 1 thereto, and any other tools, tooling, machinery, and/or equipment owned by other customers of the Debtor (collectively with the tooling identified on Schedule 2, the "Tooling"), which Tooling is not and shall not be sold or conveyed to the Purchaser as part of the Sale.

7

3.      The transfer of the Assets to the Purchaser free and clear of all liens, claims and Encumbrances will not result in any undue burden or prejudice to any holders of any such liens, claims and encumbrances as such liens, claims and encumbrances, if valid, shall attach to the net proceeds of the sale that are ultimately attributable to the Assets when received by the Debtor, in the order of their priority, with the same validity, force, and effect which they now have as against the Assets and subject to any claims and defenses the Debtor, its estate, or other parties may possess with respect to such Encumbrances.

4.      The Debtor may sell its interest in the Assets, if any, free and clear of all liens, claims and encumbrances because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of liens, claims and encumbrances who did not object or who withdrew their objections to the sale are deemed to have consented to the sale pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of liens, claims and encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

5.      The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated hereby, including the sale and the assumption and assignment of the Assumed and Assigned Contracts (as defined below), if any, (i) if the transfer of the Assets was not free and clear of all liens, claims and encumbrances, including rights or claims based on any successor or transferee liability, or (ii) if the Purchaser would, or in the future could, be liable for any such liens, claims and encumbrances, including rights or claims based on any successor or transferee liability, in each case except for the claims, liabilities, and obligations that the Purchaser is assuming under the Agreement or this Order. The Purchaser will not consummate the transactions contemplated by the Agreement, including the Sale and the

LEGAL\54289027\1

assumption and assignment of the Assumed and Assigned Contracts, unless this Court expressly orders that none of the Purchaser, its affiliates, its present members, or its shareholders, or the Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims and encumbrances and other interests, including rights or claims based on any successor or transferee liability.

6.      Not transferring the Assets free and clear of all liens, claims and Encumbrances of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, would adversely impact the Debtor's efforts to maximize the value of its estate, and the transfer of the Assets other than pursuant to a transfer that is free and clear of all liens, claims and Encumbrances would be of substantially less benefit to the Debtor's estate.

**T.      Assumption and Assignment of Executory Contracts and Unexpired Leases.**

The Debtor is authorized at the Closing (as defined herein) to assume each of the executory contracts and unexpired leases (the "Assumed and Assigned Agreements") listed on **Schedule 1** attached hereto, and to assign such Assumed and Assigned Agreements to the Purchaser free and clear of all liens, claims, interests and encumbrances pursuant to sections 105(a) and 365 of the Bankruptcy Code.  The Debtor is further authorized to execute and deliver to the Purchaser such documents and or other instruments as may be necessary to assign and transfer the Assumed and Assigned Agreements to the Purchaser.

While certain responses, limited objections, and reservations of rights were filed with regard to the Assumption and Assignment Notice,[6] any and all objections have been resolved or

---

[6] *See, e.g.*, D.I. 361, 362, 363, 365, 367.

are overruled and, at the Closing, the Debtor shall assume and assign to the Purchaser each of the Assumed and Assigned Agreements (as may have been or may be modified by agreement between the applicable non-Debtor contract counterparty and Avem or the Purchaser) that are listed on Schedule 1 attached hereto.

Proper, timely, adequate and sufficient notice of the executory contracts and unexpired leases proposed to be assumed and assigned to the Purchaser was provided in accordance with sections 363 and 365 of the Bankruptcy Code and applicable Bankruptcy Rules and in compliance with the Bidding Procedures Order, and no other or further notice was, is or shall be required.

All applicable Cure Amounts (as that term is defined in the Assumption and Assignment Notice) as fixed in the amounts set forth in Schedule 1 to the Assumption and Assignment Notice or, if applicable, such other amounts upon which the Debtor and any of the contract counterparties may have agreed, shall be paid by the Purchaser and not by the Debtor, and the Debtor will have no liability for any Cure Amounts.  Except as otherwise set forth in this Order, payment of the Cure Amounts by the Purchaser shall: (i) effect a cure of all defaults existing under the Assumed and Assigned Agreements as of the Closing; and (ii) compensate for any actual pecuniary loss to such non-Debtor contract counterparty resulting from such default.

At any time before the date that is the later of (i) the entry of the Sale Order; and (ii) the conclusion of any cure objection hearing relating to any particular Assumed and Assigned Agreement as to which a cure objection was timely filed, (but in no event later than five Business Days before the Closing) the Purchaser will be entitled, in its sole and absolute discretion, to remove any contract from Schedule 1 to this Order by providing written notice thereof to the Debtor; *provided, however,* that (a) Assumed and Assigned Agreements with ITP Aero UK

Limited listed on Schedule 1 to this Order shall not be removed from Schedule 1 without ITP Aero UK Limited's prior written consent, and (b) Assumed and Assigned Agreements with Spirit AeroSystems, Inc. listed on Schedule 1 to this Order shall not be removed from Schedule 1 without Spirit AeroSystems, Inc's prior written consent, and (c) Assumed and Assigned Agreements with Pratt & Whitney/United Technologies Co. listed on Schedule 1 to this Order shall not be removed from Schedule 1 without Pratt & Whitney/United Technologies Co.'s prior written consent.  Any contract so removed will be deemed to be an "Excluded Asset" for all purposes under the Asset Purchase Agreement. There shall be no adjustment to the Purchase Price as a result of the Purchaser's election to exclude any one or more of the contracts, except that the Purchaser shall not be required to make any payments for Cure Amounts or any other amounts for any such Excluded Assets.

Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of any applicable Cure Amounts, all Assumed and Assigned Agreements not otherwise excluded by the Purchaser as described in the foregoing paragraph shall be assigned and transferred to, and shall remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in the contracts or other restrictions that may prohibit their assignment or transfer.  Any provision in any Assumed and Assigned Agreement that prohibits or conditions the assignment of such Assumed and Assigned Agreement or allows the counterparty to such Assumed and Assigned Agreement to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Assumed and Assigned Agreement, constitutes an unenforceable anti-assignment provision that is void and of no force and effect. The assignment of each of the Assumed and Assigned Agreements is made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser of the Assumed and Assigned Agreements have been satisfied, including that the Purchaser has provided adequate assurance of its future performance under the Assumed and Assigned Agreements within the meanings of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

Except as otherwise set forth in this Order, each non-Debtor counterparty to the Assumed and Assigned Agreements shall be forever barred, estopped, and permanently enjoined from: (i) asserting against the Trustee, the Debtor, or the Purchaser, or their respective property, any assignment fee, acceleration, default, breach, Claim or pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing or arising by reason of the Closing, including any breach related to or arising out of change-in-control provisions in such Assumed and Assigned Agreements, or any purported written or oral modification to the Assumed and Assigned Agreements; and (ii) asserting against the Purchaser (or its property, including the Purchased Assets) any Claim, counterclaim, defense, breach, condition, setoff asserted, or that can be asserted against the Debtors existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities.  Notwithstanding anything to the contrary in this Order or the Agreement, in addition to the Cure Amounts, the Purchaser assumes all obligations and liabilities of the Debtor to non-Debtor counterparties to the Assumed and Assigned Agreements that have accrued or arisen under the Assumed and Assigned Agreements before the Closing Date (as defined herein) but that have not yet become due and/or defaults as of the Closing Date. Moreover, the Purchaser is purchasing and shall be entitled to enforce all rights and claims relating to or arising under the Assumed and Assigned Agreements, and all setoffs and

recoupment rights of the non-Debtor counterparties to such Assumed and Assigned Agreements are expressly preserved in connection therewith.

Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtor under the Assumed and Assigned Agreements, and such Assumed and Assigned Agreements shall remain in full force and effect for the benefit of the Purchaser.  To the extent that a counterparty to an Assumed and Assigned Agreement and the Purchaser or Avem have agreed to any modification of terms under an Assumed and Assigned Agreement, such agreement shall be deemed assumed and assigned as modified.

Upon the Closing and the payment of the relevant Cure Amounts, if any, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assumed and Assigned Agreements and the Debtor shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assumed and Assigned Agreements.  There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Purchaser or the Debtor as a result of the assumption and assignment of the Assumed and Assigned Agreements.  The validity of the assumption and assignment of any Assumed and Assigned Agreement to the Purchaser shall not be affected by any existing dispute between the Debtor and any counterparty to such Assumed and Assigned Agreement.  Any party that may have had the right to consent to the assignment of any Assumed and Assigned Agreement is deemed to have consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

Notwithstanding anything herein to the contrary, the Debtor, and Purchaser as applicable, shall not be released from their respective obligations owing under that certain *Consent Order Granting Debtor's Motion to Assume Sublease of Non-Residential Real Property from GKN*

*Aerospace Chem-Tronics Inc.* [Dkt. No. 300], that certain *Stipulation Between the Debtor and GKN Aerospace Chem-Tronics Inc. Regarding Debtor's First Notice of Satisfied Claims* and accompanying Order [Dkt. No. 408], or that certain Agreement of Assumption and Assignment of Lease to be executed by and among Debtor, Purchaser and GKN Aerospace Chem-Tronics Inc. concurrently with the Closing of the transactions contemplated hereunder.

    **U.**    **No Fraudulent Transfer**. The Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

    **V.**    **No Successor Liability**. The transfer of the Assets to the Purchaser, except as otherwise set forth in the Agreement or this Order, does not, and will not, subject the Purchaser or any of its successors or assigns to any liability whatsoever, with respect to the operation of the Debtor's business prior to the closing of the sale transaction or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including any laws affecting antitrust, successor, transferee or vicarious liability. Pursuant to the Agreement, the Purchaser is not purchasing all of the Debtor's assets. The sale does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtor and/or the Debtor's estate. There is not substantial continuity between the Purchaser and the Debtor, and there is no continuity of enterprise between the Debtor and the Purchaser. The Purchaser is not a mere continuation of the Debtor or the Debtor's estate, and the Purchaser does not constitute a successor to the Debtor or the Debtor's estate.

    **W.**    **Legal, Valid Transfer**. The transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer and will vest the Purchaser with all right, title, and interest

of the Debtor to the Assets free and clear of all liens, claims and encumbrances, as set forth in the Agreement, except as expressly set forth in this Order.

**X.**      **Agreement Not Modified**. The terms of the Agreement are fair and reasonable in all respects and the terms of the Order shall not modify the terms of the Agreement, except as expressly set forth in this Order.

**Y.**      **Not a Sub Rosa Plan**. The sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The sale neither impermissibly restructures the rights of the Debtor's creditors, nor impermissibly dictates a liquidating plan of reorganization for the Debtor.

**Z.**      **Legal and Factual Bases**. The legal and factual bases set forth at the Sale Hearing establish just cause (i) for the relief granted herein and (ii) for the stays provided for in Bankruptcy Rules 6004(h) and 6006(d) to be waived upon the entry of this Order.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted as set forth herein.

2.      All objections and responses that have not been overruled, withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied.

3.      Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

4.      The Purchaser's offer for the Assets, as embodied in the Agreement, is the highest and best offer for the Assets under the circumstances of this case and is hereby approved.

LEGAL\54289027\1

5.      The Agreement is hereby approved pursuant to section 363(b) of the Bankruptcy Code and the Debtor is authorized and directed to consummate and perform all of its obligations under the Agreement and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the Agreement.

6.      The closing of the transaction ("Closing") will take place remotely via electronic exchange of documents, on the date ("Closing Date") that is as soon as reasonably practicable after the Sale Order is entered and all other conditions to Closing have either been waived or satisfied; however, the Closing Date must occur within ten (10) days after entry of the Sale Order.  If the Closing Date does not occur by May 22, 2023, the Debtor, the Trustee, and/or any of the Key Constituents shall be entitled to request an emergency hearing on the status of the Closing.

7.      Pursuant to sections 363(f) and 365 of the Bankruptcy Code, the Assets are being assumed, assigned, sold and transferred to the Purchaser free and clear of all liens, claims, interests and encumbrances (collectively, the "Liens") except as otherwise provided in the Agreement, with any and all such Liens to attach to proceeds of such sale with the same validity, priority, force and effect such Liens had on the Assets immediately prior to the sale and subject to the rights, claims, defenses, and objections, if any, of the Debtor and all interested parties with respect to any such asserted Liens. Nothing in this Order shall constitute a finding or determination that the Debtor owns any interest in the Assets.

8.      The consideration provided by Purchaser under the Agreement is fair and reasonable and constitutes (i) reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act or the Uniform Voidable Transactions Act; (ii) fair consideration under the Uniform Fraudulent Conveyance Act; and (iii) reasonably equivalent

value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.

9.      Except as expressly permitted by the Agreement as to any Liens, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities (to the fullest extent allowed by applicable law), lenders, trade creditors, contract counterparties, customers, landlords, licensors, employees, litigation claimants and other persons, holding Liens of any kind or nature whatsoever against or in the Debtor or the Debtor's interests in the Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of this chapter 11 case, whether imposed by agreement, understanding, law, equity or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtor, the Assets, the operation of the Debtor's business before the Closing or the transfer of the Debtor's interests in the Assets to the Purchaser, shall not assert, prosecute or otherwise pursue any Liens against the Purchaser, its property (including, without limitation, the Assets), its successors and assigns, or interfere with the Purchaser's title to, use or enjoyment of the Assets, in each case, without first obtaining an order of this Court after notice and a hearing permitting such Lien to proceed.

10.     If any person or entity that has filed financing statements, mortgages or other documents or agreements evidencing any encumbrances or Liens in or against any of the Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all such encumbrances or Liens that the person or entity has with respect to the Assets, the Debtor or

Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Assets prior to the Closing, and the Purchaser is authorized to file such documents after Closing.

11.     All persons or entities which presently, on, or after the Closing Date are in possession of any Assets are directed to surrender possession of such Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request, if there is no dispute as the Debtor's ownership of the Assets.

12.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel the Liens and other encumbrances of record with respect to the Assets.

13.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

14.     Consummation of the Agreement does not effect a de facto merger of the Debtor and Purchaser or result in the continuation of the Debtor's business under Purchaser's control.

LEGAL\54289027\1

Purchaser is not (and shall not be deemed to be) the alter ego of or a successor in interest to the Debtor.

15.    Except as expressly provided in the Agreement or this Order, Purchaser is not assuming nor shall Purchaser or any affiliate of Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtor in any way whatsoever relating to or arising from the Debtor's ownership or use of the Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtor or its operations or the Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Purchaser or any affiliate of Purchaser.

16.    Pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtor, all debt security holders, equity security holders, the Debtor's employees or former employees (including retirees), governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a liability, claim, Encumbrance or Lien of any kind or nature whatsoever against, in or with respect to the Debtor or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtor, the Assets, the operation and maintenance of the Debtor's business prior to the Closing Date or the transfer of the Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such liability, claim, Encumbrance or Lien against the Assets, the Purchaser or any affiliate of the Purchaser, successor or assign thereof and each of their

respective current and former members, officers, directors, investment advisors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in its individual capacity). For the avoidance of doubt, the foregoing shall not prevent the Debtor or its estate, successors or permitted assigns from pursuing claims, if any, against the Purchaser relating to the Purchaser's performance under the terms of the Agreement.

17. To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Purchaser as of the Closing.

18. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Assets sold, transferred, assigned, or conveyed to the Purchaser on account of the filing or pendency of this chapter 11 case.

19. The stays provided for in Bankruptcy Rule 6004(h) and 6006(d) are hereby waived and this Order shall be effective immediately upon its entry.

20. The terms of this Order shall be binding on the Purchaser and its successors, the Debtor, creditors of the Debtor and all other parties in interest in this bankruptcy case, and any successors of the Debtor, including any trustee or examiner appointed in this case or upon a conversion of this case to chapter 7 of the Bankruptcy Code.

21. Notwithstanding the entry of any order under section 1112 of the Bankruptcy Code, this Order, including the rights granted to the Purchaser hereunder, shall remain effective and, notwithstanding such conversion or dismissal, shall remain binding on the Debtor, its estate,

successor, assigns, creditors, and equity holders.

22.     The Purchaser is a good faith purchaser entitled to the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

23.     The sale approved by this Order is not subject to avoidance or the imposition of an award of monetary damages pursuant to section 363(n) of the Bankruptcy Code.

24.     The provisions of this Order are non-severable and mutually dependent.

25.     This Court retains jurisdiction to interpret, implement and enforce the provisions of, and resolve any disputes arising under or related to, this Order and the Agreement, all amendments thereto, any waivers and consents thereunder and each of the agreements executed in connection therewith; provided, however, that any actions and/or disputes arising from enforcement of the Lease (including but not limited to attempts to evict the tenant from the Premises) shall be subject to the exclusive jurisdiction of any court of competent jurisdiction outside the Bankruptcy Court.

26.     The failure specifically to include any particular provisions of the Agreement or any of the documents, agreements or instruments executed in connection therewith in this Order shall not diminish or impair the force of such provision, document, agreement or instrument, it being the intent of the Court that the Agreement and each document, agreement or instrument be authorized and approved in its entirety.


**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: May 19th, 2023**
**Wilmington, Delaware**

21