**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| AEP LEGACY, INC.[1] [2] | ) | Case No. 22-10635 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

# AMENDED SUBCHAPTER V PLAN OF LIQUIDATION OF AEP LEGACY, INC. f/k/a ASTECH ENGINEERED PRODUCTS, INC.

You are encouraged to carefully review the full text of this document, including all exhibits, before deciding how to vote on the Plan. To assist you in your review, please note that a list of frequently asked questions appears at the end of this document.

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

**COZEN O'CONNOR**
Marla S. Benedek (DE Bar No. 6638)
Simon E. Fraser (DE Bar No. 5335)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2000
E-mail: mbenedek@cozen.com

Brian L. Shaw (admitted pro hac vice)
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 474-1647
E-mail: bshaw@cozen.com

**BROOKS WILKINS SHARKEY & TURCO**
Matthew E. Wilkins (admitted pro hac vice)
Paula A. Hall (admitted pro hac vice)
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Telephone: (248) 971-1800
E-mail: wilkins@bwst-law.com
E-mail: hall@bwst-law.com
Counsel to the Debtor
and Debtor-in-possession

[1] The last four digits of the Debtor's federal tax identification number is 7721. The Debtor's address is 850 New Burton Rd., Suite 201, Dover, DE 19904.
[2] The Debtor's name has changed from ASTECH Engineered Products, Inc.

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

Having closed the sale of substantially all of its assets, this plan (the "Plan") will be funded through cash available in the estate of ASTECH Engineered Products, Inc. ("ASTECH" or the "Debtor").

Estimated recoveries under the Plan are:

| Description | Anticipated Recovery |
|---|---|
| Administrative Claims – Unclassified | 100% |
| Priority Tax Claims – Unclassified | n/a |
| Secured Claims – Unclassified (None) | n/a |
| Priority Unsecured Claims | n/a |
| General Unsecured Claims | To be determined |
| Equity Interests | To be determined |

## ARTICLE I

## DEFINITIONS

For purposes of this Plan, the following terms shall have the following meanings. A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.

**1.1 Administrative Expense Claim:** "Administrative Expense Claim" shall mean a Claim that is Allowed under 11 U.S.C. § 503(b) and that is entitled to priority under 11 U.S.C. § 507(a)(2), including, without limitation:

(a) fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court,

(b) fees and expenses of the Subchapter V Trustee and any mediator(s) appointed in this case, Allowed pursuant to an Order of the Bankruptcy Court, and

(c) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

**1.2 Administrative Claimant:** Any person entitled to payment of an Administrative Expense.

**1.3 Administrative Claims Bar Date:** The last date by which any Person must File a request for payment of an Administrative Claim, which date shall be the first Business Day that is thirty (30) calendar days after the Effective Date, or, alternatively, such earlier date as is set by the Bankruptcy Court. For the avoidance of doubt, post-petition statutory tax claims shall not be subject to any Administrative Claims Bar Date. For the further avoidance of doubt, the Claims Bar Date for Section 503(b)(9) Claims was the General Claims Bar Date.

**1.4 Administrative Tax Claim:** Any tax incurred pursuant to section 503(b)(1)(B) of the Bankruptcy Code.

**1.5 Allowed, Allowed Claim, or Allowed Administrative Claim:**

(a) with respect to a Claim arising prior to the Petition Date (including a section 503(b)(9) Claim):

(i) to the extent such Claim has not been paid, either (A) a proof of claim was timely filed by the applicable Claims Bar Date, or (B) a proof of claim is deemed timely Filed either as a result of such Claim being Scheduled or by a Final Order; and

(ii) either (A) the Claim is not a Contingent Claim, a Disputed Claim, an Unliquidated Claim, or a Disallowed Claim; or (B) the Claim is expressly allowed by a Final Order or under the Plan;

(b) with respect to a Claim arising on or after the Petition Date (excluding a section 503(b)(9) Claim), a Claim that has been allowed by a Final Order or under the Plan.

Unless otherwise specified in the Plan or by a Final Order, an "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, fees, or late charges on such Administrative Claim or Claim from and after the Petition Date. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Case is not an Allowed Claim. For the avoidance of doubt, any and all Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

**1.6 ASTECH:** AEP Legacy, Inc., f/k/a ASTECH Engineered Products, Inc., a Delaware corporation.

**1.7 Available Cash:** Cash remaining in the Estate after payment of Administrative Expense Claims.

**1.8 Avoidance Actions:** Any and all causes of action, claims, remedies, or rights that have been or may be brought by or on behalf of the Debtor or the Estate under Bankruptcy Code sections 542, 544, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.9** **Ballot:** The ballot form distributed to each Holder of a Claim entitled to vote to accept or reject the Plan.

**1.10** **Bankruptcy Code:** Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as the same may be amended from time to time to the extent applicable to the Chapter 11 Case.

**1.11** **Bankruptcy Court:** The United States Bankruptcy Court for the District of Delaware, or in the event such court ceases to exercise jurisdiction over the Chapter 11 Case, such other court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the District of Delaware.

**1.12** **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Case.

**1.13** **Board**: Any Board of Directors or other managers of ASTECH.

**1.14** **Business Day:** Any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

**1.15** **Cash:** Cash and cash equivalents, including bank deposits, wire transfers, checks representing good funds, and legal tender of the United States of America or instrumentalities thereof.

**1.16** **Causes of Action:** Any and all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, rights of setoff, third-party claims, subordination claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims, damages, or judgments whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise.

**1.17** **Chapter 11 Case:** The voluntary chapter 11 bankruptcy case commenced by the Debtor, under the case caption In re AEP Legacy, Inc., Case No. 22-10635 (BLS), in the United States Bankruptcy Court for the District of Delaware.

**1.18** **Claim:** Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**1.19 Claim Objection Deadline:** Subject to extension, the date that is the first Business Day that is at least 30 calendar days after the Effective Date. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

**1.20 Claims Bar Date:** As applicable, the Administrative Claims Bar Date, the General Claims Bar Date, the Governmental Claims Bar Date, any Supplemental Bar Date, or the Rejection Claims Bar Date.

**1.21 Class:** A category of Claims or Equity Interests designated pursuant to the Plan, or any subclass thereof.

**1.22 Confirmation:** Entry by the Bankruptcy Court of the Confirmation Order.

**1.23 Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order.

**1.24 Confirmation Hearing:** The hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan as required by Bankruptcy Code section 1128(a), as such hearing may be continued from time to time.

**1.25 Confirmation Order:** The order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

**1.26 Contingent Claim:** Any Claim that is Scheduled or Filed as contingent.

**1.27 Corporate Action:** Any action, approval, authorization, decision, or other act of any kind that would be necessary on the part of any Person for any corporation, limited liability company, or other Person to in turn act.

**1.28 Creditor:** Any Holder of a Claim.

**1.29 Cure Payment:** The payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) that is necessary to cure any and all defaults under an executory contract or unexpired lease so that such contract or lease may be assumed, or assumed and assigned, pursuant to Bankruptcy Code section 1123(b)(2).

**1.30 Debtor:** AEP Legacy, Inc. f/k/a ASTECH Engineered Products, Inc., a Delaware Close Corporation.

**1.31 Defined Term:** Any capitalized term that is defined in this Article I of the Plan.

**1.32 Disallowed; Disallowed Claim:** Any Claim that (a) is not Scheduled, or is listed thereon as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder failed to timely File a proof of claim by the applicable Claims Bar Date (unless late filing was permitted by a Bankruptcy Court order), but excluding any Claim that is

expressly Allowed by a Final Order or under the Plan; or (b) has been Disallowed pursuant to an order of the Bankruptcy Court.

**1.33** **Disputed Claim**: Any Claim:

(a) that is disputed in whole or in part under the Plan and, as such, will have no right to receive any Distributions under the Plan unless and until such Claims are affirmatively Allowed by a Final Order; or

(d) that

(i) is not expressly Allowed by a Final Order or under the Plan; and as to which a proof of claim is Filed or is deemed Filed as a result of such Claim being Scheduled; and

(ii) as to which either: an objection or request for estimation or subordination (A) has been timely Filed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order under which the applicable period of limitation has expired, and (B) has not been denied by a Final Order or withdrawn; or the Claim Objection Deadline has not passed as to such Claim (unless the Debtor has determined that it will not object to such Claim).

**1.34** **Distribution:** Any initial or subsequent issuance, payment, or transfer of consideration made under the Plan.

**1.35** **Distribution Date:** Any date on which a Distribution is made.

**1.36** **Distribution Record Date:** The record date for determining entitlement of Holders of Claims to receive Distributions under the Plan, which date shall be the Effective Date.

**1.37** **Effective Date:** The date that is the first Business Day on which each condition set forth in the Plan has been satisfied or waived as set forth therein.

**1.38** **Equity Interests:** All previously issued and outstanding common stock, preferred stock, membership interests, or other ownership interests in the Debtor outstanding immediately prior to the Effective Date, including restricted stock, treasury stock, and all options, warrants, calls, rights, puts, awards, commitments, appreciation rights, or any other agreements of any character to convert, exchange, exercise for, or otherwise receive any such common stock, preferred stock, membership interests, or other ownership interests.

**1.39** **Estate Assets:** Collectively, (a) any and all right, title, and interest of the Debtor and the Estate in and to property of whatever type or nature, including its books and records and all Avoidance Actions and Causes of Action, as of the Effective Date; and (b) any assets contributed to or recovered by the Debtor on or after the Effective Date.

**1.40** **Estate:** The chapter 11 estate of the Debtor created by Bankruptcy Code section 541(a).

**1.41 <u>Exculpated Parties</u>:** Collectively, (a) the Debtor, (b) the Board, and (c) each of their respective Related Parties.

**1.42 <u>File</u>, <u>Filed</u>, or <u>Filing</u>:** Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Case, except with respect to proofs of claim that must be filed with the Claims Agent, in which case "File" or "Filed" means duly and properly filed with the Claims Agent and reflected on the official claims register maintained by the Claims Agent.

**1.43 <u>Final Decree</u>:** An order entered pursuant to Bankruptcy Code section 350, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Chapter 11 Case of the Debtor.

**1.44 <u>Final Order</u>:** An order or judgment of the Bankruptcy Court entered on the docket of the Chapter 11 Case:

(a) that has not been reversed, rescinded, stayed, modified, or amended; that is in full force and effect; and

(b) with respect to which (i) the time to appeal or to seek review, rehearing, remand, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

For the avoidance of doubt, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Code section 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 or 9024 may be or has been filed with respect to such order.

**1.45 <u>General Claims Bar Date</u>**: September 13, 2022

**1.46 <u>General Unsecured Claim</u>:** Any unsecured, non-priority Claim asserted against the Debtor or the Estate, but excluding (a) any Claims arising from any executory contracts or unexpired leases that are assumed during the Chapter 11 Case and (b) any vendor or other Claims satisfied in the ordinary course of business, as critical vendor Claims, or pursuant to any other order of the Bankruptcy Court.

**1.47 <u>Governmental Claims Bar Date</u>:** January 11, 2023.

**1.48 <u>Holder</u>:** The Person that is the owner of record of a Claim or Equity Interest, as applicable.

**1.49 <u>Impaired</u>:** Any Class of Claims or Equity Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**1.50 Lien:** Any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**1.51 Local Rules:** The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

**1.52 Secured Claims:** Any Secured Claims.

**1.53 Person:** Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.54 Petition Date:** July 15, 2022.

**1.55 Plan:** This Amended Subchapter V Plan of AEP Legacy, Inc. and any and all exhibits thereto, as the same may be amended, modified, or supplemented in the Debtor's reasonable discretion.

**1.56 Priority Claim:** A Claim that is entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Claim and a Priority Tax Claim.

**1.57 Priority Tax Claim:** A Claim that is entitled to priority under Bankruptcy Code section 507(a)(8).

**1.58 Professional:** Any professional employed in the Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328, 1103, or 1104 or any professional or other Person (in each case, other than an Ordinary Course Professional) seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Bankruptcy Code sections 503(b)(3) or 503(b)(4).

**1.59 Professional Fee Claim:** A Claim of a Professional for compensation or reimbursement of costs and expenses relating to services provided during the period from the Petition Date through and including the Effective Date.

**1.60 Related Parties:** Collectively, all of the respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, professional persons, representatives, and successors of the referenced Person.

**1.61 Released Parties:** Collectively, (a) the Debtor, (b) any Board or other manager(s) of the Debtor, and (c) each of the preceding's respective Related Parties.

**1.62 Releasing Parties:** Collectively, (a) the Debtor, (b) the Estate, and (c) any Person exercising or seeking to exercise any rights of the Estate (but solely in that capacity), and any successor to the Debtor or any other estate representative that is or could be appointed or selected pursuant to Bankruptcy Code section 1123(b)(3) or otherwise.

**1.63 Scheduled:** Set forth in the Schedules.

**1.64 Schedules:** The Schedules of Assets and Liabilities Filed by the Debtor on July 29, 2022 [D.I. 55, 56 and 59], as amended on August 15, 2022 [D.I. 75] and August 25, 2022 [D.I. 109], and as may be amended from time to time in accordance with Bankruptcy Rule 1009.

**1.65 Section 503(b)(9) Claim:** A Claim arising under Bankruptcy Code section 503(b)(9) for the value of any goods received by the Debtor within twenty (20) calendar days before the Petition Date and that were sold to the Debtor in the ordinary course of their business.

**1.66 Secured Claim:** A Claim that is secured by a valid, perfected, and enforceable Lien on property in which the Debtor or the Estate have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable non bankruptcy law. A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the Debtor' interest in the Collateral or to the extent of the amount subject to set off against a Cause of Action held by the Debtor, whichever is applicable, and as determined under Bankruptcy Code section 506(a). To the extent that the value of such interest in the Debtor' interest in the subject Collateral or the amount subject to set off against a Cause of Action held by the Debtor (as applicable) is less than the amount of the Claim which has the benefit of such security or is supported by such setoff right, such portion of the Claim is unsecured and shall be treated as a General Unsecured Claim unless, in any such case, the Class of which the Secured Claim is a part makes a valid and timely election in accordance with Bankruptcy Code section 1111(b) to have such Claim(s) treated as a Secured Claim to the extent Allowed.

**1.67 Securities Act:** The Securities Act of 1933, as amended.

**1.68 Subchapter V Trustee:** David M. Klauder, who is the trustee appointed by the U.S. Trustee under Bankruptcy Code section 1183.

**1.69 Unimpaired:** Any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.70 Unliquidated Claim:** Any Claim that is Scheduled as unliquidated or that was Filed in an unliquidated amount.

**1.71 U.S. Trustee:** The Office of the United States Trustee for the District of Delaware.

**1.72 Voting Deadline:** The date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the Disclosure Statement Order.

## ARTICLE II

## HISTORY OF THE DEBTOR'S BUSINESS OPERATIONS

### 2.1 Nature of the Debtor's Business.

ASTECH manufactured complex, safety critical, honeycomb panel products for use in aerospace, defense and other critical applications. The Debtor provided engine exhaust kits, fairing assemblies, panel assemblies, and lower flap assemblies.

### 2.2 History of the Business Operations of the Debtor.

In March 2022, the Debtor was formed and acquired the existing business from GKN Aerospace ("GKN"). Until the sale, the business had been operated as more of a division in the larger GKN conglomerate. Since 1947, the predecessor business and later ASTECH were the premier supplier of welded honeycomb metallic aero structures to the global aerospace and defense industry.

The Debtor has no secured debt and operated using cash on hand and receivables collected from its customers. Prior to the sale, the Debtor owned its operating machinery and equipment. The Debtor's manufacturing facility was leased pursuant to a Sublease Agreement with GKN.

As described in greater detail herein, the Debtor operated in a highly competitive market that has been negatively impacted by the COVID-19 pandemic, inflationary pressures throughout its supply chain, and unprofitable contracts with its primary customers. Despite the Debtor's best and diligent ongoing efforts to improve its operating structure and to negotiate commercially reasonable price increases from its customers to buttress its bottom-line, the Debtor was unable to do so, and elected to sell its assets as a going concern.

### 2.3 Filing of the Debtor's Chapter 11 Case.

On the Petition Date, the Debtor filed this voluntary case under chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V. The Debtor is authorized to continue to operate its business and manage its assets as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### 2.4 Legal Structure and Ownership.

The Debtor is a Delaware close corporation. Its sole owner is ASTECH Holdings, LLC.

### 2.5 Debtor's Assets and Liabilities.

As of the Petition Date, the Debtor's Schedules reflected that it had no secured debt, $4,651,782.28 in unsecured debt, and $23,603,838.15 in assets, at book value.

**2.6 <u>Events Leading to the Filing of the Bankruptcy Case</u>.**

After ASTECH acquired the business from GKN in March of 2022, ASTECH's new management team and Grobstein Teeple, the Debtor's financial advisor, performed a top to bottom analysis of the Debtor's operations and contractual relationships with its key customers. ASTECH suffered from, and continued to be faced with certain operational issues. Some of its issues were directly COVID related, others were more of a COVID over-hang, while still others appeared more endemic to ASTECH's operations. ASTECH's biggest issue was that the contracts with its key customers did not provide ASTECH as a stand alone entity (not benefitting from being a part of a larger conglomerate) sufficient profit margin to allow the business to operate long term and to invest in the business. The pricing of many of its key contracts had, historically, resulted in ASTECH incurring significant losses.

Before beginning this bankruptcy proceeding, ASTECH convened an in-person meeting with its largest customers (The Boeing Company, ITP Aero UK, Raytheon Technologies Corp. (Pratt & Whitney) and Spirit Aerospace, Inc., sometimes collectively referred to herein as the "Customers") on June 20, 2022, in Detroit. At that meeting ASTECH explained its fundamental issues to the Customers, and sought their assistance in working collaboratively to reach a mutually beneficial path forward. Options presented by ASTECH included working together to arrive at part pricing that would allow the business to be successful, working with the Customers to move their business to another supplier, and working cooperatively with them to find a new owner for the business. Additionally, ASTECH proposed that once industry-average EBTITDA margins were achieved, ASTECH would share additional cost savings that were implemented with the Customers, thereby reducing prices in the future. While a few of the customers subsequently expressed a modest willingness to engage with ASTECH, others did not. Despite ASTECH's requests for assistance, little progress was made with ASTECH's customers and ASTECH's financial condition was forecasted to continue to decline, all of which was conveyed to the Customers. The consequences of ASTECH's continued financial decline, coupled with the Customers' unwillingness to engage with ASTECH to try to reach a mutually beneficial outcome, resulted in ASTECH needing to seek relief through the filing of the petition commencing the Bankruptcy Case.

**2.7 <u>Events During the Bankruptcy Case.</u>**

**<u>Appointment of Subchapter V Trustee</u>**

On July 18, 2022, the Office of the United States Trustee appointed David M. Klauder as the subchapter V trustee. Mr. Klauder continues to serve in that capacity.

**<u>Initial Motions</u>**

Immediately after the Petition Date, the Debtor filed the following motions seeking relief critical to the uninterrupted continuation of the Debtor's operations and its ability to meet its ongoing obligations, most particularly including those owed to its employees:

- Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing the

Debtor to (A) Maintain its Bank Accounts and Pay Bank and Processor Charges and (B) Maintain Existing Business Forms; (II) Granting a Limited Waiver of the Requirements of Section 345(b) of the Bankruptcy Code, to the Extent Applicable; and (III) Granting Related Relief [D.I. 15]

- Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses, and (B) Continue Employee Benefits Programs and (II) Granting Related Relief [D.I. 16]

- Motion of Debtor for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Maintain its Insurance Policies and Programs and (B) Honor All Insurance Obligations, and (II) Granting Related Relief [D.I. 17]

- Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a) and 366 and Fed. R. Bankr. P. 6003 and 6004 for Entry of Interim and Final Orders (I) Approving Debtor's Proposed Form of Adequate Assurance of Payment to Utility Companies, (II) Establishing Procedures for Resolving Objections by Utility Companies, (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service, and (IV) Granting Related Relief [D.I. 18]

No objections were filed to any of the Initial Motions and final Orders approving the Initial Motions were entered on August 17, 2022.

**<u>Retention of Professionals</u>**

By an order dated August 17, 2022, the Court approved the Debtor's retention of Cozen O'Connor as counsel [D.I. 90].

By an order dated August 17, 2022, the Court approved the Debtor's retention of Grobstein Teeple, LLP as Financial Advisor for the Debtor [D.I. 91].

By an order dated August 17, 2022, the Court approved the Debtor's retention of Brooks, Wilkins, Sharkey & Turco, PLLC as Counsel for the Debtor [D.I. 96].

By an Order dated September 2, 2022, the Court approved the Debtor's retention of Cutsheet Express, LLC as Interim Management to the Debtor [D.I. 123].

By an order dated October 24, 2022, the Court approved the Debtor's retention of Hilco Valuation Services, LLC as Machinery and Equipment Appraiser [D.I. 173].

**<u>Critical Vendor Motion</u>**

On August 4, 2022, the Debtor filed its Motion of the Debtor for Entry of an Order (I) Authorizing Debtor to Pay Prepetition Claims of (A) Critical Vendors, (B) Foreign Vendors, and (C) 503(b)(9) Claimants, (II) Confirming Administrative Expense Priority Status for Outstanding

Prepetition Purchase Orders, and (III) Granting Related Relief [D.I. 60]. By an amended order dated August 19, 2022 [D.I. 104], the Debtor was authorized to pay Critical Vendor Claims, as described in the Critical Vendor Motion, in an amount not to exceed $2,500,000 in the aggregate. Pursuant to the Critical Vendor Order, the Debtor paid $2,475,000 to Creditors that the Debtor, in the sound exercise of its business judgment, deemed critical.

**2.8 Rejection of Executory Contracts Between the Debtor and The Boeing Company.**

At the commencement of this case, ASTECH was party to several prepetition executory contracts with The Boeing Company ("Boeing"). The Debtor's continued performance under these contracts resulted in ongoing and significant losses for the Debtor, which was reviewed with Boeing. Because the Debtor could not get relief from Boeing on its contract pricing, in the appropriate exercise of its business judgment, the Debtor sought to reject these contracts. On August 17, 2022, the Debtor filed its Motion to Reject its Executory Contracts with the Boeing Company (the "Boeing Rejection Motion") [D.I. 99].

On August 31, 2022, Boeing filed an Objection to the Boeing Rejection Motion [D.I. 115]. The Debtor filed its Reply on September 1, 2022, vigorously opposing the allegations raised by Boeing in its Objection [D.I. 118]. Within the following six days leading up to a hearing on the Rejection Motion, Boeing conducted written discovery and took the depositions of ASTECH's Executive Chairman David Richeson and financial advisor Joshua Teeple. At an evidentiary hearing on September 7, 2022, the Court granted the relief requested by the Debtor in the Boeing Rejection Motion, in full. On September 8, 2022, the Court entered an Order, among other relief, deeming the Debtor's contracts with Boeing rejected effective as of September 8, 2022 [D.I. 139]

2.9 **Boeing Litigation in Federal Court.**

After the Debtor rejected its unprofitable Boeing contracts, Boeing filed suit in the United States District Court for the Western District of North Carolina against the Debtor's insiders and management, namely, Ten Oaks Management, LLC, Andrew Lovrovich, David Richeson; Matthew Magan, and Michael Hahn (the "Boeing Litigation"). This litigation is pending.

2.10 **Esterhay Litigation.**

John ("Jack") Esterhay was the Chief Executive Officer of the Debtor for around two months, until he was terminated for failing to fulfill his duties and obligations at ASTECH. Esterhay initially filed suit against Ten Oaks Management, LLC, ASTECH Holdings, LLC, Michael Hahn, Andrew Lovrovich, David Richeson, and John Curtis Griner and Does 1 through 20, in California. Also, on September 12, 2023, Esterhay filed a $25,000,000 claim for wrongful termination and other claims in the Chapter 11 Case.

The litigation in California was dismissed on jurisdictional grounds. Esterhay then filed another suit against the same defendants in North Carolina. That litigation is pending and is being vigorously contested by the defendants there. Pursuant to a stipulation entered by the Bankruptcy

Court, the Debtor will be named as a nominal party in the Esterhay Litigation and Esterhay's recovery, if any, will be limited to insurance proceeds. He will have no claim against the Estate.

2.11. **Negotiations With Key Customers and Mediation**.

During this Chapter 11 Case, the Debtor continued to negotiate with its Customers concerning the possible restructuring of the Debtor as a going concern, supported by Customer price increases, a consensual wind-down of the Debtor if the Customers preferred to exit the business or a transaction with the customers in which they would acquire the business through an entity they developed. While the Debtor made a good faith attempt to negotiate a mutually satisfactory agreement with its key customers, ultimately no consensual agreement was reached.

In an effort to reach a consensual path forward with its key Customers, the Debtor proposed and the Customers agreed to mediate their various issues. On November 14, 2022, the court entered an Order Approving Mediation and Appointing Mediator [D.I. 190], appointing retired bankruptcy judge Kevin Gross as mediator. At the customers' request, the mediation was held in New York City on November 14-15, 2022. A consensual resolution was not reached during the mediation.

**2.12 Plan of Reorganization.**

As indicated, the Debtor worked with its key Customers to try to reach agreement on a Plan of Reorganization. With the Customers' support, the deadline for the Debtor to file its Plan was extended several times. When the customers determined that no further extensions would be helpful to them, the Debtor filed its Plan, on December 2, 2022.

**2.13 Boeing Interference with Lease.**

In November, 2022, the Debtor learned that its former customer, Boeing, had surreptitiously negotiated a lease of the Debtor's manufacturing facility – to start June 1, 2023. Boeing neither involved the Debtor in this, nor advised the Debtor that it had happened.

As a consequence of Boeing's actions, because it would have no facility in which it could continue to maintain its manufacturing operations, the Debtor was forced to pivot to a sale of its business as a going concern rather than a restructuring, as it originally intended.

**2.14 ASTECH Litigation Against Boeing.**

After the Debtor filed this Chapter 11 Case, it continued negotiations with the landlord of its manufacturing facility for a two-year extension of its lease – which was to expire May 31, 2023. In this regard, On September 1, 2022, the landlord provided the Debtor with a term sheet for such an extension. On September 8, 2022, as discussed above, the Bankruptcy Court approved the Debtor's rejection of its contracts with Boeing. Although the Debtor continued to reach out to the landlord to negotiate the lease extension, the landlord became silent and seemed hesitant to move forward with the negotiations it had begun. The Debtor subsequently learned – not from the landlord (and not from Boeing) – that Boeing had gone behind the Debtor's back and negotiated a lease for the facility beginning immediately after the Debtor's lease expired.

As a consequence of Boeing's extraordinary behavior, the Debtor sued Boeing on January 6, 2023. ASTECH alleges that Boeing tortiously interfered with its negotiations with the landlord, interfered with ASTECH's business, violated the Bankruptcy Code's automatic stay, violated the Bankruptcy Code's provision that the Debtor has the sole right to purpose a Plan under Subchapter V, and also requests that Boeing's claims be equitably subordinated (the "ASTECH Litigation").

Boeing has filed a motion to dismiss the ASTECH Litigation. That motion will be opposed by the Debtor.

**2.15 <u>The Sale Process.</u>**

Having been precluded from proposing a plan to restructure its business by Boeing's interference with the Debtor negotiating a new lease, on December 2, 2022, the Debtor filed its Chapter 11 Plan, outlining the process by which the Debtor's business could be sold.

The Debtor filed its Motion for Sale of Property Free and Clear of Liens on December 20, 2022 [D.I. 214]. The Order Approving the Sale was entered on February 6, 2023 [D.I. 318].

To assist the Debtor in selling its business, the Debtor engaged the investment banking firm of SC&H Group [D.I. 211], which engagement was approved by the Bankruptcy Court on January 26, 2023 [D.I. 292].

The Debtor worked closely with the Subchapter V Trustee and SC&H throughout the expedited sale process requested by the Debtor's customers. The Debtor provided all information to the Sale Data Room requested by SC&H, responded to additional information and data requests from interested parties, and facilitated multiple site visits – all during normal business hours. After Avem Partners ("Avem") was selected as the Stalking Horse (and ultimately the successful bidder), the Debtor worked extensively with the Avem team to negotiate the Asset Purchase Agreement and related agreements and to transition the Debtor's business operations and employees to Avem. The result, ultimately, was a relatively seamless ownership transition to Avem. In return, the Debtor received significant cash and non-cash consideration, including $3.5 million in cash, Avem's assumption of $2.5 million in post-petition operating liabilities and the assumption of all contractual obligations to the Debtor's largest customers. Additionally, all but a few of ASTECH's employees were offered employment by Avem.

**2.16 <u>Boeing Motion to Remove ASTECH as Debtor in Possession and to Expand Duties of Subchapter v Trustee.</u>**

On December 19, 2022, Boeing, moved to remove ASTECH as the Debtor in Possession and to commensurately expand the duties of the Subchapter V Trustee. [D.I. 212] (the "Boeing Trustee Motion"). The filing resulted in costly discovery and numerous time-consuming depositions which took place in Chicago, in California and remotely, rather than allowing the Debtor to quickly move this case forward to a sale, as proposed. The Debtor instead spent more than a month combatting Boeing's unwarranted and costly motion. The Boeing Trustee Motion was scheduled for a full evidentiary hearing on January 19, 2023. At the outset of the hearing, at

the Court's suggestion, Boeing and ASTECH agreed to an adjournment to see if an agreement could be reached as a path forward.

**2.17 <u>Resolution of Boeing Trustee Motion.</u>**

On January 20, 2023, after extended negotiations, ASTECH and Boeing reached an agreement in principle which resolved the Boeing Trustee Motion. That agreement, memorialized in a "Memorandum of Understanding", essentially provided that (a) ASTECH would resume production for Boeing, but at a profit; (b) Boeing would pay $400,000 for ASTECH's Key Employee Retention Plan; (c) Boeing would agree to a sublease of the manufacturing facility to a purchaser of ASTECH's assets, provided such purchaser could meet certain financial requirements; and (d) the Subchapter V Trustee would be vested with ultimate decision making authority regarding the sale of ASTECH's business.

**2.18 <u>Sale Negotiated, Approved and Closed.</u>**

After extensive negotiations between ASTECH and Avem, and upon the conclusion of tangential agreements among certain of ASTECH's customers concerning the lease of the manufacturing facility, an agreement was reached between ASTECH and Avem for Avem to purchase the business as a going concern. The Court entered the Order Approving the Sale on May 19, 2023 and ASTECH closed the sale that evening.

As a consequence of the sale to Avem: (a) ASTECH received $3.5 million in cash, and Avem assumed $2.5 million of post petition trade and employee obligations; (b) Avem assumed the existing contracts of ASTECH's largest customers, thereby ensuring continuity of supply to them; and (c) almost every employee of ASTECH was transitioned to Avem and kept their jobs and equivalent benefits.

**2.19 <u>Facility Repair Claim.</u>**

During the Chapter 11 Case, ASTECH assumed its sublease with GKN. The sublease contained on expansive requirement that the Debtor reimburse GKN (who would reimburse the ultimate landlord) for all repair expenses of the manufacturing facility, regardless of when those expenses arose.

In March, 2023, the landlord advised GKN (and GKN advised the Debtor) of the landlord's view that almost $1,000,000 of repairs were due at the facility. After extensive discussions with the landlord, and discussions with the Debtor, GKN and the landlord agreed to compromise the landlord's claim for $750,000. ASTECH has agreed to pay $640,000 with respect to this claim – which is entitled to administrative priority. This payment is net of the $109,000 security deposit being held by GKN.

**2.20 <u>Post Sale Activities.</u>**

Following the sale to Avem, the Debtor has worked to resolve Esterhay's claims against the estate, worked with GKN to resolve the facility repair claim, reviewed Ten Oaks Management's entitlement to management fees, and drafted and filed this Amended Plan.

**2.21 <u>Current Cash on Hand and Estimated Claims.</u>**

(a) Current Cash on Hand (8/4/23) $4,515,200 (projected)

(b) Projected Administrative Claims:

(1) GKN facility repair liability: $640,400 (to be paid per court order)
(2) Unpaid Professional fees: $550,000
(3) Management fees: $334,379.11[3]

(c) Priority Claims:
(1) Employees: $ None
(2) Taxes: $ None

(d) Undisputed Unsecured Claims:

(1) Pre-petition trade payables: $233,501
(2) GKN Note: $1,232,302
(3) The Boeing Company $-0-[4]

(e) Unsecured Claims to Which Objections Have Been Filed:

(1) Indemnification claims (arising From Boeing litigation) $unknown

(f) Disputed Unsecured Claims:

(1) John Esterhay $-0-[5]

(g) Unsecured Claims Satisfied Through Assumption Process
(1) Pratt & Whitney $-0- [6]
(2) ITP Aero UK Ltd $-0- [6]
(3) Spirit Aerosystems, Inc. $-0- [6]

[3] This represents management fees due Ten Oaks Management for the period between July 16, 2022 and June 30, 2023. The allowance and payment of these fees is subject to a pending motion.
[4] As set forth in The Boeing Company's Claim Nos. 16 and 20 filed in the Case. The Debtor expressly reserves its right to object to any amended or additional claims filed by The Boeing Company.
[5] Mr. Esterhay has agreed to waive any claims against the Estate and proceed only against insurance, to the extent available.
[6] All obligations under these claims were assumed by Avem in the sale.

## ARTICLE III

## THE PLAN

This Plan describes how the claims of ASTECH's Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expense Claims are not classified.

As required by the Bankruptcy Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired, as those terms are defined in the Bankruptcy Code. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the Allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 3.1 <u>Unclassified Claims.</u>

As indicated above, certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. For example, Administrative Expense Claims are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. As such, the Plan does not place the following Claims in any class:

A. Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words," allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is Allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. Creditors who have provided goods and services following the filing of the Chapter 11 Case are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors. Most of the

Debtor's unpaid Post-Petition ordinary course liabilities were assumed by Avem in the sale; the remaining small amount has been paid by the Debtor in the ordinary course of business.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the Allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 Case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The Debtor's estimated unpaid Administrative Expenses at confirmation, depending on the timing of that, include:

| **Expense**: | **Estimated**: |
|---|---|
| Professional Fees and Expenses (Legal) | 500,000 (est.) |
| Professional Fees and Expenses (Trustee) | 50,000 (est.) |
| Management Fee (Ten Oaks Management) | $334,379.11 |

B. Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by section 507(a)(8) of the Bankruptcy Code. Unless the holder of such a section 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief. All Priority Tax Claims have been paid as they have become due. Any accrued balances as of the Effective Date will be paid in full.

There are no Priority Tax Claims outstanding.

**3.2 <u>Classes of Claims and Equity Interests.</u>**

The following are the classes of claims in the Plan, and the proposed treatment that they will receive under the Plan:

A. Classes of General Unsecured Claims.

General unsecured Claims are not secured by property of the estate and are not entitled to priority under section 507(a) of the Bankruptcy Code.

(i) Class #1. Undisputed Unsecured Claims.

The following chart identifies the Plan's proposed treatment of Class1 claims, which

include general unsecured Claims against the Debtor:

| Class #1 | Description | Impairment | Treatment |
|---|---|---|---|
| 1. $1,450,815 | Pre-petition, Undisputed General Unsecured Claims. These claims are shown on Exhibit "B." | Possibly impaired | Will be paid pro-rata from Available Cash following the Allowance or Disallowance of all Disputed Claims. |
| 2. The Boeing Company Claim No. 16 | Filed as $-0-. | N/A | N/A |
| 3. The Boeing Company Claim No. 20 | Filed as $-0-. | N/A | N/A |

(ii) Class #2. Unsecured Indemnification Claims To Which Objections Have Been Filed.

Pursuant to various corporate documents and agreements of the Debtor, the Debtor may owe indemnification obligations to all of the Defendants in the Boeing Litigation and the Esterhay Litigation for, among other things, all costs incurred to defend those actions, and any liabilities for which the indemnified parties ultimately may be found to be responsible. As a consequence, the Defendants in the Boeing Litigation and Esterhay Litigation have filed claims for indemnification (see claims 22-1 to 28-1). To the extent Boeing and/or Esterhay (a) cause the Defendants to incur defense costs and/or (b) may recover from those Defendants, these indemnification claimants will have resulting claims in this bankruptcy. Boeing has filed objections to each of these claims, which objections are pending.

The following chart identifies the Plan's purposed treatment of Class 2 claims, which include certain claims for indemnification arising from the Boeing Litigation and the Esterhay Litigation.

| Class #2 | Amount | Impairment | Treatment |
|---|---|---|---|
| 1. Ten Oaks Management, LLC Claim No. 22 | Unknown, in excess of $1,000,000 | Possibly Impaired | If Allowed, will be paid pro-rata from Available Cash following the Allowance or Disallowance of all Disputed Claims. |
| 2. ASTECH Holdings, LLC Claim No. 23 | Unknown, in excess of $1,000,000 | Possibly Impaired | If Allowed, will be paid pro-rata from Available Cash following the Allowance or |

| | | | |
|---|---|---|---|
| | | | Disallowance of all Disputed Claims. |
| 3. John Curtis Guiner Claim No. 24 | Unknown, in excess of $1,000,000 | Possibly Impaired | If Allowed, will be paid pro-rata from Available Cash following the Allowance or Disallowance of all Disputed Claims. |
| 4. Matthew Magan Claim No. 25 | Unknown, in excess of $1,000,000 | Possibly Impaired | If Allowed, will be paid pro-rata from Available Cash following the Allowance or Disallowance of all Disputed Claims. |
| 5. Michael Hahn Claim No. 26 | Unknown, in excess of $1,000,000 | Possibly Impaired | If Allowed, will be paid pro-rata from Available Cash following the Allowance or Disallowance of all Disputed Claims. |
| 6. Andrew P. Lorovich Claim No. 27 | Unknown, in excess of $1,000,000 | Possibly Impaired | If Allowed, will be paid pro-rata from Available Cash following the Allowance or Disallowance of all Disputed Claims. |
| 7. David R. Richeson Claim No. 28 | Unknown, in excess of $1,000,000 | Possibly Impaired | If Allowed, will be paid pro-rata from Available Cash following the Allowance or Disallowance of all Disputed Claims. |

(iii) Class #3. Disputed Unsecured Claims.

The following chart identifies the Plan's proposed treatment of disputed Class 3 claims.

| Class #3 | Description | Impairment | Treatment |
|---|---|---|---|
| 1. John Esterhay | $-0- | N/A | N/A |

(iv) Class #4. Claims Satisfied Through Sale/Current Assumption Process.

The following chart identifies the Plan's proposed treatment of Class 4 claims, which include the following:

| Class #4 | Description | Impairment | Treatment |
|---|---|---|---|
| 1. ITP Aero UK Ltd. Claim No. 18-1 | $39,000,000 | | No distribution. All obligations to this party were assumed and assigned to purchaser. |
| 2. Raytheon Technologies Corp. (Pratt & Whitney) Claim No. 17-1 | Contingent and unliquidated | | No distribution. All obligations to this party were assumed and assigned to purchaser. |
| 3. Spirit Aerospace, Inc. Claim 9-1 | Contingent and unliquidated | | No distribution. All obligations to this party were assumed and assigned to purchaser. |

(v) Class #5. Classes of Equity Holders

Equity Interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. Here, the Debtor's equity interest are held by Astech Holdings, LLC.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class #5 | Description | Impairment | Treatment |
|---|---|---|---|
| 1. ASTECH Holdings LLC | Equity Interest Holders | Possibly Impaired | Paid, to the extent of Available Cash remaining after payment of Classes 1 – 3. |

**3.3 <u>Claims Objections and Reserve Account.</u>**

The Debtor may object to the amount or validity of any Claim within the later of 30 days of the Effective Date or 30 days after the filing of the applicable claim, by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of such Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. The Debtor will hold all funds for distribution in a reserve

account pending the resolution of all claims and claims objections. Article IX describes the procedure for resolving claims.

**3.4 Treatment of Executory Contracts and Unexpired Leases.**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor assumed and assigned certain executory contracts to Avem. Any executory contracts not assumed in the sale will be deemed rejected on the Effective Date.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract is the date that is thirty (30) days after the Effective Date.** Any Claim based on the rejection of an Executory Contract will be barred if the Proof of Claim is not timely filed, unless the Bankruptcy Court orders otherwise. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which Proofs of Claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan. The Debtor shall have the right to object to any such rejection damage claims filed in accordance with this section.

At present, the Debtor is unable to estimate the rejection damage claims.

**3.5 Payments.**

If the Plan is confirmed under Bankruptcy Code section 1191(a), payments to Creditors provided for in the Plan will be made by the Debtor pursuant to Bankruptcy Code section 1194(a).

If the Plan is confirmed under section Bankruptcy Code section 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the trustee shall make all Plan payments to Creditors under the Plan.

**3.6 Reservation of Rights / No Waiver with Respect to Claims.**

Moreover, nothing contained in this Plan is intended or shall be construed as (a) an admission as to the validity, priority, or amount of any Claim, including any Rejection Claim against the Debtor; (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any Claim against the Debtor or to otherwise dispute any particular Claim on any grounds; (c) a waiver of any Claim or cause of action which may exist against any creditor holder; (d) a promise or requirement to pay any particular claim; or (e) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law.

**3.7 Tax Consequences of the Plan.**

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.**

## ARTICLE IV

## FEASIBILITY OF THE PLAN

### 4.1 Ability to Initially Fund Plan.

The Debtor will have cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

### 4.2 Ability to Make Future Plan Payments And Operate Without Further Reorganization.

Bankruptcy Code Section §1191 requires that the Plan must satisfy the requirements of 11 U.S.C. § 1129(a)(11), which requires that a Debtor demonstrate that the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the Plan. Here, the Plan does not contemplate that Debtor will continue in business. Rather, the Plan proposes how the Debtor's assets will be distributed to the holders of Allowed Claims. In short, liquidation of Debtor is already proposed in the Plan.

## ARTICLE V

## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.

The Debtor's most recent liquidation analysis is attached as Exhibit "A."

If no plan can be confirmed, this case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed to liquidate the Debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.

The Debtor believes that if the Case was converted to one under Chapter 7 of the Bankruptcy Code, it would result in less Available Cash being distributed to its Unsecured Creditors than the amount that will be available for the same Unsecured Creditors under the Plan. This is so because of (a) the learning curve for any Chapter 7 trustee (even if it is the current Subchapter V Trustee) to bring itself fully up to speed with the information necessary to administer and close the bankruptcy estate and the additional costs associated therewith, (b) the same learning curve for the Chapter 7 trustee's new legal professionals (again, even if his own firm) and accounting professionals and (c) the statutory commission payable to the Chapter 7 trustee (. The Debtor believes that in the aggregate, such additional costs could exceed $150,000.

## ARTICLE VI

## NO DISCHARGE OF DEBTOR.

In accordance with Bankruptcy Code section 1141(d)(3), the Debtor will not receive any discharge of debt in this Chapter 11 Case.

## ARTICLE VII

## GENERAL PROVISIONS.

### 7.1 Exculpation and Limitation of Liability.

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any prepetition or post-petition act or omission in connection with, relating to, or arising out of the Debtor, the Chapter 11 Case, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan; *provided, however*, that nothing in this section shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order; and *provided, further*, that the exculpation provisions of this section shall not apply to acts or omissions constituting actual fraud or willful misconduct by such Exculpated Party as determined by a Final Order. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute actual fraud or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the Exculpated Parties shall be entitled to rely on the written advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Case, the Plan, and administration thereof. The Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by this section of the Plan.

### 7.2 Releases and Related Matters.

(c) On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed to have forever released, waived, and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the conduct of the Debtor's business, the Chapter 11 Case, or the Plan, except for acts or omissions that are

determined in a Final Order to have constituted actual fraud or willful misconduct; *provided, however*, that nothing in this section shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order.

(d) Entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this section 6.2; and (ii) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, in the best interests of the Debtor, the Estate, and any Holders of Claims that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.

**7.3 Title to Assets.**

If a plan is confirmed under Bankruptcy Code section 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors and equity security holders of the Debtor.

**7.4 Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**7.5 Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**7.6 Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under Bankruptcy Code section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**7.7 Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**7.8 Modification of the Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to Bankruptcy Code section 1193(a). However, the Bankruptcy Court may require additional items, including re-voting on the Plan.

If the Plan is confirmed under Bankruptcy Code section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Bankruptcy Code section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years as fixed by the court and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**7.9 Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE VIII

## IMPLEMENTATION OF THE PLAN

**8.1 Implementation of the Plan.** The Plan will be implemented by various acts and transactions as set forth in the Plan and the making of Distributions by the Debtor in accordance with the Plan.

**8.2 Vesting of Assets in the Debtor**. As of the Effective Date, all assets of the Debtor shall vest in the Debtor, free and clear of all claims, liens and encumbrances of any type, with all assets being subject to the terms and conditions of the Plan and Confirmation Order.

**8.3 Continuing Existence.** From and after the Effective Date the Debtor shall continue in existence as a reorganized debtor in accordance with the applicable laws of the jurisdiction in which it is organized and incorporated for all purposes including, among other things:

(a) holding and investing cash and withdrawing and making Distributions of cash to holders of Allowed Claims and paying taxes and other obligations owed by the Debtor in accordance with the Plan;

(b) engaging attorneys, consultants, agents, employees, and any other professional persons to assist the Debtor with respect to the Debtor's obligations under the Plan;

(c) executing and delivering all documents and taking all actions necessary to consummate the Plan;

(d) coordinating the storage and maintenance of the Debtor's books and records;

(e) overseeing compliance with the Debtor's accounting, finance, and reporting obligations;

(f) preparing financial statements and United States Bankruptcy post-confirmation quarterly reports, until such time as a final decree has been entered;

(g) overseeing the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, as required;

(h) paying the fees and expenses of the attorneys, consultants, agents, employees, and other professional persons engaged by the Debtor and to pay all other expenses of the Debtor, subject to the terms of the Plan;

(i) objecting to, compromising, and settling Claims;

(j) acting on behalf of the Debtor in all adversary proceedings and contested matters (including, without limitation, any Causes of Action), then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commended elsewhere, and to settle, retain, enforce, dispute, or adjust any claim and otherwise pursue actions involving the Debtor that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in the Plan;

(k) implementing and/or enforcing all provisions of the Plan; and

(l) such other powers as may be vested in or assumed by the Debtor pursuant to the Plan or other Order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of the Plan.

## ARTICLE IX

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS AND INTERESTS

**9.1. Allowance of Claims and Interests.**

After the Effective Date, the Debtor shall have and retain any and all rights and defenses it Debtor had with respect to any Claim immediately before the Effective Date.

**9.2. Claims Administration Responsibilities.**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Debtor shall have the sole authority: (i) to file, withdraw or litigate to judgment objections to (a) Claims and (b) to settle or compromise any Claim, that is a Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court and (ii) to administer and adjust its claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

**9.3. Estimation of Claims.**

Before or after the Effective Date, the Debtor may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code section 502(c) for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim including during the litigation of any objection to any Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtor Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim .

**9.4. Adjustment to Claims Without Objection.**

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), or any Claim whose treatment has been deemed modified by this Plan, or any Claim whose treatment has been agreed to by the Holder of such Claim , may be adjusted or expunged by the Debtor, without a Claims objection or any other notice or motion having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**9.5. Time to File Objections to Claims.**

Any objection to Claims against the Debtor shall be Filed on or before the dates provided herein.

**9.6. Disallowance of Claims.**

Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after any claims bar dates either established by the court order or as provided herein, shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court, and holders of such Claims may not receive any

distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

**9.7. Amendments to Claims.**

On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Debtor, unless the proposed amended Claim is for a lesser amount than the original Claim. Absent such authorization, any new or amended Claim filed shall be deemed Disallowed in full and expunged without any further action.

**9.8. Alternative Claim Resolution Procedures.**

The Debtor may file, as part of the Plan Supplement, alternative dispute resolution-based claim resolution procedures applicable to certain contingent, unliquidated or disputed claims (which are disputed on grounds other than the amount of the Claim), which shall become part of the Plan and effective on the Effective Date.

**9.9. Tax Implications for Recipients of Distributions.**

Notwithstanding any other provision of the Plan, each entity receiving a distribution of Cash or other consideration pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any Governmental Unit on account of the distribution, including income, withholding and other tax obligations.

**9.10. No Levy.**

Except as otherwise provided herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each holder of an Allowed Claim Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan.

**9.11. Offer of Judgment.**

The Debtor is authorized to serve upon a holder of a Claim an offer to allow judgment to be taken on account of such Claim, and pursuant to Bankruptcy Rule 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the holder of a Claim must pay the costs of the Debtor, after making of such offer, the Debtor is entitled to setoff such amounts against the amount of any distribution to be paid to such holder without any further notice or action, order or approval of the Bankruptcy Court.

**9.12. No Distributions Pending Allowance.**

If an objection to a Claim or portion thereof is filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

**9.13. Distributions After Allowance.**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or becomes a Final Order, the Debtor shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.

## ARTICLE X
## REQUEST FOR CONFIRMATION AND RECOMMENDATION

**10.1 Request for Confirmation.**

The Debtor requests confirmation of the Plan in accordance with Bankruptcy Code section 1129.

**10.2 Recommendation.**

The Debtor believes that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support confirmation of the Plan.

Respectfully submitted,

**AEP LEGACY, INC.**

By: */s/ David Richeson*
Name: David Richeson
Title: Executive Chairman

**Exhibits**
"A" Liquidation Analysis
"B" Class 1 Claims
"C" Frequently Asked Questions