**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| AEP Legacy, Inc.,[1] | ) | Case No. 22-10635 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**SECOND AMENDED SUBCHAPTER V PLAN OF LIQUIDATION**
**OF AEP LEGACY, INC. f/k/a ASTECH ENGINEERED PRODUCTS, INC.**

You are encouraged to carefully review the full text of this document, including all exhibits, before deciding how to vote on the Plan. To assist you in your review, please note that a list of frequently asked questions appears at the end of this document.

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

**COZEN O'CONNOR**
Marla S Benedek (DE Bar No. 6638)
Simon E. Fraser (DE Bar No. 5335)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2000
E-mail: mbenedek@cozen.com

Brian L. Shaw (admitted pro hac vice)
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 474-1644
E-mail: bshaw@cozen.com

**BROOKS WILKINS SHARKEY & TURCO**
Matthew E. Wilkins (admitted pro hac vice)
Paula A. Hall (admitted pro hac vice)
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Telephone: (248) 971-1800
E-mail: wilkins@bwst-law.com
E-mail: hall@bwst-law.com
Counsel to the Debtor and Debtor-in-Possession

[1]The Debtor, AEP Legacy, Inc., was formerly known as ASTECH Engineered Products, Inc., and the last four digits of the Debtor's federal tax identification number are 7721. The Debtor's address is AEP Legacy, Inc. 850 New Burton Rd., Suite 201, Dover, DE 19904.

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

Having closed the Sale of substantially all of its assets, AEP Legacy, Inc, ("ASTECH" or the "Debtor") will fund this plan (the "Plan") through Available Cash remaining in its Estate.

Estimated recoveries under the Plan are:

| Description | Proposed Treatment |
|---|---|
| Administrative Claims – Unclassified | Paid in full unless otherwise agreed to by the Debtor and Claimant. |
| Priority Tax Claims – Unclassified | N/A |
| Secured Claims – Unclassified | N/A |
| Priority Unsecured Claims | N/A |
| General Unsecured Claims Unaffected by Plan Settlement (Class 1A) | Paid in full |
| General Unsecured Claims Affected by Plan Settlement (Class 1B) | Paid as agreed pursuant to the terms of the Plan Settlement |
| General Unsecured Indemnification Claims Affected by Plan Settlement (Class 1A) | Treated pursuant to the terms of the Plan Settlement |
| Equity Interests | Holder retains its interests. |

## ARTICLE I
## DEFINITIONS

For purposes of this Plan, the following terms shall have the following meanings. A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.

**1.1 Administrative Expense Claim:** "Administrative Expense Claim" shall mean a Claim that is Allowed under 11 U.S.C. § 503(b) and that is entitled to priority under 11 U.S.C. § 507(a)(2), including, without limitation:

(a) fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court,

(b) fees and expenses of the Subchapter V Trustee and any mediator(s) appointed in this case, Allowed pursuant to an Order of the Bankruptcy Court, and

(c) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

**1.2** **<u>Administrative Claimant</u>:** Any person entitled to payment of an Administrative Expense Claim.

**1.3** **<u>Administrative Claims Bar Date</u>:** The last date by which any Person must File a request for payment of an Administrative Expense Claim, which date shall be the first Business Day that is thirty (30) calendar days after the Effective Date, or, alternatively, such earlier date as is set by the Bankruptcy Court. For the avoidance of doubt, post-petition statutory tax claims shall not be subject to any Administrative Claims Bar Date. For the further avoidance of doubt, the Claims Bar Date for Section 503(b)(9) Claims was the General Claims Bar Date.

**1.4** **<u>Administrative Tax Claim</u>:** Any tax incurred pursuant to section 503(b)(1)(B) of the Bankruptcy Code.

**1.5** **<u>Allowed, Allowed Claim, or Allowed Administrative Claim</u>:** Allowed means, with respect to any Claim, or any portion thereof, except as otherwise provided herein: (a) a Claim that is evidenced by a Filed Proof of Claim or a request for payment of Administrative Expense Claim Filed by the Administrative Claims Bar Date (or a Claim for which a Proof of Claim or request for payment of Administrative Expense Claim expressly is not or shall not be required to be filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim that is listed in the Schedules and Statements as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim that is Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to allowance or priority or a request for estimation thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been allowed by a Final Order or the objection has been resolved via the Plan Settlement. For the avoidance of doubt, those claims listed on Exhibit "B" to the Plan shall be deemed Allowed Claims. Unless otherwise specified in the Plan or by a Final Order of the Bankruptcy Court allowing such Claim, an "Allowed Administrative Claim" or "Allowed Claim" shall not include: (1) any interest on the amount of such Claim or late fees accruing from and after the Petition Date; (2) any punitive or exemplary damages; (3) any fine, penalty or forfeiture; or (4) any attorney's fees and expenses. Moreover, any portion of a Claim or Interest that is satisfied, released, or waived during the Chapter 11 Case is not an Allowed Claim. For the avoidance of doubt, any and all Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

**1.6** **<u>ASTECH</u>:** AEP Legacy, Inc., f/k/a ASTECH Engineered Products, Inc., a Delaware corporation.

**1.7** **<u>Available Cash</u>:** Cash remaining in the Estate as of the Effective Date of the Plan, projected at [$3,030.535.71].

**1.8 <u>Avoidance Actions</u>:** Any and all causes of action, claims, remedies, or rights that have been or may be brought by or on behalf of the Debtor or the Estate under Bankruptcy Code sections 542, 544, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.9 <u>Ballot</u>:** The ballot form distributed to each Holder of a Claim entitled to vote to accept or reject the Plan.

**1.10 <u>Bankruptcy Code</u>:** Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as the same may be amended from time to time to the extent applicable to the Chapter 11 Case.

**1.11 <u>Bankruptcy Court</u>:** The United States Bankruptcy Court for the District of Delaware, or in the event such court ceases to exercise jurisdiction over the Chapter 11 Case, such other court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the District of Delaware.

**1.12 <u>Bankruptcy Rules</u>:** The Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Case.

**1.13 <u>Business Day</u>:** Any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

**1.14 <u>Cash</u>:** Cash and cash equivalents, including bank deposits, wire transfers, checks representing good funds, and legal tender of the United States of America or instrumentalities thereof.

**1.15 <u>Causes of Action</u>:** Any and all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, rights of setoff, third-party claims, subordination claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims, damages, or judgments whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise. For avoidance of doubt, Causes of Action do not include Avoidance Actions.

**1.16 <u>Chapter 11 Case</u>:** The voluntary chapter 11 bankruptcy case commenced by the Debtor, under the case caption <u>In re AEP Legacy, Inc.,</u> Case No. 22-10635 (BLS), in the United States Bankruptcy Court for the District of Delaware.

**1.17 <u>Claim</u>:** Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such

right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**1.18 Claimant:** Any Holder of an Allowed Claim.

**1.19 Claim Objection Deadline:** Subject to extension, the date that is the first Business Day that is at least 30 calendar days after the Effective Date. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

**1.20 Claims Bar Date:** As applicable, the Administrative Claims Bar Date, the General Claims Bar Date, the Governmental Claims Bar Date, any Supplemental Bar Date, or the Rejection Claims Bar Date.

**1.21 Class:** A category of Claims or Equity Interests designated pursuant to the Plan, or any subclass thereof.

**1.22 Confirmation:** Entry by the Bankruptcy Court of the Confirmation Order.

**1.23 Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order.

**1.24 Confirmation Hearing:** The hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan as required by Bankruptcy Code section 1128(a), as such hearing may be continued from time to time.

**1.25 Confirmation Order:** The order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

**1.26 Contingent Claim:** Any Claim that is Scheduled or Filed as contingent.

**1.27 Corporate Action:** Any action, approval, authorization, decision, or other act of any kind that would be necessary on the part of any Person for any corporation, limited liability company, or other Person to in turn act.

**1.28 Cure Payment:** The payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) that is necessary to cure any and all defaults under an executory contract or unexpired lease so that such contract or lease may be assumed, or assumed and assigned, pursuant to Bankruptcy Code section 1123(b)(2).

**1.29 Debtor:** AEP Legacy, Inc. f/k/a ASTECH Engineered Products, Inc., a Delaware Close Corporation.

**1.30 Defined Term:** Any capitalized term that is defined in this Article I of the Plan.

**1.31 Disallowed; Disallowed Claim:** Any Claim that (a) is not Scheduled, or is listed thereon as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder failed to File a proof of claim, but excluding any Claim that is expressly Allowed by a Final Order or under the Plan; or (b) has been Disallowed pursuant to an order of the Bankruptcy Court.

**1.32** **Disputed Claim**: Any Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, including, without limitation, Claims that (a) have not been listed on the Schedules and Statements or have been listed on the Schedules and Statements as unliquidated, disputed, contingent, and/or at zero dollars, if such Claim is not the subject of a Filed Proof of Claim; (b) are the subject of an objection or request for estimation Filed by the Debtor or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved (including by the Plan Settlement), or overruled by a Final Order; or (c) are disputed in whole or in part under the Plan and, as such, will have no right to receive any Distributions under the Plan unless and until such Claims are affirmatively Allowed by a Final Order.

**1.33** **Distribution:** Any initial or subsequent issuance, payment, or transfer of consideration made under the Plan.

**1.34** **Distribution Date:** Any date on which a Distribution is made.

**1.35** **Distribution Record Date:** The record date for determining entitlement of Claimants to receive Distributions under the Plan, which date shall be the Effective Date.

**1.36** **Effective Date:** The date that is the first business day on which the Confirmation Order has been entered by the Bankruptcy Court and has become a Final Order that has not been stayed, modified, or vacated on appeal and is no longer appealable.

**1.37** **Equity Interests:** All previously issued and outstanding common stock, preferred stock, membership interests, or other ownership interests in the Debtor outstanding immediately prior to the Effective Date, including restricted stock, treasury stock, and all options, warrants, calls, rights, puts, awards, commitments, appreciation rights, or any other agreements of any character to convert, exchange, exercise for, or otherwise receive any such common stock, preferred stock, membership interests, or other ownership interests.

**1.38** **Estate Assets:** Collectively, (a) any and all right, title, and interest of the Debtor and the Estate in and to property of whatever type or nature, including its books and records and all Avoidance Actions and Causes of Action, as of the Effective Date; and (b) any assets contributed to or recovered by the Debtor on or after the Effective Date.

**1.39** **Estate:** The chapter 11 estate of the Debtor created by Bankruptcy Code section 541(a).

**1.40** **Exculpated Parties:** Collectively, and in each case in their capacity as such during the Chapter 11 Case, the Debtor, its officers, directors and the professionals engaged and retained by the Estate.

**1.41** **File, Filed, or Filing:** Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Case, except with respect to proofs of claim that must be filed on the Claims Register, in which case "File" or "Filed" means duly and properly filed and reflected on the Claims Register maintained by the Bankruptcy Court.

**1.42** **Final Decree:** An order entered pursuant to Bankruptcy Code section 350, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Chapter 11 Case of the Debtor.

**1.43** **Final Order:** An order or judgment of the Bankruptcy Court entered on the docket of the Chapter 11 Case:

(a) that has not been reversed, rescinded, stayed, modified, or amended; that is in full force and effect; and

(b) with respect to which (i) the time to appeal or to seek review, rehearing, remand, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

For the avoidance of doubt, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Code section 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 or 9024 may be or has been filed with respect to such order.

**1.44** **General Claims Bar Date**: September 13, 2022

**1.45** **General Unsecured Claim:** Any unsecured, non-priority Claim asserted against the Debtor or the Estate, but excluding (a) any Claims arising from any executory contracts or unexpired leases that are assumed during the Chapter 11 Case and (b) any vendor or other Claims satisfied in the ordinary course of business, as critical vendor Claims, or pursuant to any other order of the Bankruptcy Court.

**1.46** **Governmental Claims Bar Date**: January 11, 2023.

**1.47** **Holder:** The Person that is the owner of record of a Claim or Equity Interest, as applicable.

**1.48** **Impaired:** Any Class of Claims or Equity Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**1.49** **Lien:** Any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**1.50** **Local Rules:** The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

**1.51** **Person:** Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated

organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.52 Petition Date**: July 15, 2022.

**1.53 Plan:** This Second Amended Subchapter V Plan of AEP Legacy, Inc. and any and all exhibits thereto, as the same may be amended, modified, or supplemented in the Debtor's reasonable discretion.

**1.54 Plan Settlement**: the negotiated resolution entered into by the Debtor, The Boeing Company, GKN Aerospace Chem-Tronics, Inc., Ten Oaks Management, LLC, John Curtis Griner, Matthew Magan, Michael Hahn, Andrew Lovrovich, David Richeson, and AEP Legacy Holdings, LLC, through facilitation taking place on March 11, 2024, as described in further detail in Section 2.21 below.

**1.55 Priority Claim:** A Claim that is entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Expense Claim and a Priority Tax Claim.

**1.56 Priority Tax Claim:** A Claim that is entitled to priority under Bankruptcy Code section 507(a)(8).

**1.57 Professional:** Any professional employed in the Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328, 1103, or 1104 or any professional or other Person (in each case, other than an Ordinary Course Professional) seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Bankruptcy Code sections 503(b)(3) or 503(b)(4).

**1.58 Professional Fee Claim:** A Claim of a Professional for compensation or reimbursement of costs and expenses relating to services provided during the period from the Petition Date through and including the Effective Date.

**1.59 Rejection Claims Bar Date**: the deadline for filing a proof of claim based on a claim arising from the rejection of an executory contract by operation of this Plan, which is the date that is thirty (30) days after the Effective Date.

**1.60 Related Parties:** With respect to any Person or Entity, such Person's or Entity's direct and indirect current and former affiliates, subsidiaries, shareholders, partners (including general partners and limited partners), investors, managing members, members, officers, directors, principals, employees, managers, controlling persons, agents, attorneys, financial advisors, real estate advisors, investment bankers, Professionals, advisors, and representatives, each in their capacity as such.

**1.61 Sale**: the sale of substantially all of the assets of the Debtor to Astech Holdco, LLC on May 19, 2023, which was approved by the Court by the Order (A) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Authorizing and Approving the Form of Asset Purchase Agreement with Astech Holdco, LLC; (C) Approving the Assumption and Assignment of Certain Executory Contracts and Leases; and (D) Granting Related Relief [D.I. 455], entered on May 19, 2023.

**1.62 Scheduled:** Set forth in the Schedules.

**1.63 Schedules:** The Schedules of Assets and Liabilities Filed by the Debtor on July 29, 2022 [D.I. 55, 56 and 59], as amended on August 15, 2022 [D.I. 75] and August 25, 2022 [D.I. 109], and as may be amended from time to time in accordance with Bankruptcy Rule 1009.

**1.64 Section 503(b)(9) Claim:** A Claim arising under Bankruptcy Code section 503(b)(9) for the value of any goods received by the Debtor within twenty (20) calendar days before the Petition Date and that were sold to the Debtor in the ordinary course of their business.

**1.65 Secured Claim:** A Claim that is: (a) secured by a valid and perfected Lien in collateral, which is enforceable pursuant to applicable law (i) as set forth in the Plan, (ii) as agreed to by the Holder of such Claim and the Debtor, or (iii) as determined by a Final Order; or (b) subject to a valid right of setoff under Bankruptcy Code section 553, in each case, as determined pursuant to Bankruptcy Code section 506(a).

**1.66 Securities Act:** The Securities Act of 1933, as amended.

**1.67 Subchapter V Trustee:** David M. Klauder, who is the trustee appointed by the U.S. Trustee under Bankruptcy Code section 1183.

**1.68 Unimpaired:** Any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.69 Unliquidated Claim:** Any Claim that is Scheduled as unliquidated or that was Filed in an unliquidated amount.

**1.70 U.S. Trustee:** Andrew Vara, the United States Trustee for Region 3.

**1.71 Voting Deadline:** The date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the Disclosure Statement Order.

## ARTICLE II
## HISTORY OF THE DEBTOR'S BUSINESS OPERATIONS

### 2.1 Nature of the Debtor's Business.

The Debtor manufactured complex, safety critical, honeycomb panel products for use in aerospace, defense and other critical applications. The Debtor provided engine exhaust kits, fairing assemblies, panel assemblies, and lower flap assemblies.

### 2.2 History of the Business Operations of the Debtor.

In March 2022, the Debtor was formed and acquired the existing business from GKN Aerospace ("GKN"). Until then, the business had been operated as more of a division in the larger GKN conglomerate. Since 1947, the predecessor business and later ASTECH were the premier supplier of welded honeycomb metallic aero structures to the global aerospace and defense industry.

The Debtor has no secured debt and operated using cash on hand and receivables collected from its customers. Prior to the Sale, the Debtor owned its operating machinery and equipment. The Debtor's manufacturing facility was leased pursuant to a Sublease Agreement with GKN.

As described in greater detail herein, the Debtor operated in a highly competitive market that was negatively impacted by the COVID-19 pandemic, inflationary pressures throughout its supply chain, and unprofitable contracts with its primary customers. Despite the Debtor's diligent efforts to improve its operating structure and to negotiate commercially reasonable price increases from its customers to buttress its bottom-line, the Debtor was unable to do so, and elected to file for bankruptcy protection.

**2.3 Filing of the Debtor's Chapter 11 Case.**

On the Petition Date, the Debtor filed this voluntary case under chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V. The Debtor is authorized to continue to operate its business and manage its assets as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code and operated its business until the closing of the Sale.

**2.4 Legal Structure and Ownership.**

The Debtor is a Delaware close corporation. Its sole owner is AEP Legacy Holdings, LLC f/k/a ASTECH Holdings, LLC.

**2.5 Debtor's Assets and Liabilities.**

As of the Petition Date, the Debtor's Schedules reflected that it had no secured debt, $4,651,782.28 in unsecured debt, and $23,603,838.15 in assets, at book value.

**2.6 Events Leading to the Filing of the Bankruptcy Case.**

After ASTECH acquired the business from GKN in March of 2022, ASTECH's new management team and Grobstein Teeple, LLP, the Debtor's financial advisor, performed a top to bottom analysis of the Debtor's operations and contractual relationships with its key customers. ASTECH historically suffered from, and continued to be faced with certain operational issues. Some of the issues were directly related to the COVID-19 pandemic, others were more of a COVID over-hang, while still others appeared more endemic to ASTECH's operations. ASTECH's biggest issue was that the contracts with its key customers did not provide ASTECH as a standalone entity (not benefitting from being a part of a larger conglomerate) sufficient profit margin to allow the business to operate long term. The pricing of many of its key contracts had, historically, resulted in ASTECH incurring significant losses.

Before beginning this bankruptcy proceeding, ASTECH convened an in-person meeting with its largest customers—The Boeing Company, ITP Aero UK, Raytheon Technologies Corp. and Spirit Aerospace, Inc. (collectively referred to herein as the "Customers")—on June 20, 2022, in Detroit. At that meeting ASTECH explained its fundamental issues to the Customers, and sought their assistance in working collaboratively to reach a mutually beneficial path forward. Options presented by ASTECH included working together to arrive at part pricing that would allow the business to be successful, working with the Customers to move their business to another supplier,

and working cooperatively with them to find a new owner for the business. Additionally, ASTECH proposed that once industry-average EBITDA margins were achieved, ASTECH would share additional cost savings that were implemented with the Customers, thereby reducing prices in the future. While a few of the Customers subsequently expressed a modest willingness to engage with ASTECH, others did not. Despite ASTECH's requests for assistance, little progress was made with the Customers and ASTECH's financial condition was forecasted to continue to decline, all of which was conveyed to the Customers. The consequences of ASTECH's continued financial decline, coupled with the Customers' unwillingness to engage with ASTECH to try to reach a mutually beneficial outcome, resulted in ASTECH needing to seek relief through the filing of the petition commencing the Bankruptcy Case.

**2.7 Early Events During the Bankruptcy Case.**

**(a) Appointment of Subchapter V Trustee**

On July 18, 2022, the Office of the United States Trustee appointed David M. Klauder as the subchapter V trustee. Mr. Klauder continues to serve in that capacity.

**(b) Initial Motions**

Immediately after the Petition Date, the Debtor filed the following motions seeking relief critical to the uninterrupted continuation of the Debtor's operations and its ability to meet its ongoing obligations, most particularly including those owed to its employees:

- Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Maintain its Bank Accounts and Pay Bank and Processor Charges and (B) Maintain Existing Business Forms; (II) Granting a Limited Waiver of the Requirements of Section 345(b) of the Bankruptcy Code, to the Extent Applicable; and (III) Granting Related Relief [D.I. 15]

- Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses, and (B) Continue Employee Benefits Programs and (II) Granting Related Relief [D.I. 16]

- Motion of Debtor for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Maintain its Insurance Policies and Programs and (B) Honor All Insurance Obligations, and (II) Granting Related Relief [D.I. 17]

- Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a) and 366 and Fed. R. Bankr. P. 6003 and 6004 for Entry of Interim and Final Orders (I) Approving Debtor's Proposed Form of Adequate Assurance of Payment to Utility Companies, (II) Establishing Procedures for Resolving Objections by Utility Companies, (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service, and (IV) Granting Related Relief [D.I. 18]

No objections were filed to any of the Initial Motions and final Orders approving the Initial Motions were entered on August 17, 2022.

**(c) Retention of Professionals**

By an order dated August 17, 2022, the Court approved the Debtor's retention of Cozen O'Connor as counsel [D.I. 90].

By an order dated August 17, 2022, the Court approved the Debtor's retention of Grobstein Teeple, LLP as Financial Advisor for the Debtor [D.I. 91].

By an order dated August 17, 2022, the Court approved the Debtor's retention of Brooks, Wilkins, Sharkey & Turco, PLLC as Counsel for the Debtor [D.I. 96].

By an order dated September 2, 2022, the Court approved the Debtor's retention of Cutsheet Express, LLC as Interim Management to the Debtor [D.I. 123].

By an order dated October 24, 2022, the Court approved the Debtor's retention of Hilco Valuation Services, LLC as Machinery and Equipment Appraiser [D.I. 173].

**(d) Critical Vendor Motion**

On August 4, 2022, the Debtor filed its Motion of the Debtor for Entry of an Order (I) Authorizing Debtor to Pay Prepetition Claims of (A) Critical Vendors, (B) Foreign Vendors, and (C) 503(b)(9) Claimants, (II) Confirming Administrative Expense Priority Status for Outstanding Prepetition Purchase Orders, and (III) Granting Related Relief [D.I. 60]. By an amended order dated August 19, 2022 [D.I. 104], the Debtor was authorized to pay Critical Vendor Claims, as described in the Critical Vendor Motion, in an amount not to exceed $2,500,000 in the aggregate. Pursuant to the Critical Vendor Order, the Debtor paid $2,475,000 to creditors that the Debtor, in the sound exercise of its business judgment, deemed critical.

**2.8 <u>Rejection of Executory Contracts Between the Debtor and The Boeing Company</u>.**

At the commencement of this case, ASTECH was party to several prepetition executory contracts with The Boeing Company ("<u>Boeing</u>"). The Debtor's continued performance under these contracts resulted in ongoing and significant losses for the Debtor, which was reviewed with Boeing. Because the Debtor could not get relief from Boeing on its contract pricing, in the appropriate exercise of its business judgment, the Debtor sought to reject these contracts. On August 17, 2022, the Debtor filed its Motion to Reject its Executory Contracts with the Boeing Company (the "<u>Boeing Rejection Motion</u>") [D.I. 99].

On August 31, 2022, Boeing filed an Objection to the Boeing Rejection Motion [D.I. 115]. The Debtor filed its Reply on September 1, 2022, vigorously opposing the allegations raised by Boeing in its Objection [D.I. 118]. Within the following six days leading up to a hearing on the Rejection Motion, Boeing conducted written discovery and took the depositions of ASTECH's Executive Chairman David Richeson and financial advisor Joshua Teeple. At an evidentiary hearing on September 7, 2022, the Court granted the relief requested by the Debtor in the Boeing Rejection Motion in full. On September 8, 2022, the Court entered an Order, among other relief, deeming the Debtor's contracts with Boeing rejected effective as of September 8, 2022 [D.I. 139]

**2.9 Boeing Litigation in Federal Court.**

On September 14, 2022, Boeing filed suit in the United States District Court for the Western District of North Carolina against the Debtor's affiliates and management, namely, Ten Oaks Management, LLC, Andrew Lovrovich, David Richeson, Matthew Magan, and Michael Hahn (the "Boeing Litigation"). Subsequently, some of the defendants asserted counterclaims against Boeing in the Boeing Litigation. This Boeing Litigation is pending among Boeing and such non-Debtor parties and it, along with the claims, counterclaims, defenses and third-party claims of such parties asserted therein, remains unimpaired and unaffected by the Plan and the Plan Settlement (including that such claims, counterclaims, defenses, third-party claims, and causes of action are not intended to be the subject of (and should be understood to be excluded from) the releases and exculpation in Sections 2.21 and 7.1 hereof, respectively).

**2.10 Esterhay Litigation.**

John ("Jack") Esterhay was the Chief Executive Officer of the Debtor for around two months, until he was terminated for failing to fulfill his duties and obligations at ASTECH. Esterhay initially filed suit against Ten Oaks Management, LLC, ASTECH Holdings, LLC, Michael Hahn, Andrew Lovrovich, David Richeson, John Curtis Griner, and Does 1 through 20, in California. Also, on September 12, 2023, Esterhay filed a $25,000,000 claim for wrongful termination and other claims in the Chapter 11 Case.

The litigation in California was dismissed on jurisdictional grounds. Esterhay then filed another suit against the same defendants in North Carolina (the "Esterhay Litigation"). That litigation is pending and is being vigorously contested by the defendants there. Pursuant to a stipulation approved by the Bankruptcy Court by an order entered on July 6, 2023 (D.I. 487), the Debtor was named as a nominal party in the Esterhay Litigation and Esterhay's recovery, if any, will be limited to insurance proceeds. He has no claim against the Estate.

**2.11 Indemnification Claims Stemming from Boeing Litigation and Esterhay Litigation**

The non-Debtor defendants in the Boeing Litigation and Esterhay Litigation, all of whom are the Debtor's affiliates and management, have filed claims for advancement and indemnification (*see* Claim Nos 22-1 to 28-2 (as amended, the "Indemnification Claims")), asserting that Boeing and/or Esterhay (a) have caused and will continue to cause the defendants to incur defense costs and (b) may recover damages from the defendants, and to the extent damages are recovered, the defendants will have resulting claims against the Estate for indemnification for such costs and damages. Such Indemnification Claims against the Estate solely are resolved by the terms of the Plan Settlement, as described herein.

**2.12 Negotiations With Customers and Mediation.**

During this Chapter 11 Case, the Debtor continued to negotiate with its Customers concerning the possible restructuring of the Debtor as a going concern, supported by Customer price increases, a consensual wind-down of the Debtor if the Customers preferred to exit the business or a transaction with the Customers in which they would acquire the business through an

entity they developed. While the Debtor made a good faith attempt to negotiate a mutually satisfactory agreement with the Customers, ultimately no consensual agreement was reached.

In a further effort to reach a consensual path forward with its key Customers, the Debtor proposed and the Customers agreed to mediate their various issues. On November 14, 2022, the court entered an Order Approving Mediation and Appointing Mediator [D.I. 190], appointing retired bankruptcy judge Kevin Gross as mediator. At the Customers' request, the mediation was held in New York City on November 14-15, 2022. A consensual resolution was not reached during the mediation.

**2.13 The Boeing Adversary Case.**

The Debtor sued Boeing on January 6, 2023. That suit alleges that Boeing tortiously interfered with the Debtor's negotiations with the landlord of the premises that ASTECH was then subleasing, interfered with ASTECH's business, violated the Bankruptcy Code's automatic stay, violated the Bankruptcy Code's provision that the Debtor has the sole right to purpose a Plan under Subchapter V, and also requests that Boeing's claims be equitably subordinated (the "ASTECH Litigation").

Boeing has filed a motion to dismiss the ASTECH Litigation, which the Debtor has opposed. That motion is now fully briefed and still under advisement. As discussed below, as a result of the Plan Settlement reached on March 11, 2024, the ASTECH Litigation will be dismissed with prejudice.

**2.14 Plan of Reorganization.**

As indicated, the Debtor worked with the Customers to try to reach agreement on a Plan of Reorganization. With the Customers' support, the deadline for the Debtor to file its Plan was extended several times. The Debtor filed its original plan on December 2, 2022 prior to the expiration of such final extension.

**2.15 Boeing Motion to Remove ASTECH as Debtor in Possession and to Expand Duties of Subchapter V Trustee.**

On December 19, 2022, Boeing, moved to remove ASTECH as the Debtor in Possession and to commensurately expand the duties of the Subchapter V Trustee. [D.I. 212] (the "Boeing Trustee Motion"). The Boeing Trustee Motion was scheduled for a full evidentiary hearing on January 19, 2023. At the outset of the hearing, at the Court's suggestion, Boeing and ASTECH agreed to an adjournment to see if an agreement could be reached as a path forward.

**2.16 Resolution of Boeing Trustee Motion.**

On January 20, 2023, after extended, through the night negotiations, ASTECH and Boeing reached an agreement in principle which resolved the Boeing Trustee Motion. That agreement, memorialized in a "Memorandum of Understanding", essentially provided that (a) ASTECH would resume production for Boeing, but at a profit; (b) Boeing would pay $400,000 for ASTECH's Key Employee Retention Plan; (c) Boeing would agree to a sublease of the manufacturing facility to a purchaser of ASTECH's assets, provided such purchaser could meet

certain financial requirements; and (d) the Subchapter V Trustee would be vested with ultimate decision making authority regarding the sale of ASTECH's business.

**2.17 The Sale Process**.

On December 2, 2022, the Debtor filed its Chapter 11 Plan that set forth a process by which the Debtor's business could be sold.

The Debtor filed its Motion for Sale of Property Free and Clear of Liens on December 20, 2022 [D.I. 214]. The Order Approving the Sale was entered on February 6, 2023 [D.I. 318].

To assist the Debtor in selling its business, the Debtor engaged the investment banking firm of SC&H Group [D.I. 211], which engagement was approved by the Bankruptcy Court on January 26, 2023 [D.I. 292].

The Debtor worked closely with the Subchapter V Trustee and SC&H throughout the expedited sale process requested by the Debtor's Customers. The Debtor provided all information to the Sale Data Room requested by SC&H, responded to additional information and data requests from interested parties, and facilitated multiple site visits – all during normal business hours. Ultimately, Avem Partners, LLC ("Avem") was selected as the Stalking Horse.

**2.18 Sale Negotiated, Approved and Closed**.

After extensive negotiations between ASTECH and Avem, and upon the entry into tangential agreements among certain of ASTECH's Customers, an agreement was reached between ASTECH and Avem for Avem to purchase the Debtor's business as a going concern. The Court entered the Order Approving the Sale on May 19, 2023 and ASTECH closed the Sale that evening.

As a consequence of the Sale: (a) ASTECH received $3.5 million in cash and Avem assumed $2.5 million of post-petition trade and employee obligations; (b) Avem assumed the existing contracts of ASTECH's largest Customers, thereby ensuring continuity of supply to them; and (c) almost every employee of ASTECH was transitioned to Avem and kept their jobs and equivalent benefits.

**2.19 Facility Repair Claim**.

During the Chapter 11 Case, ASTECH assumed its sublease with GKN. The sublease contained an expansive requirement that the Debtor reimburse GKN (who would reimburse the ultimate landlord) for all repair expenses of the manufacturing facility, regardless of when those expenses arose.

In March, 2023, the landlord advised GKN (and GKN advised the Debtor) of the landlord's view that almost $1,000,000 of repairs were due at the facility. After extensive discussions with the landlord, and discussions with the Debtor, GKN and the landlord agreed to compromise the landlord's claim for $750,000. After application of the $109,000 security deposit held by GKN, ASTECH paid $640,000 with respect to the claim, which was entitled to administrative priority.

**2.20 Post Sale Activities**.

**(a) Evaluation and Resolution of Certain Claims by the Debtor**

Following the Sale to Avem, the Debtor resolved Esterhay's claims against the Estate, worked with GKN to resolve the facility repair claim, and reviewed Ten Oaks Management's entitlement to management fees.

**(b) Boeing Claim Objections**

On July 28, 2023, Boeing filed objections to the Indemnification Claims filed by the Debtor's affiliates and management who are named defendants in the Boeing Litigation and Esterhay Litigation. *See* D.I. 497-503 (the "Boeing Claim Objections"). The claimants filed responses thereto and the objections remain pending and are resolved by operation of this Plan (and the Plan Settlement).

**(c) Amended Plan**

On August 4, 2023, the Debtor filed its Amended Subchapter V Plan of Liquidation of AEP Legacy, Inc. f/k/a ASTECH Engineered Products, Inc. [D.I. 513] (the "Amended Plan"), which preceded this Second Amended Plan. On September 13, 2023, the Debtor served the Amended Plan and a Notice of (I) Hearing to Consider Confirmation of the Subchapter V Debtor's Plan of Liquidation and (II) Related Voting and Objection Deadlines (together, the "Solicitation Package") on all Holders of Claims in Classes entitled to vote on the Plan: Holders of undisputed unsecured claims and unsecured indemnification claims to which the Boeing Claim Objections had been filed, as acknowledged in the relevant Certificate of Service [D.I. 538] filed on September 20, 2023. The United States Trustee raised informal comments and objections to the Debtor. Only Boeing filed a formal objection to the Amended Plan. *See* Objection of The Boeing Company to Confirmation of Amended Subchapter V Plan of Liquidation of AEP Legacy, Inc. [D.I. 550] (the "Boeing Plan Objection"). As reported in the Declaration of Voting Agent Regarding Balloting of the Amended Subchapter V Plan of Liquidation of AEP Legacy, Inc. f/k/a ASTECH Engineered Products, Inc. [D.I. 553], filed on October 17, 2023, all voting Classes unanimously accepted the Amended Plan.

**(d) Supplemental Bar Date and Amended Boeing Claim**

On November 29, 2023, the Debtor filed its Motion for Entry of an Order (I) Establishing Supplemental Bar Date for Amending Claims; and (II) Approving Form and Manner of Notice Thereof [D.I. 583]. The Court entered an Order [D.I. 598] granting the Debtor's motion, and establishing a deadline of January 19, 2024 (the "Supplemental Bar Date") for claimants to amend any claims filed prior to November 29, 2023. On January 22, 2024, Boeing amended Claim No. 20 to assert a claim in the amount of $35,479,423.00. Boeing's filing of the amended amount of Boeing's asserted claim against the Estate set the stage for a final resolution of remaining issues outstanding in this Chapter 11 Case. On January 22, 2024, the non-Debtor defendants in the Boeing Litigation and Esterhay Litigation also amended their Indemnification Claims against the Estate.

**2.21 The Plan Settlement.**

On March 11, 2024, representatives of the Debtor, Boeing, GKN, Ten Oaks Management, LLC ("TOM"), John Curtis Griner ("Griner"), Matthew Magan ("Magan"), Michael Hahn ("Hahn"), Andrew Lovrovich ("Lovrovich"), David Richeson ("Richeson" and, along with Griner, Magan, Hahn, and Lovrovich, the "Individual Claimants"), and AEP Legacy Holdings, LLC ("Holdings" and, together with AEP, Boeing, GKN, TOM, and the Individual Claimants, the "Plan Settlement Parties") engaged in negotiations facilitated by the Subchapter V Trustee and arrived at a settlement containing, in relevant part, the following terms:

(a) The adversary proceeding pending in the Bankruptcy Court as AEP Legacy, Inc. v. The Boeing Company, Adv. Pro. No. 23-50003 (BLS) will be dismissed with prejudice.

(b) Boeing's objections to the proofs of claim filed by TOM, Holdings, Griner, Magan, Hahn, Lovrovich, and Richeson will be withdrawn (D.I. 497, D.I. 498, D.I. 499, D.I. 500, D.I. 501, D.I. 502, and D.I. 503, respectively).

(c) Boeing's objection to confirmation of the Debtor's Plan, as amended, will be withdrawn.

(d) After payment of Administrative Expense Claims, general unsecured creditors other than Boeing, GKN, Holdings, the Individual Claimants, and TOM will receive distributions on account of their Allowed Claims and the remaining cash in the Estate will be distributed as follows, based on a pro forma estimated remaining cash amount of $2.50 million.

| Claimant | % Distribution | $ Amount based on available cash of $2.50 million |
|---|---|---|
| Boeing | 62% | $1,550,000* |
| GKN | 26% | $650,000 |
| TOM | 12% | $300,000 |

To the extent distributable cash is less than $2.5 million, the Parties agree that actual cash distributions will be based on the percentage distribution in the chart above. To the extent that distributable cash is more than $2.5 million, the Parties agree that any overage (if any) will be paid to Boeing.

(e) The claims, counterclaims and defenses of the parties asserted in the Boeing Litigation will not be dismissed, and the entry into the Plan Settlement is without prejudice to any party to the Boeing Litigation's claims, counterclaims, third-party claims, or defenses and without any collateral estoppel, res judicata or other preclusive effect of the Plan (or its settlement of the lawsuits and disputes being compromised thereby) as to the validity or amount of any claims, counterclaims, third-party claims, or defenses asserted therein.

(f) Debtor's Release of Boeing, GKN, TOM, Holdings, and the Individual Claimants.

i. Expressly excluding any claims, rights, manner of action, causes of action, suits, proceedings, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, liens, rights to file liens, contracts, controversies, agreements, attorneys' fees, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind, character or nature whatsoever, whether known or unknown, suspected or unsuspected, matured or unmatured, foreseeable or unforeseeable, scheduled, claimed or unclaimed, in law or equity that a Releasing Person (as defined herein, but excluding, for the avoidance of doubt, the Debtor or its Estate) may have in connection with the Boeing Litigation (the "**Carveout Claims**"), the Debtor, for and on behalf of itself and its estate, including but not limited to its predecessors, successors, and assigns, together with each and every subsidiary thereto (each, a "**Debtor Releasing Person**" and collectively, the "**Debtor Releasing Persons**"), hereby irrevocably and unconditionally, fully, finally, and forever waive, release, relinquish, remise, acquit, settle, compromise, discharge, and covenant not to sue each of Boeing, GKN, TOM, Holdings, and each Individual Claimant, together with each and every of the foregoing entities' and persons' predecessors, successors, and assigns, related or affiliated entities and persons, together with each and every subsidiary thereto, each past or present affiliated party, parent entity, successor, heir or assign, and each such entity's or person's respective past, present and future direct and indirect equity holders, partners, directors, officers, members, managers, employees, attorneys, accountants, financial advisors, advisors, representatives, agents, insurers, and sureties (each, a "**Debtor Released Person**" and collectively, the "**Debtor Released Persons**"), from and against any and all claims, rights, manner of action, causes of action, suits, proceedings, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, liens, rights to file liens, contracts, controversies, agreements, attorneys' fees, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind, character or nature whatsoever, whether known or unknown, suspected or unsuspected, matured or unmatured, foreseeable or unforeseeable, scheduled, claimed or unclaimed, in law or equity, including but not limited to, with respect to the foregoing, (i) in respect of or arising out of or in connection with any and all prepetition or postpetition business activities, transactions, acquisitions, actions, omissions, production, events or negotiations of the Debtor Releasing Persons, or any of them, and/or (ii) related to any contracts, agreements, leases, torts, projects, the petition, contested matters, litigation, objections, claims for breaches of any duty or obligation (whether legal or equitable), and any other basis for a claim whatsoever, of the Debtor Releasing Persons, or any of them, (each, a "**Claim/Liability**" and collectively, the "**Claims/Liabilities**"), that are property of or belong to the Debtor, could be asserted by, through or under the Debtor, or which arise out of, concern, or relate to, in any respect, the Debtor or any of its assets or properties, of any nature whatsoever (each, a "**Debtor Released Claim**" and collectively, the "**Debtor Released Claims**"). Carveout Claims shall not include any Debtor Released Claim belonging to the Debtor or its Estate.

ii. The Debtor, for itself and on behalf of each Debtor Releasing Person represents and warrants to each Debtor Released Person that no Debtor Releasing Person has assigned, transferred, hypothecated or otherwise permitted or granted to any entity or person any right (including any right of subrogation) to assert, initiate, prosecute or continue any Debtor Released Claim, with respect to any of the matters that are the subject of the waivers, releases and other covenants set forth in Section 2.21(f)(i).

(g) Boeing's, GKN's, TOM's, Holdings', and each Individual Claimant's Releases of the Debtor and the Debtor's Estate.

i. Subject to: (i) the express reservation of each Specified Claimant's Carveout Claims including with respect to the Boeing Litigation in Section 2.21(h) and (ii) each Specified Claimant's receipt of the distribution funds to be paid by the Debtor pursuant to this Section 2.21, each of Boeing, GKN, TOM, Holdings and each Individual Claimant (as defined in Section 2.21) (each, a "**Specified Claimant**"), in each case on behalf of itself and its respective predecessors, successors, and assigns, together with each and every subsidiary thereto (each Specified Claimant, together with the foregoing persons and entities in respect of such Specified Claimant, a "**Settling Claimant**" and collectively, the "**Settling Claimants**"), hereby irrevocably and unconditionally, fully, finally, and forever waive, release, relinquish, remise, acquit, settle, compromise, discharge, and covenant not to sue (i) the Debtor, (ii) its Estate and (iii) its officers, directors and the professionals engaged and retained by the Estate, but solely in their capacity as such related to and during the Chapter 11 Case (each, a "**Debtor Released Party**" and collectively, the "**Debtor Released Parties**") from and against any and all Claims/Liabilities of such Specified Claimant (with the sole exception of Carveout Claims) against the Debtor Released Parties (each, a "**Settling Claimants Released Claim**" and collectively, the "**Settling Claimants Released Claims**"). For the avoidance of doubt, notwithstanding anything to the contrary in this Section 2.21(g)(i), the Settling Claimants may still name the Debtor as a nominal defendant for purposes of seeking insurance.

ii. Each Specified Claimant, for itself and on behalf of each of its other respective Settling Claimants, represents and warrants to Debtor that it has not assigned, transferred, hypothecated or otherwise permitted or granted to any entity or person any right (including any right of subrogation) to assert, initiate, prosecute or continue any Settling Claimants Released Claim, with respect to any of the matters that are the subject of the waivers, releases and other covenants set forth in Section 2.21(g)(i).

(h) Preservation of Boeing's, GKN's, TOM's, Holdings', and each Individual Claimant's Direct Claims and Defenses. For the avoidance of doubt, and notwithstanding anything herein, nothing in the Plan shall waive, release, relinquish, remise, acquit, settle, compromise, discharge or impair any direct rights, remedies, claims, defenses or causes of action that Boeing, GKN, TOM, Holdings' and each Individual Claimant has or may have against one another, including any direct right, remedy, claim or cause of action arising from, or in connection with, the Boeing Litigation, any agreement, contract, business dealings, case, proceeding or conduct, and all such rights, remedies, claims, defenses or causes of action shall remain unaffected and unimpaired under the Plan.

(i) Waiver of Statutory Limitations on Releases. In connection with the waivers, releases and covenants set forth in Section 2.21(f) and Section 2.21(g), each of Debtor, for itself and on behalf of each Debtor Releasing Person, and each Specified Claimant, for itself and on behalf of each of its other respective Settling Claimants (each person or entity named in the foregoing clause, a "**Releasing Person**") expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Person does not know of or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, each Releasing Person has carefully considered and taken into

account in determining to enter into the above releases the possible existence of such unknown losses, Claims, or Causes of Action. Without limiting the generality of the foregoing, each Releasing Person expressly waives any and all rights conferred upon it by any statute or rule of law that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the Released Person, including the provisions of California Civil Code section 1542. The releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

(j) All Parties will support any amended Plan conforming to the terms of the Plan Settlement, and the payments of all claims estimated or projected to be paid thereunder, including but not limited to voting to accept the Plan if solicited, and not objecting to or supporting any objection to any amended Plan conforming to the terms of the Plan Settlement.

(k) The Plan Settlement will be deemed approved upon entry of the Confirmation Order.

**2.22 <u>No Known Claims or Anticipation of Further Litigation Impacting the Estate</u>**.

Having now, by way of the Plan Settlement, resolved the ASTECH Litigation and relieved the Debtor's estate of all but the nominal presence (if any) in the Esterhay litigation and Boeing Litigation pending in North Carolina, the Debtor does not anticipate engaging in further litigation. The Debtor has not identified further claims objections at this time and has not identified any basis to pursue Avoidance Actions against any Persons or Entities. Aside from the causes of action asserted in the ASTECH Litigation which have been dismissed with prejudice by the Debtor via the Plan Settlement, the Debtor is not aware of and has not identified any other claims or causes of action it holds or may hold against third parties.

**2.23 Current Cash on Hand and Estimated Claims.**[2]

| | | |
|---|---|---|
| (a) | Current Cash on Hand | $2,956,727.50 (projected) |
| (b) | Projected Administrative Expense Claims | |
| | (1) Unpaid Professional fees | $ 300,000.00 (projected) |
| | (2) Subchapter V Trustee fees | $ 50,000.00 (projected) |
| | (3) Management Fees | $ 0.00[3] |
| (c) | Secured Claims | None |
| (d) | Priority Claims: | |
| | (1) Employees | None |
| | (2) Taxes | None |
| (e) | Undisputed Unsecured Non-Priority Claims | |
| | (1) Unsecured Claims Unaffected by Plan Settlement - Class 1A | $ 233,857.00 |
| (f) | Unsecured Claims Affected by Plan Settlement - Class 1B | |
| | (1) The Boeing Company | $1,550,000.00 (projected) |
| | (2) GKN | $ 650,000.00 (projected) |
| | (3) TOM | $ 300,000.00 (projected) |
| | (4) Holdings | $ 0.00 |
| | (5) Griner | $ 0.00 |
| | (6) Magan | $ 0.00 |
| | (7) Hahn | $ 0.00 |
| | (8) Lovrovich | $ 0.00 |
| | (9) Richeson | $ 0.00 |

## ARTICLE III
## THE PLAN

This Plan describes how the claims of ASTECH's creditors will be paid. Certain types of claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a Class for purpose of payment. For example, Administrative Expense Claims are not classified.

As required by the Bankruptcy Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each Class will receive. The Plan also states whether each Class of Claims or Equity Interests is Impaired or Unimpaired, as those terms are defined in the

[2] All amounts herein that are noted as "projected" are estimated as of the date of the filing of this Plan.
[3] The Management Fees have been waived pursuant to the Plan Settlement.

Bankruptcy Code and under the Plan. A Claim or Equity Interest can be Impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Claimant's recovery is limited to the amount provided in the Plan.

Only Claimants in Classes that are Impaired may vote on whether to accept or reject the Plan, and only Claimants may vote. A Class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a Class of Equity Interest Holders accepts the Plan when at least two-thirds (2/3) in amount of the Allowed Equity Interest Holders that actually vote, vote in favor of the Plan. A Class that is not impaired is deemed to accept the Plan.

**3.1 <u>Unclassified Claims</u>**.

As indicated above, certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code and, therefore, are not classified. Because these claims are entitled to be paid in full, Holders of such Claims do not vote on the Plan. They may, however, object to the Plan if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. As such, the Plan does not place the following Claims in any Class:

A. Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "Allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is Allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. Creditors who have provided goods and services following the filing of the Chapter 11 Case are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date was paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade creditors or was assumed by Avem in the Sale.

2. If the Debtor received goods it purchased in the ordinary course of business within the 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the Allowed Claim of the Subchapter V Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 Case.

The Debtor's estimated unpaid Administrative Expenses at confirmation include:

| **Expense**: | **Estimated**: |
|---|---|
| Professional Fees and Expenses | $300,000.00 (projected) |
| Subchapter V Trustee Fees and Expenses | $50,000.00 (projected) |
| TOM Management Fee | $0.00 |

B. Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by section 507(a)(8) of the Bankruptcy Code. Unless the Holder of such a section 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief. All Priority Tax Claims have been paid as they have become due. Any accrued balances as of the Effective Date will be paid in full.

There are no Priority Tax Claims outstanding.

**3.2 <u>Classes of Claims and Equity Interests</u>**.

The following are the classes of claims in the Plan, and the proposed treatment that they will receive under the Plan:

A. Classes of General Unsecured Claims.

General unsecured Claims are not secured by property of the Estate and are not entitled to priority under section 507(a) of the Bankruptcy Code.

(i) Class #1A. Unsecured Claims Not Subject to Plan Settlement.

The following chart identifies the Plan's proposed treatment of Class 1 claims, which include general unsecured Claims against the Debtor:

| **Class #1A** | **Description** | **Impairment** | **Treatment** |
|---|---|---|---|
| 1. $233,857.00 | Pre-petition, Undisputed General Unsecured Claims. These claims are shown on Exhibit "B." | Unimpaired | Allowed Claims will be paid 100% from Available Cash |

(ii) Class #1B Unsecured Claims Resolved by Plan Settlement

| **Class #1B** | **Description** | **Impairment** | **Treatment** |
|---|---|---|---|
| GKN Aerospace Chem-tronics Inc. Claim No. 15 | $1,379,855.20 | Impaired | $Approximately 650,000.00 from Available Cash pursuant to Plan Settlement . |
| The Boeing Company Claim No. 16 | Filed as $-0-. | Impaired | $0.00 pursuant to Plan Settlement. |
| The Boeing Company Claim No. 20-2 | $35,479,423.00 | Impaired | $Approximately 1,550,000.00 from Available Cash pursuant to Plan Settlement. |

(iii) Class #1C Unsecured Indemnification Claims.

Pursuant to various corporate documents and agreements of the Debtor, the Debtor may owe advancement and indemnification obligations to all of the Defendants in the Boeing Litigation and the Esterhay Litigation for, among other things, all costs incurred to defend those actions, and any liabilities for which the indemnified parties ultimately may be found to be responsible. As a consequence, the Defendants in the Boeing Litigation and Esterhay Litigation have filed claims for advancement and indemnification (see claims 22-1 to 28-1. as amended). Boeing has filed objections to each of these claims, which objections are pending.

The following chart identifies the Plan's purposed treatment of Class 3 claims, which include certain claims for advancement and indemnification arising from the Boeing Litigation and the Esterhay Litigation.

| **Class #1C** | **Amount** | **Impairment** | **Treatment** |
|---|---|---|---|
| 1. Ten Oaks Management, LLC Claim No. 22 | Unknown, in excess of $1,000,000 | Impaired | Approximately $300,000.00 from Available Cash pursuant to Plan Settlement. |
| 2. ASTECH Holdings, LLC Claim No. 23 | Unknown, in excess of $1,000,000 | Impaired | Zero pursuant to Plan Settlement. |
| 3. John Curtis Guiner Claim No. 24 | Unknown, in excess of $1,000,000 | Impaired | Zero pursuant to Plan Settlement. |
| 4. Matthew Magan Claim No. 25 | Unknown, in excess of $1,000,000 | Impaired | Zero pursuant to Plan Settlement. |

| | | | |
|---|---|---|---|
| 5. Michael Hahn Claim No. 26 | Unknown, in excess of $1,000,000 | Impaired | Zero pursuant to Plan Settlement. |
| 6. Andrew P. Lovrovich Claim No. 27 | Unknown, in excess of $1,000,000 | Impaired | Zero pursuant to Plan Settlement. |
| 7. David P. Richeson Claim No. 28 | Unknown, in excess of $1,000,000 | Impaired | Zero pursuant to Plan Settlement. |

(iv) Class #2. Classes of Equity Holders

Equity Interest Holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. Here, the Debtor's equity interest are held by Astech Holdings, LLC.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest Holders:

| Class #2 | Description | Impairment | Treatment |
|---|---|---|---|
| 1. ASTECH Holdings LLC | Equity Interest Holders | Unimpaired | Retain 100% of its Equity Interest. |

**3.3 <u>Claims Objections and Reserve Account</u>.**

The Debtor and any other party-in-interest may object to the amount or validity of any Claim within the later of 30 days of the Effective Date or 30 days after the filing of the applicable claim, by filing an objection with the Bankruptcy Court and serving a copy of the objection on the Holder of such Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. The Debtor will hold all funds for distribution in a reserve account pending the resolution of all claims and claims objections, including requests for and allowance of all Administrative Expense Claims. Article IX describes the procedure for resolving claims.

**3.4 <u>Treatment of Executory Contracts and Unexpired Leases</u>.**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor assumed and assigned certain executory contracts to Avem. Any executory contracts not assumed in the Sale will be deemed rejected on the Effective Date. The Debtor does not believe there are any other such contracts to which it is a party.

Regardless, **the deadline for filing a proof of claim based on a claim arising from the rejection of an executory contract by operation of this Plan is the date that is thirty (30) days after the Effective Date** (the "Rejection Claims Bar Date")**.** Any Claim based on the rejection of an Executory Contract will be barred if the Proof of Claim is not timely filed, unless the Bankruptcy Court orders otherwise. Unless otherwise ordered by the Bankruptcy Court or

provided in the Plan, all such Claims for which Proofs of Claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan. The Debtor shall have the right to object to any such rejection damage claims filed in accordance with this section.

At present, the only rejection damage claim of which the Debtor is aware is that of Boeing.

**3.5 Payments.**

If the Plan is confirmed under Bankruptcy Code § 1191(a), payments to Claimants provided for in the Plan will be made by the Debtor pursuant to Bankruptcy Code section 1194(a).

If the Plan is confirmed under Bankruptcy Code § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Subchapter V Trustee shall make all Plan payments to Claimants under the Plan.

Further, if the Plan is confirmed under § 1191(b), all Available Cash required to be distributed to Claimants by the Trustee will be turned over to the Trustee as soon as practicable after the Effective Date, rendering any type of failure in payment, and need for an enforcement action, unnecessary.

**3.6 Reservation of Rights / No Waiver with Respect to Claims.**

Except as expressly set forth herein, nothing contained in this Plan is intended or shall be construed as (a) an admission as to the validity, priority, or amount of any Claim, including any rejection damage claim against the Debtor; (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any Claim against the Debtor or to otherwise dispute any particular Claim on any grounds; (c) a waiver of any Claim or cause of action which may exist against any creditor or Claimant; (d) a promise or requirement to pay any particular claim; or (e) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law.

**3.7 Approval of Plan Settlement.**

Upon entry of the Confirmation Order, the Plan Settlement shall be deemed approved and the Debtor's entry into it is deemed authorized, in the bests interests of the Estate, and to the extent applicable, meets the legal standard for approval Federal Rule of Bankruptcy Procedure 9019.

**3.8 Tax Consequences of the Plan.**

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.**

## ARTICLE IV
## FEASIBILITY OF THE PLAN

**4.1 <u>Ability to Initially Fund Plan</u>**.

The Debtor will have Available Cash on hand on the Effective Date to make all payments entitled to be paid on that date.

**4.2 <u>Ability to Make Future Plan Payments And Operate Without Further Reorganization</u>**.

Bankruptcy Code Section §1191 requires that the Plan must satisfy the requirements of 11 U.S.C. § 1129(a)(11), which requires that a Debtor demonstrate that the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the Plan. Here, the Plan does not contemplate that Debtor will continue in business. Rather, the Plan proposes how the Debtor's assets will be distributed to the Claimants. In short, liquidation of the Debtor is already proposed in the Plan, and that will not be followed by further liquidation or reorganization.

## ARTICLE V
## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Claimants and Equity Interest Holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest Holders would receive in a Chapter 7 liquidation.

The Debtor's most recent liquidation analysis is attached as Exhibit "A."

If no plan can be confirmed, this case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed to liquidate the Debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.

The Debtor believes that if the Case was converted to one under Chapter 7 of the Bankruptcy Code, it would result in less Available Cash being distributed to its Unsecured Creditors than the amount that will be available for the same unsecured creditors under the Plan. This is so because of (a) the learning curve for any Chapter 7 trustee (even if it is the current Subchapter V Trustee) to bring itself fully up to speed with the information necessary to administer and close the bankruptcy estate and the additional costs associated therewith, (b) the same learning curve for the Chapter 7 trustee's new legal professionals (again, even if his own firm) and accounting professionals and (c) the statutory commission payable to the Chapter 7 trustee (. The Debtor believes that in the aggregate, such additional costs could exceed $150,000.

## ARTICLE VI
## NO DISCHARGE OF DEBTOR.

In accordance with Bankruptcy Code section 1141(d)(3), the Debtor will not receive any discharge of debt in this Chapter 11 Case.

# ARTICLE VII
# GENERAL PROVISIONS.

**7.1 Exculpation and Limitation of Liability.**

**On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties, in their capacity as such, shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any act or omission between the Petition Date and the Effective Date in connection with, relating to, or arising out of the Chapter 11 Case, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan; *provided, however*, that nothing in this section 7.1 shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order; and *provided, further*, that the exculpation provisions of this section shall not apply to acts or omissions constituting actual fraud, willful misconduct, or gross negligence by such Exculpated Party as determined by a final (and no longer appealable) order of any court of competent jurisdiction. The Exculpated Parties shall be entitled to rely on the written advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Case, the Plan, and administration thereof. The Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by this section 7.1 of the Plan; provided that this section 7.1 shall not and shall not be deemed in any way to affect, impair or enjoin any claims, counterclaims, or third-party claims against non-Debtor parties (or defenses thereto) as asserted in the Boeing Litigation.**

**7.2 Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all creditors of the Debtor, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**7.3 Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**7.4 Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under Bankruptcy Code section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of

executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**7.5 Captions**.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**7.6 Modification of the Plan**.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to Bankruptcy Code section 1193(a). However, the Bankruptcy Court may require additional items, including re-voting on the Plan.

If the Plan is confirmed under Bankruptcy Code section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Bankruptcy Code section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years as fixed by the court and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**7.7 Final Decree**.

Once the Estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE VIII
## IMPLEMENTATION OF THE PLAN

**8.1 Implementation of the Plan.** The Plan will be implemented by various acts and transactions as set forth in the Plan and the making of Distributions by the Debtor in accordance with the Plan.

**8.2 Vesting of Assets in the Debtor**. As of the Effective Date, all assets of the Debtor shall vest in the Debtor, free and clear of all claims, liens and encumbrances of any type, with all assets being subject to the terms and conditions of the Plan and Confirmation Order.

**8.3 Continuing Existence.** From and after the Effective Date until the entry of a final decree, the Debtor shall continue in existence as a reorganized debtor in accordance with the applicable laws of the jurisdiction in which it is organized and incorporated for all purposes including, among other things:

(a) holding and investing cash and withdrawing and making Distributions of cash to Claimants and paying taxes and other obligations owed by the Debtor in accordance with the Plan;

(b) engaging attorneys, consultants, agents, employees, and any other professional persons to assist the Debtor with respect to the Debtor's obligations under the Plan;

(c) executing and delivering all documents and taking all actions necessary to consummate the Plan;

(d) coordinating the storage and maintenance of the Debtor's books and records;

(e) overseeing compliance with the Debtor's accounting, finance, and reporting obligations;

(f) preparing financial statements and United States Bankruptcy post-confirmation quarterly reports, until such time as a final decree has been entered;

(g) overseeing the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, as required;

(h) paying the fees and expenses of the attorneys, consultants, agents, employees, and other professional persons engaged by the Debtor and to pay all other expenses of the Debtor, subject to the terms of the Plan;

(i) objecting to, compromising, and settling Claims;

(j) acting on behalf of the Debtor in all adversary proceedings and contested matters (including, without limitation, any Causes of Action), then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commended elsewhere, and to settle, retain, enforce, dispute, or adjust any claim and otherwise pursue actions involving the Debtor that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in the Plan;

(k) implementing and/or enforcing all provisions of the Plan; and

(l) such other powers as may be vested in or assumed by the Debtor pursuant to the Plan or other Order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of the Plan.

**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS AND INTERESTS**

**8.4 Allowance of Claims and Interests.**

After the Effective Date, the Debtor shall have and retain any and all rights and defenses it Debtor had with respect to any Claim immediately before the Effective Date.

**8.5 Claims Administration Responsibilities.**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Debtor shall have the authority: (i) to file, withdraw or litigate to judgment objections to (a) Claims and (b) to settle or compromise any Claim, that is a Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court and (ii) to administer and adjust its claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

**8.6 Estimation of Claims.**

Before or after the Effective Date, the Debtor may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code section 502(c) for any reason, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim including during the litigation of any objection to any Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtor Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

**8.7 Time to File Objections to Claims.**

Any objection to Claims against the Debtor shall be Filed on or before the dates provided herein.

**8.8 Disallowance of Claims.**

Except as provided herein, otherwise agreed, or as provided by Court order, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed Disputed and the Debtor shall request that they be expunged as of the Effective Date, and Holders of such Claims may not receive any distributions on account of such Claims.

**8.9 Amendments to Claims.**

Any new or amended Claim filed shall be deemed Disputed.

**8.10 Tax Implications for Recipients of Distributions.**

Notwithstanding any other provision of the Plan, each entity receiving a distribution of Cash or other consideration pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any Governmental Unit on account of the distribution, including income, withholding and other tax obligations.

**8.11 No Levy.**

Except as otherwise provided herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each Claimant shall have and receive the benefit of the distributions in the manner set forth in the Plan.

**8.12 Offer of Judgment.**

The Debtor is authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and pursuant to Bankruptcy Rule 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the Holder of a Claim must pay the costs of the Debtor, after making of such offer, the Debtor is entitled to setoff such amounts against the amount of any distribution to be paid to such Holder without any further notice or action, order or approval of the Bankruptcy Court.

**8.13 No Distributions Pending Allowance.**

If an objection to a Claim or portion thereof is filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

**8.14 Distributions After Allowance.**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Claimant in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or becomes a Final Order, the Debtor shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.

## ARTICLE IX
## REQUEST FOR CONFIRMATION AND RECOMMENDATION

**9.1 Request for Confirmation.**

The Debtor requests confirmation of the Plan in accordance with Bankruptcy Code section 1129.

**9.2 Recommendation.**

The Debtor believes that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Claimants entitled to vote on the Plan to vote in favor of and support confirmation of the Plan.

Respectfully submitted,
**AEP LEGACY, INC.**

By: */s/ David Richeson*
Name: David Richeson
Title: Executive Chairman

**Exhibits**

“A” Liquidation Analysis
“B” Class 1A Claims
“C” Frequently Asked Questions